NICOLE KIM (SBN 324698)
*NicoleKim@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa St., 41st Floor
Los Angeles, California 90017
Tel.: +1 213 426 2495
Fax: +1 213 623 1673

SEAN RIORDAN (SBN 255752)
*sriordan@aclunc.org*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA**
39 Drumm Street
San Francisco, California 94111
Tel.: +1 415 621-2493

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
39 Drumm Street
San Francisco, California 94111
Tel.: +1 202 393-4930

EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
SOUTHERN CALIFORNIA**
1313 West 8th Street
Los Angeles, CA 90017
Tel: +1 213 977-5232

*Attorneys for Petitioners-Plaintiffs
Additional Counsel listed on signature
page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### EUREKA DIVISION

VICTOR JIMENEZ and JORGE MUTZUTZ,

    Petitioners-Plaintiffs,

    v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; PATRICK
LECHLEITNER, Deputy Director and Senior
Official Performing the Duties of the Director,
U.S. Immigration and Customs Enforcement;
MOISES BECERRA, Director of San
Francisco Field Office, Enforcement and
Removal Operations, U.S. Immigration and
Customs Enforcement,

    Respondents-Defendants.

Case No. 1:23-cv-06353-RMI

**NOTICE OF MOTION AND MOTION
FOR PROVISIONAL CLASS
CERTIFICATION**

**(Failure to provide COVID-19 antiviral
medications to medically vulnerable
immigrants detained at Golden State
Annex)**

DATE: January 30, 2024
TIME: 11:00 A.M.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................... 2

NOTICE OF MOTION AND MOTION ..................................................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 5

I.    INTRODUCTION ........................................................................................... 5

II.   FACTUAL BACKGROUND ......................................................................... 7

   A.    Plaintiffs Face a Substantially Higher Risk of Serious Illness or Death from Undetected and Untreated COVID-19 While in Detention. .................................... 7

   B.    Antiviral Medications Are Necessary to Protect Plaintiffs from Serious Illness and Death from COVID-19. ......................................................................................... 8

   C.    Defendants Know Antiviral Treatment is Necessary and Reasonable, yet Defendants Delay Testing for COVID-19 and Refuse to Implement Antiviral Treatment. ...................... 9

III.  PROPOSED CLASS DEFINITION. ............................................................ 12

IV.  PROPOSED CLASS REPRESENTATIVES. ............................................... 12

V.   THE COURT SHOULD PROVISIONALLY CERTIFY THE PROPOSED CLASS.... 12

   A.    The Proposed Provisional Class Meets the Requirements of Rule 23(a). .................. 13

      1.    The Proposed Provisional Class Meets the Numerosity Requirement. .................. 13

      2.    The Proposed Provisional Class Meets the Commonality Requirement. ................ 14

      3.    The Proposed Provisional Class Representatives Meet the Typicality Requirement. 16

      4.    The Proposed Provisional Class Representatives and Proposed Class Counsel Meet the Adequacy Requirement. ............................................................................. 17

   B.    The Proposed Provisional Class Meets the Requirements of Rule 23(b)(2). ............. 18

VI.  CONCLUSION ............................................................................................. 19

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

*Alcantara v. Archambeault*,
4     613 F. Supp. 3d 1337 (S.D. Cal. 2022) ................................................................. 13

5 *Amaro v. Gerawan Farming, Inc.*,
    No. 1:14-cv-00147-DAD-SAB, 2016 WL 3924400 (E.D. Cal. May 20, 2016) .................... 14
6

*Carillo v. Schneider Logistics, Inc.*,
7     No. CV 11-8557 CAS, 2012 WL 556309 (C.D. Cal. Jan. 31, 2012) ...................................... 12

8 *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
    317 F.R.D. 91 (N.D. Cal. 2016) ........................................................................... 13
9

*Criswell v. Bourdeaux*,
10     No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675 (E.D. Cal. Sept. 2, 2020) ............... 12, 13

11 *Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ............................................................................................ 16
12

*Hernandez v. Cnty. Of Monterey*,
13     305 F.R.D. 132 (N.D. Cal. 2015) ................................................................ 13, 15, 16

14 *Ikonen v. Hartz Mountain Corp.*,
    122 F.R.D. 258 (S.D. Cal. 1988) ........................................................................ 13
15

*In re Itel Sec. Litig.*,
16     89 F.R.D. 104 (N.D. Cal. 1981) ........................................................................ 14

17 *Jane Doe 1 v. Nielsen*,
    357 F. Supp. 3d 972 (N.D. Cal. 2018) .......................................................... 16, 17
18

*J.L. v. Cissna*,
19     No. 18-cv-04914-NC, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019) ....................... 15

20 *Kincaid v. City of Fresno*,
    244 F.R.D. 597 (E.D. Cal. 2007) ........................................................................ 13
21

*Lancaster v. Tilton*,
22     No. C 79-01630 WHA, 2006 WL 2850015 (N.D. Cal. Oct. 4, 2006) .................... 15

23 *L.H. v. Schwarzenegger*,
    No. CIV. S–06–2042-LKK-GGH, 2007 WL 662463 (E.D. Cal. Feb. 28, 2007) ................. 18
24

*In re Live Concert Antitrust Litig.*,
25     247 F.R.D. 98 (C.D. Cal. 2007) ........................................................................ 18

26

27

28

*Millan v. Cascade Water Servs., Inc.*,
  310 F.R.D. 593 (E.D. Cal. 2015) ........................................................................... 14

*O'Connor v. Boeing N. Am.*,
  184 F.R.D. 311 (C.D. Cal. 1998) ........................................................................... 17

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014)........................................................................... 17, 19

*Pole v. Estenson Logistics, LLC*,
  No. CV 15-07196-DPP, 2016 WL 4238635 (C.D. Cal. Aug. 10, 2016) ............... 14

*Reid v. Donelan*,
  297 F.R.D. 185 (D. Mass. 2014) ........................................................................... 14

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)................................................................................... 14

*Roman v. Wolf*,
  No. 20-cv-00768-TJH-PCVx, 2020 WL 3869729 (C.D. Cal. Apr. 23, 2020)....... 13

*Saravia v. Sessions*,
  280 F. Supp. 3d 1168 (N.D. Cal. 2017) ................................................................ 15

*Savino v. Souza*,
  453 F. Supp. 3d 441 (D. Mass 2020) ............................................................... 16, 17

*Smith v. City of Oakland*,
  339 F.R.D. 131 ....................................................................................................... 19

*Wal-Mart Stores v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................... 15

*Walter v. Leprino Foods Co.*,
  No. 2:20-CV-00700-AWI-BAM, 2023 WL 3076786 (E.D. Cal. Apr. 25, 2023)... 15

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998)......................................................................... 18, 19

*Zepeda Rivas v. Jennings*,
  445 F. Supp. 3d 36 (N.D. Cal. 2020) .................................................................... 12

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that, on January 30, 2023, at 11:00 am, or at the nearest available date at which counsel may be heard, Petitioners-Plaintiffs Victor Jimenez and Jorge Mutzutz ("Plaintiffs") will, and hereby do, move, pursuant to Fed. R. Civ. P. 23, for provisional certification of a class of individuals detained at Golden State Annex who are medically vulnerable to COVID-19.

The Motion is supported by this Notice of Motion and the accompanying Memorandum of Points and Authorities, the Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 20, "PI Motion") and accompanying fact and expert witness declarations, all of which are filed contemporaneously, and the Plaintiffs' Class Action Complaint for Injunctive and Declaratory Relief (Dkt. No. 1, "Complaint"), as well as any subsequent briefing, evidence, and oral argument that may be requested or permitted by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs, individuals civilly detained under color of immigration law at Golden State Annex ("GSA"), seek a provisional class certification from this Court to remedy violations of their Fifth Amendment rights caused by Defendants' failure to provide adequate and timely testing and antiviral medication for COVID-19 as recommended by the Centers for Disease Control ("CDC") and listed in Defendant U.S. Immigration and Customs Enforcement ("ICE") clinical guidance for the treatment of COVID-19.

Pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situated, seek provisional certification of the following class with the named Plaintiffs as class representatives:

> All individuals who are, or will be, detained by ICE at GSA, who are 50 years old or over or who have a medical condition that the CDC recognizes as a medical vulnerability for COVID-19[1] (the "Class").

The proposed Class properly meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b). *First*, the Class is sufficiently numerous, given that there are currently 239 people detained at GSA, and Defendants' continuous transfer of detainees into the facility. *Second*, all Class Members are bound together by common questions of fact and law: whether Defendants' failure to follow proper COVID-19 testing procedures and to implement the use of COVID-19 antiviral treatments is a violation of their Fifth Amendment right to medical care while in civil detention. *Third and fourth*, the proposed Class Representatives' claims are typical of absent Class Members, and the proposed Class Representatives and proposed Class Counsel will adequately represent the Class. *Finally*, Defendants' refusal to act on grounds that are generally applicable to the Class by failing to implement proper COVID-19 treatment puts the entire Class at imminent risk of serious (and potentially fatal) complications from COVID-19.  The injunction requested by Plaintiffs will provide class-wide relief.

Class-wide injunctive relief is necessary to protect the rights of Class Members.  As ICE, itself, recently observed:

> Infection with SARS-CoV-2, the virus that causes COVID-19, can lead to severe symptoms, hospitalization, and death. . . .  Treatment with antiviral medication is known to be effective against a particular variant of SARS-CoV-2, reduces the risk of progression to severe disease, decreases the need for hospitalization, and reduces the severity of disease thereby improving survival. . . .  For this reason, ICE recommends that each detainee newly diagnosed with COVID-19 be assessed for possible treatment with this medication.

---

[1] These conditions are listed on the CDC website. *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Dec. 13, 2023).

*See* Dkt. No. 20, Cipriano Decl., Ex. C, at 16.   Accordingly, the Court should grant provisional class certification.

## II.   FACTUAL BACKGROUND

Plaintiffs' Motion for a Preliminary Injunction and Complaint set forth in more detail the factual circumstances upon which Plaintiffs base their claims for relief.  *See* Dkt. Nos. 1 and 20. Plaintiffs incorporate the entirety of their Complaint and Motion for a Preliminary Injunction and briefly summarize those facts herein.

### A.   Plaintiffs Face a Substantially Higher Risk of Serious Illness or Death from Undetected and Untreated COVID-19 While in Detention.

Despite the successful national rollout of vaccines to fight against the spread of COVID-19, the risks posed by COVID-19—especially for older individuals and those with certain medical conditions—remain a serious health concern.  Over 772 million cases of COVID-19 have been reported to the World Health Organization since the beginning of the global pandemic, resulting in nearly 7 million deaths to date.[2]  The United States has suffered over 1.1 million and California 110,345 deaths.[3]  While COVID-19 affects everyone, those who are medically vulnerable—individuals over the age of 50 and those with certain medical conditions—are more likely than healthy individuals to be hospitalized, need intensive care, require a ventilator to help them breathe, or die from the disease.[4]  Absent detection and treatment, Class Members, who are medically vulnerable, face an imminent threat of serious illness and death.

Meanwhile, the carceral and congregate nature of detention at GSA compounds the risk Plaintiffs face of contracting COVID-19.  In fact, the U.S. government has conceded that facility infrastructure limitations and the lack of effective enforcement of health and safety guidelines have made it more difficult for medically vulnerable individuals to avoid infection and for infected

---

[2] *WHO Coronavirus (COVID-19) Dashboard*, https://covid19.who.int (last accessed Dec. 13, 2023).
[3] *COVID Data Tracker,* https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last updated Nov. 27, 2023); *Track Covid-19 in California*, https://www.nytimes.com/interactive/2023/us/california-covid-cases.html (last updated Nov. 30, 2023).
[4] *See supra* note 1.

individuals to be properly quarantined within detention facilities.[5]   These factors create a disproportionate likelihood of infection within ICE facilities.  Since 2020, at least 52,000 people have contracted COVID-19 in ICE detention—a number that is no longer being updated by Defendants and is likely much higher as of today.[6]  The infection rate in ICE detention facilities is sometimes as much as twenty times greater than in the general public.[7]

**B.   Antiviral Medications Are Necessary to Protect Plaintiffs from Serious Illness and Death from COVID-19.**

The three antiviral drugs currently authorized by the FDA for the treatment of COVID-19 are Paxlovid, Veklury, and Lagevrio.[8]  Multiple government agencies, including the CDC, National Institutes of Health ("NIH"), and Defendant ICE, have acknowledged the effectiveness of these antiviral drugs in reducing the likelihood of serious illness or death from COVID-19.[9]  Paxlovid is the most commonly prescribed antiviral treatment for COVID-19 due to its efficacy in preventing severe or fatal infection.[10]  In May 2023, the FDA approved Paxlovid, an oral medication, to treat adults with mild-to-moderate COVID-19 and who are at high risk for progression to severe COVID-19.  Paxlovid must be taken within five days of symptom onset.[11]  Its use has been widespread, having been administered with over 11 million courses distributed as of May 2023.[12]

---

[5] *Immigration Detention: ICE Efforts to Address COVID-19 in Detention Facilities*, U.S. GOV'T ACCOUNTABILITY OFFICE at 6 (Jun. 2021), https://www.gao.gov/assets/gao-21-414.pdf.

[6] *COVID-19 ICE Detainee Statistics by Facility*, https://www.ice.gov/coronavirus#detStat (as of Mar. 27, 2023).

[7] Isabelle Niu & Emily Rhyne, *4 Takeaways From Our Investigation Into ICE's Mishandling of Covid-19*, https://www.nytimes.com/2021/04/25/video/immigration-detention-covid-takeaways.html (last updated Apr. 26, 2021).

[8] *COVID-19 Treatments and Medications*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments/for-severe-illness.html (last updated Nov. 17, 2023).

[9] *What Are The Possible Treatment Options for COVID-19*, ADMIN. FOR STRATEGIC PREPAREDNESS & RESPONSE https://aspr.hhs.gov/COVID-19/Treatments/Pages/Possible-Treatment-Options-for-COVID19.aspx (last visited Dec. 23, 2023); *Coronavirus 2019 (COVID-19) Treatment Guidelines*, https://www.covid19treatmentguidelines.nih.gov/ (last accessed Dec. 13, 2023); *see supra* note 8; *see* Dkt. No. 20, Cipriano Decl., Ex. C, at 16.

[10] *Fact Sheet for Healthcare Providers: Emergency Use Authorization for Paxlovid,* U.S. FOOD & DRUG ADMIN  https://www.fda.gov/media/155050/download (last modified Feb. 2023).

[11] *Paxlovid (nirmatrelvir co-packaged with ritonavir): A Preferred Oral Antiviral Drug to Treat Covid-19*, ADMIN. FOR STRATEGIC PREPAREDNESS & RESPONSE, https://aspr.hhs.gov/COVID-19/Therapeutics/Products/Paxlovid/Pages/default.aspx (last accessed Dec. 13, 2023).

[12] *Pfizer's Paxlovid Receives FDA Approval for Adult Patients at High Risk of Progression to Severe Covid-19, https://www.pfizer.com/news/press-release/press-release-detail/pfizers-paxlovidtm-receives-fda-approval-adult-patients* (May 25, 2023).

The NIH encourages those who cannot take Paxlovid due to drug interactions or medical complications to consider Veklury or Lagevrio.[13]

### C. Defendants Know Antiviral Treatment is Necessary and Reasonable, yet Defendants Delay Testing for COVID-19 and Refuse to Implement Antiviral Treatment.

Defendants have known that antiviral treatment is necessary to prevent the risk of serious illness and death but have not provided it to medically vulnerable detainees in their custody.  Since FDA authorization of Paxlovid, the U.S. government has focused its COVID-19 treatment strategy on antiviral drugs.  During the 2022 State of the Union Address, President Joseph R. Biden noted that these antivirals "reduce[] your chances of ending up in the hospital by 90%."[14]  The CDC has since instructed medical providers to prescribe one of the three antiviral medications for the treatment of COVID-19.[15]  Defendant ICE, itself, acknowledged the efficacy of these medications in its COVID-19 requirements to detention facilities:

> Treatment with antiviral medication is known to be effective against [COVID-19], reduces the risk of progression to severe disease, decreases the need for hospitalization, and reduces the severity of disease thereby improving survival.  Treatment appears to work best when started early after the diagnosis is made in appropriately selected patients.  For this reason, ICE recommends that each detainee newly diagnosed with COVID-19 be assessed for possible treatment with this medication.

*See* Dkt. No. 20, Cipriano Decl., Ex. C, at 16.  Yet even though ICE has acknowledged that COVID-19 antiviral medications prevent the risk of and progression to severe disease and improve survival,

---

[13] *Therapeutic Management of Nonhospitalized Adults with COVID-19*, https://www.covid19treatmentguidelines.nih.gov/management/clinical-management-of-adults/nonhospitalized-adults--therapeutic-management/ (last visited Dec. 13, 2023).
[14] President Joseph Biden, *Remarks of President Joe Biden – State of the Union Address as Prepared for Delivery*, The White House (March 1, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/03/01/remarks-of-president-joe-biden-state-of-the-union-address-as-delivered/; *Interim Clinical Considerations for COVID-19 Treatment in Outpatients*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/outpatient-treatment-overview.html (confirming that the rate of hospitalization is reduced by 86% with the use of antiviral medications) (last accessed Dec. 13, 2023).
[15] *See supra* note 8.

1   and despite the availability of these drugs, Defendants have failed to include them on ICE's
2   formulary list—meaning the detention facilities are not required to stock these drugs.  *See* Dkt. No.
3   20, Cipriano Decl., Ex. A.

4           Not only do Defendants fail to stock these antiviral medications, but Defendants' own
5   policies and practices undermine their potential effectiveness by failing to timely test individuals
6   detained at GSA for COVID-19.  Under Defendant ICE's current guidelines, facilities such as GSA
7   are required to test individuals for COVID-19 only upon intake if those individuals exhibit COVID-
8   like symptoms.  *See* Dkt. No. 20, Cipriano Decl., Ex. C, at 10–11, 13.  This practice stands in stark
9   contrast to the few facilities designated "red" where Defendant ICE requires that all individuals are
10  tested for COVID-19 upon intake.  *Id.*  This unreasonable disparity in practice subjects medically
11  vulnerable individuals at GSA to the risk of contracting COVID-19 by asymptomatic individuals
12  entering the facility.  Further, Defendant ICE only requires testing of COVID-19 for individuals
13  already detained at GSA where either they present COVID-like symptoms or have been identified
14  as potentially exposed to COVID-19 through contract tracing.  *Id.*  But the experiences of Plaintiffs
15  and Declarant Mikhael Moiseev suggest that Defendant ICE ignores the potential risk that detained
16  individuals' symptoms may be caused by COVID-19, instead suggesting to Plaintiffs and Declarant
17  that their symptoms may not be related to COVID-19.  Defendants' failure to adequately and timely
18  test for COVID-19 subjects Class Members to an unreasonable risk of harm.

19          Defendants' failure to properly test immigrants detained at GSA for COVID-19 and to
20  ensure the prompt treatment of Class Members are reflected in Plaintiffs' and Declarants'
21  experiences:

22  • Plaintiff Victor Jimenez is a fifty-four-year-old man detained at GSA who suffers from
23    hypertension and cardiovascular issues and is at risk for serious illness from COVID-19.  *See*
24    Dkt. No. 20 at 8–10.  He was recently held in a unit where multiple people tested positive for
25    COVID-19 and experienced severe symptoms.  *Id.*  On August 10, Mr. Jimenez reported that
26    he was experiencing headaches to the facility physician.  *Id.*  He reported five days later that he
27    was also experiencing chest pains and that it hurt to lay down.  *Id.*  The next day, Mr. Jimenez

28

reported feeling feverish, having continued chest pains, and a runny nose. *Id.* He was prescribed Zithromax, allergy medicine, and ibuprofen. *Id.* It was not until almost another week later that he was tested for COVID-19. *Id.* Mr. Jimenez tested negative; however, the facility staff never re-tested him to confirm the negative result. *Id.* Mr. Jimenez continues to fear contracting COVID-19 due to his medical conditions. *Id.* These fears are exacerbated by his conversations with other individuals detained at GSA who previously contracted COVID-19 and who have informed him that they were only provided with Tylenol and water. *Id.*

- Plaintiff Jorge Mutzutz is a forty-five-year-old man who has a documented history of cardiovascular issues, and has a heart monitor embedded in his chest. *Id.* He is medically vulnerable to serious illness from COVID-19. *Id.* He complained to Defendants of COVID-related symptoms while detained at GSA in August 2023. *Id.* While awaiting his COVID-19 test results, the physician provided Mr. Mutzutz with Zithromax, cough medicine, sore throat lozenges, and Tylenol. *Id.* Even after testing positive for COVID-19, GSA failed to provide Mr. Mutzutz with an antiviral to treat his COVID. *Id.*

- Declarant Mikhael Moiseev is fifty-seven years of age and was previously detained at GSA from August 2, 2023 to October 31, 2023. *Id.* While detained, she complained to facility medical staff of headaches, fatigue, and trouble breathing. *Id.* On three separate occasions, Ms. Moiseev informed GSA facility staff of her symptoms, and three times, Defendants dismissed the symptoms as either allergy or sinus issues. *Id.* GSA personnel provided Ms. Moiseev with only sinus medicine and cough drops. *Id.* It took nearly two weeks from the first time Ms. Moiseev complained of her symptoms for GSA personnel to test Ms. Moiseev for COVID-19, and even then, Ms. Moiseev was only tested due to an outbreak of COVID-19 in the dormitory. *Id.* After she tested positive, Ms. Moiseev was quarantined and provided with cough drops and an electrolyte drink. *Id.* When Ms. Moiseev complained about further breathing issues, she was provided with nasal strips. *Id.* During her time at GSA, she saw several medically vulnerable individuals who had tested positive for COVID-19 but who were

1    also denied care, including antiviral drugs, for the treatment of COVID-19.  *Id.*  Many of these

2    individuals detained at GSA have since been deported.

3    **III.    PROPOSED CLASS DEFINITION.**

4        Plaintiffs request that the Court provisionally certify the following proposed class for the

5    purpose of issuing the preliminary injunction that Plaintiffs seek: All individuals who are, or will

6    be, detained by ICE at GSA, who are 50 years old or over or who have a medical condition that the

7    CDC recognizes as a medical vulnerability for COVID-19.[16]

8    **IV.    PROPOSED CLASS REPRESENTATIVES.**

9        Plaintiffs propose two Class Representatives: Victor Jimenez and Jorge Mutzutz.  Each

10   proposed Class Representative shares the same injury as absent Class Members: they are detained

11   or are being processed for detention at GSA, and have been subjected to unreasonable risks of harm

12   by Defendants' refusal to provide adequate and timely testing and COVID-19 antiviral medications

13   to medically vulnerable immigrants detained at GSA.  *See* Dkt. Nos. 1 and 20.

14   **V.    THE COURT SHOULD PROVISIONALLY CERTIFY THE PROPOSED CLASS**

15       When plaintiffs satisfy the four prerequisites of Rule 23(a), federal courts in the Ninth

16   Circuit "routinely grant provisional class certification for purposes of entering [preliminary]

17   injunctive relief" under Rule 23(b)(2).  *Carillo v. Schneider Logistics, Inc.*, No. CV 11-8557 CAS

18   (DTBx), 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) (citing *Baharona-Gomez v.* Renom 167

19   F.3d 1228, 1233 (9th Cir. 1999)).  Provisional class certification is appropriate where plaintiffs

20   "have suffered the same injury . . . and would benefit from the same remedy." *Zepeda Rivas v.*

21   *Jennings*, 445 F. Supp. 3d 36, 38–39 (N.D. Cal. 2020) (internal quotations omitted).  Several courts

22   have provisionally certified classes of detained and incarcerated individuals seeking preliminary

23   injunctive relief from their conditions of confinement and detention during the COVID-19

24   pandemic. *See*, *e.g.*, *Zepeda Rivas*, 445 F. Supp. 3d at 38–39 (certifying a class of civil immigration

25   detainees); *Criswell v. Bourdeaux*, No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675, at *12 (E.D.

26   Cal. Sept. 2, 2020) (provisionally certifying subclasses of pre-trial detainees and post-conviction

27   _____

28   [16] *See supra* note 1.

prisoners); *Roman v. Wolf*, No. 20-cv-00768-TJH-PCVx, 2020 WL 3869729, at *4 (C.D. Cal. Apr. 23, 2020) (provisionally certifying a class of civil immigration detainees); *Alcantara v. Archambeault*, 613 F. Supp. 3d 1337, 1349–50 (S.D. Cal. 2022) (certifying a class of civil immigration detainees with medical vulnerabilities to COVID-19). Because the proposed Class meets the requirements of Rule 23(a) and 23(b)(2), the Court should provisionally certify the proposed Class.

### A. The Proposed Provisional Class Meets the Requirements of Rule 23(a).

The proposed provisional Class adequately meets the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a)(1)–(4).

### 1. The Proposed Provisional Class Meets the Numerosity Requirement.

A class must be, under Rule 23(a)(1), "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict number requirement for numerosity, classes comprised of more than forty members generally satisfy this prerequisite— "especially true where, as here, the class[] include[s] future, unknowable class members." *Hernandez v. Cnty. Of Monterey*, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015) (citing *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986)); *Criswell*, 2020 WL 5235675, at *12; *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988). Plaintiffs need only "show some evidence of or reasonably estimate the number of class members." *Kincaid v. City of Fresno*, 244 F.R.D. 597, 601 (E.D. Cal. 2007) (internal citation omitted). This requirement is relaxed where a plaintiff seeks only injunctive and declaratory relief, allowing a plaintiff to rely on reasonable inferences that the number of unknown members is sufficient to make joinder impracticable. *See Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016).

The proposed Class is sufficiently numerous. GSA has the capacity to detain 700 immigrants.[17] There are currently 239 individuals detained at GSA.[18] Because Defendants

---

[17] *Form 10-K*, The GEO Group at 10 (Feb. 27, 2023), https://investors.geogroup.com/static-files/3d96041c-2f15-4328-9d77-9c41ad918af4.
[18] *Detention Facilities Average Daily Population*, TRAC Immigration, https://trac.syr.edu/immigration/detentionstats/facilities.html (current as of Nov. 27, 2023).

1   continue to place more detainees into the facility, the current number of detainees is "merely the

2   floor for this numerosity requirement." *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014)

3   (certifying class of immigration detainees).

4           Further, "[t]he specific requirement that the class be so numerous that joinder of all

5   members is impractical does not mean that joinder must be impossible, but rather means only that

6   the court must find that the difficulty or inconvenience of joining all members of the class makes

7   class litigation desirable." *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing *Harris*

8   *v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964)); *see also Millan v.*

9   *Cascade Water Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. 2015). The inability of Class Members

10  to bring suit individually weighs in favor of finding numerosity. *See Pole v. Estenson Logistics,*

11  *LLC*, No. CV 15-07196-DPP, 2016 WL 4238635, at *5 (C.D. Cal. Aug. 10, 2016); *see also Millan*,

12  310 F.R.D. at 603 (finding numerosity where it was unlikely individual claimants would pursue

13  relief absent class certification). Such is the case here, where most proposed Class Members lack

14  counsel.

15          Finally, Class certification serves the purpose of Rule 23 to allow "multiple parties—

16  unwieldy in number but possessing similar or identical claims—[to] pursue common redress in an

17  efficient and economical manner." *Amaro v. Gerawan Farming, Inc.*, No. 1:14-cv-00147-DAD-

18  SAB, 2016 WL 3924400, at *3 (E.D. Cal. May 20, 2016) (citing *Comcast v. Behrend*, 569 U.S. 27,

19  33 (2013)); *see also Pole*, 2016 WL 4238635, at *5; *Robidoux v. Celani*, 987 F.2d 931, 936 (2d

20  Cir. 1993) (finding "economic[] disadvantage" among putative class members weighed in favor of

21  class certification). Here, without class certification, judicial resources would be strained

22  responding to dozens—if not hundreds—of individual claims, while leaving many vulnerable

23  individuals without relief.

24          ***2.   The Proposed Provisional Class Meets the Commonality Requirement.***

25          Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.

26  R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members

27  have suffered the same injury" not "merely that they have all suffered a violation of the same

28

1    provision of law." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011).  A class need only share

2    a single significant question of law or fact to satisfy the commonality requirement.  *See Hernandez*,

3    305 F.R.D. at 152 ("Plaintiffs need not show, however, that 'every question in the case, or even a

4    preponderance of questions,' is capable of class-wide resolution.  So long as there is 'even a single

5    common question,' a would be class can satisfy the commonality requirement.") (quoting *Wang v.*

6    *Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)); *see also Walter v. Leprino Foods*

7    *Co.*, No. 2:20-CV-00700-AWI-BAM, 2023 WL 3076786, at *5 (E.D. Cal. Apr. 25, 2023) ("not

8    'every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a

9    single significant question of law or fact.'") (quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d

10   952, 957 (9th Cir. 2013)).

11          Commonality is generally satisfied where "the lawsuit challenges a system-wide practice or

12   policy that affects all of the putative class members."  *Hernandez*, 305 F.R.D. at 153 (quoting

13   *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)); *see also J.L. v. Cissna*, No. 18-cv-04914-

14   NC, 2019 WL 415579, at *8 (N.D. Cal. Feb. 1, 2019) (finding commonality where lawsuit

15   challenged DHS and USCIS policy and practice).  Moreover, suits for injunctive or declaratory

16   relief "by their very nature often present common questions satisfying Rule 23(a)(2)."  7A Mark J.

17   Kane, Fed. Prac. & Proc. Civ § 1763 (3d ed. 2018); *see also Saravia v. Sessions*, 280 F. Supp. 3d

18   1168, 1203 (N.D. Cal. 2017) (finding class-wide preliminary relief was "amenable to common

19   answers" as it pertained to ICE's policies or practices).

20          The proposed Class meets the commonality requirement because all Class Members are

21   equally subject to Defendants' policies and practices: Defendants' failure to follow proper COVID-

22   19 testing procedures and to provide COVID-19 antiviral medications at GSA.  Although some

23   Class Members are more vulnerable to the effects of the virus due to particularly significant

24   combinations of medical conditions or age and therefore more at risk of hospitalization and death

25   if they contract COVID-19, all Class Members have at least one factor that places them at increased

26   risk from the virus.  *See Lancaster v. Tilton*, No. C 79-01630 WHA, 2006 WL 2850015, at *8 (N.D.

27   Cal. Oct. 4, 2006) ("The fact that [Plaintiffs] may suffer these injuries in different ways does not

28

erase the fact that they generally share common questions of law and fact.") (citing *Armstrong*, 275 F.3d at 868 and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). "To be sure, the harm of a COVID-19 infection will generally be more serious for some petitioners than others. Yet it cannot be denied that the virus is gravely dangerous to us all." *Savino v. Souza*, 453 F. Supp. 3d 441, 451 (D. Mass 2020) (certifying class of immigration detainees).

The claims of the proposed Class also presents common questions amenable to common answers, including: (1) whether Defendants are, in fact, failing to follow proper COVID-19 testing procedures at GSA; (2) whether Defendants are, in fact, refusing to treat individuals in their custody who test positive for COVID-19 with antiviral medications such as Paxlovid; (3) whether the failure to implement such testing and treatment procedures in the face of a potentially fatal virus subjects the Class to a heightened risk of serious illness and death; and (4) whether these failures are a violation of proposed Class Members' Fifth Amendment Due Process Rights. These issues are common to all Class Members and thus deserve class-wide resolution.

### 3. *The Proposed Provisional Class Representatives Meet the Typicality Requirement.*

Under Rule 23(a)(3), representative plaintiffs must show that their claims are "typical" of those of the class such that they "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). This permissive test substantially overlaps with the test for commonality, and for typicality to be met, named Plaintiffs' claims need not be identical to those of the putative Class Members but, instead, only be "'reasonably co-extensive with those of absent class members.'" *Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972, 990 (N.D. Cal. 2018) (certifying class of immigrant refugees) (quoting *Hanlon*, 150 F.3d 1011 at 1020). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured by the same course of conduct.'" *Hernandez*, 305 F.R.D. at 159 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The proposed Class meets the typicality requirement because the proposed Class Representatives and all putative Class Members are or will be civil detainees at GSA, all subject to

a substantial risk of serious illness or death from Defendants' failure to follow proper COVID-19 testing procedures and wholesale refusal to implement antiviral treatment necessary to prevent serious harm.  *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (finding typicality and certifying class where named plaintiffs and putative class members were all exposed to "a substantial risk of serious harm by the challenged [Department of Corrections healthcare] policies and practices").  That some Class Members may have particular combinations of age and medical conditions that even further increase the likelihood of serious illness or death does not defeat typicality because *all* Class Members are at risk of contracting COVID-19 and would suffer greater risk of serious illness or death absent the use of CDC- and NIH-recommended antiviral treatments. *Savino*, 453 F. Supp. 3d at 451 ("[T]he admittedly significant variation among the Detainees does not defeat commonality or typicality").  *Every* Class Member at GSA is similarly positioned with respect to a substantial risk of serious harm resulting from exposure to the Defendants' failure to properly provide healthcare in the facility.  As such, the Class satisfies the typicality requirement.

### 4.   The Proposed Provisional Class Representatives and Proposed Class Counsel Meet the Adequacy Requirement.

Rule 23(a)(4) is satisfied where "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Two questions are addressed in determining if this requirement has been met: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Jane Doe 1*, 357 F. Supp. 3d at 990–91 (citing *Hanlon*, 150 F.3d at 1021).  Here, both prongs of this test are met.

*First*, there exist no conflicts of interest between named Plaintiffs and other Class members. For a conflict of interest to defeat the adequacy requirement, such conflict would have to go "to the very subject matter of the litigation."  *O'Connor v. Boeing N. Am.*, 184 F.R.D. 311, 335 (C.D. Cal. 1998).  There is no evidence that the named Plaintiffs have any interest contrary to the interests of the Class.  To the contrary, all Plaintiffs share a common interest in seeking redress for Defendant's conduct and, thus, have no conflict, especially conflicts going to the very subject matter of this

litigation.  *See* Dkt. Nos. 1 and 20.  *Second*, the proposed Class Representatives have represented they are prepared to zealously represent the Class and they have already been indispensable to their counsel, having spent a significant amount of time and effort in assisting their counsel throughout this matter.  *See, e.g.*, Dkt. Nos. 1 and 20; *see also In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 120 (C.D. Cal. 2007) (finding adequacy requirement met where plaintiff possessed only "a rudimentary understanding" of the action and a "willingness to assist" counsel in the prosecution of the litigation).

*Finally*, Class Counsel are qualified, experienced, and knowledgeable in the issues raised in this litigation.  This proposed Class is represented by experienced counsel from the ACLU Foundation National Prison Project, ACLU Foundation of Southern California, ACLU Foundation of Northern California, and Goodwin Procter LLP.  Plaintiffs' attorneys are remarkably qualified in representing detained immigrants in civil rights class actions, will prosecute the action vigorously on behalf of the Class, and have the necessary experience and financial resources to litigate this case.  *See* Bitran Decl.; Riordan Decl.; Virgien Decl.; Cipriano Decl.

**B.  The Proposed Provisional Class Meets the Requirements of Rule 23(b)(2).**

In addition to satisfying the requirements of Rule 23(a), the proposed Class meets the requirements of 23(b)(2).  A proposed class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Such is the case here, where Defendants acknowledged the importance of proper COVID-19 testing procedures and the necessity of treating COVID-19 with antiviral medications, but continued to deny such healthcare to individuals detained in their facility.

Rule "23(b)(2) was adopted in order to permit the prosecution of civil rights actions." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  Accordingly, "'[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole,' even if not all class members have been injured by the challenged practice." *L.H. v. Schwarzenegger*, No. CIV. S–06–2042 LKK-GGH, 2007 WL 662463, at *14 (E.D. Cal. Feb. 28, 2007) (certifying

1   class of juvenile parolees) (quoting *Walters*, 145 F.3d at 1047); *see also Smith v. City of Oakland*,

2   339 F.R.D. 131, 142 ("'The fact that some class members may have suffered no injury or different

3   injuries from the challenged practice does not prevent the class from meeting the requirements of

4   Rule 23(b)(2).'") (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)).

5        Certifying this Class aligns with the purpose of Rule 23(b)(2).  Defendants' inaction

6   amounts to a constitutional violation suffered by the entire Class.  Plaintiffs' medical care is entirely

7   in Defendants' hands and every Class Member faces a substantial and imminent risk of severe

8   illness, and death from COVID-19 as a result of Defendants' failures.  Injunctive and declaratory

9   relief will provide relief on a class-wide basis.  Accordingly, certification under Rule 23(b)(2) is

10  appropriate. *See Parsons*, 754 F.3d at 689 (finding 23(b)(2) was satisfied where every member of

11  the proposed class "allegedly suffer[ed] the same (or at least a similar) injury and that injury can

12  be alleviated for every class member by uniform changes to [Defendants'] policy and practice");

13  *see also Schwarzenegger*, 2007 WL 662463, at *14 (certifying a class where "it is evident that the

14  class members complain of a pattern and practice that applies to the class as a whole").

15  **VI.   CONCLUSION**

16       The proposed Class meets the requirements of Rule 23(a) and Rule 23(b)(2).  The Court

17  should provisionally certify the proposed Class.

1 Dated: December 14, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: December 14, 2023

Sean Riordan (SBN 255752)
*sriordan@aclunc.org*
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA**
39 Drumm Street
San Francisco, California 94111
Tel.: +1 415 621-2493

Kyle Virgien (SBN 278747)
*kvirgien@aclu.org*
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
39 Drumm Street
San Francisco, California 94111
Tel.: +1 202 393-4930

Eunice Cho (*pro hac vice*)
*echo@aclu.org*
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Tel.: +1 202 548-6616

Eva Bitran (SBN 302081)
*ebitran@aclusocal.org*
Mayra Joachin (SBN 306065)
*mjoachin@aclusocal.org*
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
SOUTHERN CALIFORNIA**
1313 West 8th Street
Los Angeles, CA 90017
Tel: +1 213 977-5232

**GOODWIN PROCTER LLP**

By:      */s/ Nicole Kim*

Linnea Cipriano (*pro hac vice*)
*LCipriano@goodwinlaw.com*
Timothy J. Beavers (*pro hac vice*)
*TBeavers@goodwinlaw.com*
Jacob Tyson (*pro hac vice*)
*JTyson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Tel.: +1 212 813 8800
Fax: +1 212 355 3333

Nicole Kim (SBN 324698)
*NicoleKim@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa St., 41st Floor
Los Angeles, California 90017
Tel.: +1 213 426 2495
Fax: +1 213 623 1673

Oscar Barron-Guerra (SBN 345284)
*OBarronGuerra@goodwinlaw.com*
**GOODWIN PROCTER LLP**
3 Embarcadero Center, 28th Floor
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

*Attorneys for Petitioners-Plaintiffs*