BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
JEFFREY S. ROBINS
Deputy Director
SARAH L. VUONG
Assistant Director
MICHELLE M. RAMUS
SHANE A. YOUNG
ALEXA S. WHITE
ANNA L. DICHTER
Trial Attorneys
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 353-2405; Fax: (202) 305-7000
Anna L. Dichter@usdoj.gov
*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### (EUREKA)

| | |
|---|---|
| VICTOR JIMENEZ, | No. 1:23-cv-06353-RMI |
| Plaintiff, | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO DISMISS** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, | |
| Defendants. | |

1

1

## TABLE OF CONTENTS

2  I. INTRODUCTION ........................................................................................................... 1

3  II. BACKGROUND ............................................................................................................ 3

4     A. ICE COVID-19 Guidance ......................................................................................... 3

5     B. Response to COVID-19 at GSA ............................................................................... 6

6     C. Plaintiff and Declarant .............................................................................................. 6

7        i. Plaintiff Victor Jimenez ........................................................................................ 6

8           a. Immigration Background ................................................................................ 6

9           b. Medical History ............................................................................................. 7

10       ii. Declarant Mikhael Moiseev ................................................................................. 8

11          a. Immigration Background ................................................................................ 8

12          b. Medical History ............................................................................................. 9

13 III. LEGAL STANDARD .................................................................................................. 9

14 IV. ARGUMENT ............................................................................................................. 10

15    A. The Court should dismiss Plaintiff's Complaint and deny Plaintiff's Motion for Preliminary

16    Injunction because the Court lacks jurisdiction to grant Plaintiff the class-wide relief he seeks under
   8 U.S.C. § 1252(f)(1) ...................................................................................................... 11

17    B. The Court should dismiss Plaintiff's Complaint and deny Plaintiff's Motion for Preliminary

18    Injunction because Plaintiff lacks standing to bring his claims ......................................... 13

19    C. The Court should deny Plaintiff's Motion for Preliminary Injunction because Plaintiff fails to
   show a likelihood of success on his Fifth Amendment Claims ......................................... 15

20       i. Defendants have not made any intentional decision to deny Plaintiff access to antiviral

21       medications at GSA or put Plaintiff at any greater risk (Factor 1 and Factor 2) .......................... 16

22       ii. Defendants have not acted with reckless disregard, nor caused Plaintiff's injuries (Factor 3 and
      Factor 4) .......................................................................................................... 16

23    D. The Court must deny Plaintiff's Motion for Preliminary Injunction because Plaintiff fails to show

24    irreparable injury absent injunctive relief ......................................................................... 22

25    E. The Court must deny Plaintiff's Motion for Preliminary Injunction because the equities weigh
   heavily against preliminary relief ..................................................................................... 24

26 V. CONCLUSION ............................................................................................................ 25

27

i

28 **DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**
**AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Atena Life Ins. Co. of Hartford, Conn. V. Haworth*,

4

300 U.S. 227 (1937)........................................................................................... 10

5

*Bell v. Wolfish*,

441 U.S. 520 (1979)........................................................................................ 3, 21

6

*Brinson v. Aviles*,

7

No. 22-cv-5389 (MCA), 2023 WL 3867241 (D.N.J. June 7, 2023)..................... 23

8

*City of Los Angeles v. Lyons*,

9

461 U.S. 95 (1983)....................................................................................... 14, 15

10

*Clark v. Governor of New Jersey*,

53 F.4th 769 ...................................................................................................... 23

11

*Fraihat* v. *U.S. Immigr. & Customs Enf'.*,

12

16 F.4th 613 (9th Cir. 2021) ........................................................... 18, 19, 22, 25

13

*Garcia v. Google, Inc.*,

14

786 F.3d 733 (9th Cir. 2015)....................................................................... 10, 13

15

*Garland v. Aleman-Gonzalez*,

596 U.S. 543 (2022)....................................................................................... 1, 11

16

*Gill v. Whitford*,

17

138 S. Ct. 1916 (2018).......................................................................................13

18

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,

19

736 F.3d 1239 (9th Cir. 2013)............................................................................ 25

20

*Hollingsworth v. Perry*,

570 U.S. 693 (2013)......................................................................................... 9, 10

21

*Jennings v. Rodriguez*,

22

583 U.S. 281 (2018)........................................................................................... 21

23

*Kokkonen v. Guardian Life Ins. Co.*,

24

511 U.S. 375 (1994)............................................................................................. 9

25

*Lighthouse Fellowship Church v. Northam*,

20 F.4th 157 (4th Cir.  2021) ............................................................................. 23

26

27

ii

28

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION
AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

*Lopez v. Brewer*,
    680 F.3d 1068 (9th Cir. 2012)...........................................................................................25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..........................................................................................................13

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009)............................................................................................10

*Martinez v. CoreCivic*,
    No. 20-cv-1309, 2021 WL 2550319 (D.N.M. June 22, 2021)...............................17, 19, 24

*McCarthy v. United States*,
    850 F.2d 558 (9th Cir. 1988).......................................................................................10, 13

*Nken v. Holder*,
    556 U.S. 418 (2009)....................................................................................................10, 24

*North Carolina v. Rice*,
    404 U.S. 244 (1971)..........................................................................................................10

*Park Village Apartment Tenants Association v. Foster*,
    636 F.3d 1150 (9th Cir. 2011)..........................................................................................22

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014)..........................................................................................22

*Raines v. Byrd*,
    521 U.S. 811 (1997)..........................................................................................................13

*Roman v. Wolf*,
    977 F.3d 935 (9th Cir. 2020)...........................................................................2, 16, 19, 20

*Savage v. Glendale Union High Sch.*,
    343 F.3d 1036 (9th Cir. 2003)..........................................................................................10

*Spokeo, Inc v. Robins.*,
    578 U.S. 330 (2016)....................................................................................................13, 14

*Swain v. Junior*,
    958 F.3d 1081 (11th Cir. 2020)...................................................................................23, 25

*United States v. Garcia*,
    No. 14-cr-20035, 2021 WL 1499312 (C.D. Ill. Apr. 16, 2021)........................................19

*United States v. Martinez-Fuerte*,
    428 U.S. 543 (1976)..........................................................................................................24

iii

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**
**AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

*Valentine v. Collier*,
    956 F.3d 797 (5th Cir. 2020)..................................................................... 22, 23, 25

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
    556 F.2d 406 (9th Cir. 1977)............................................................................. 9

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000)........................................................................... 10

*Wilson v. Ponce*,
    No. 20-cv-4451, 2022 WL 2155119 (C.D. Cal. Feb. 2, 2022) .................................. 19, 24

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)................................................................................... 10, 24

**STATUTES**

8 U.S.C. § 1225 .......................................................................................... 11

8 U.S.C. § 1225(b)(1)(B)(ii) ...................................................................... 11, 12, 13

8 U.S.C. § 1226 ...................................................................................... 11, 12, 21

8 U.S.C. § 1226(a) ....................................................................................... 11

8 U.S.C. § 1226(c) ............................................................................... 6, 11, 13, 21

8 U.S.C. § 1231 ...................................................................................... 11, 12, 21

8 U.S.C. § 1231(a) ....................................................................................... 11

8 U.S.C. § 1231(a)(1)(A) .......................................................................... 11, 12, 13

8 U.S.C. § 1231(a)(1)(B) ............................................................................... 12

8 U.S.C. § 1231(a)(6) .................................................................................... 8

8 U.S.C. § 1252(f)(1) .......................................................................... 1, 11, 12, 13

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(1)............................................................................. *passim*

iv

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION
AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

**MISCELLANEOUS**

*5 Things You Should Know about COVID-19 Vaccines*, Centers for Disease Control and Prevention - Respiratory Viruses, October 13, 2023, https://www.cdc.gov/respiratory-viruses/whats-new/5-things-you-should-know.html, (last visited Jan. 23, 2024)............................................................................ 23

Centers for Disease Control and Prevention: COVID-19, May 11, 2023, https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html (last visited Feb. 23, 2024)............................................................................................................... 3

*ICE's Enforcement and Removal Operations Post Pandemic Emergency COVID-19 Guidelines and Protocols, Version 2.0*, July 13, 2023, https://www.ice.gov/doclib/coronavirus/eroCOVID19Post PandemicEmergencyGuidelinesProtocol_07132023.pdf. (last visited Feb. 23, 2024).......................... 4

*ICE updates detention guidelines to align with the current CDC guidance for COVID-19*, U.S. Immigration and Customs Enforcement, May 11, 2023, https://www.ice.gov/news/releases/ice-adds-thousands-accessible-detention-beds (last visited Feb. 23, 2024). ......................................................... 4

U.S. Dep't of Homeland Sec., *Ice Health Service Corps: FY 2024 Medication Formulary for non-IHSC Staffed Detention Facilities*, https://www.ice.gov/doclib/about/offices/ihsc/pdf/medicationFormularyNonIHSC.pdf. (last visited DATE, 2024)....................................................................................................................... 5

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

## I.    INTRODUCTION

The Court should dismiss the Complaint (ECF No. 1, Compl.) filed by Plaintiff Victor Jimenez ("Plaintiff") in its entirety under Federal Rules of Civil Procedure 12(b)(1) and deny Plaintiff's request for preliminary injunctive relief (ECF No. 20, Pl.'s Mot.). A single Plaintiff seeks class-wide relief,[1] arguing that Defendants' failure "to update their [COVID-19] guidance," "require detention facilities to provide antiviral drugs[,]" and  update their "formulary to require that facilities stock these medications," and Defendants' failure to specifically "provide COVID-19 antiviral drugs at [Golden State Annex ("GSA")]" violates his substantive due process rights under the Fifth Amendment. Compl., Prayer for Relief; Pl.'s Mot. at 5–7, 12. Alternatively, Plaintiff argues that "Defendants' failure to provide Paxlovid is unconstitutional punishment." Compl. ¶¶ 74–78; Pl.'s Mot. at 18. But the Court lacks jurisdiction to grant Plaintiff the relief he seeks under 8 U.S.C. § 1252(f)(1) and Plaintiff cannot establish standing. Even if Plaintiff clears these hurdles, the Court should deny his request for a preliminary injunction because he fails to establish a likelihood of success on the merits, he is unable to show irreparable harm, and the considerations of harm and equities weigh heavily in Defendants' favor.

*First*, the Court should dismiss Plaintiff's Complaint and deny Plaintiff's motion for preliminary injunction for lack of jurisdiction because under a straightforward application of 8 U.S.C. § 1252(f)(1), which bars courts from enjoining or restraining the operation of "relevant statutory provisions" of the INA, the Court lacks jurisdiction to issue the class-wide injunctive relief Plaintiff seeks. *Garland v. Aleman-Gonzalez*, 596 U.S. 543, 544 (2022). Defendants are charged, by statute, with implementing and enforcing immigration laws governing "inspection, apprehension, examination, and removal of aliens," including 8 U.S.C. §§ 1225, 1226, and 1231. *Id.* at 550. Because Plaintiff requests relief that will necessarily impact Defendants' ability to carry out its detention authorities at GSA, the Court should dismiss Plaintiff's Complaint and deny Plaintiff's motion for lack of jurisdiction.

---

[1]    The proposed class is "individuals who are, or will be, detained by ICE at [Golden State Annex Detention Facility ("GSA")] who are 50 years old or over or who have a medical condition that the CDC recognizes as a medical vulnerability to COVID-19." Pl.'s Mot.  at 7; Compl. ¶ 9.

1

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**
**AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

*Second*, the Court should dismiss Plaintiff's Complaint and deny Plaintiff's motion for preliminary injunction for lack of jurisdiction because he does not have a cognizable injury traceable to Defendants, and thus lacks standing. Plaintiff fails to show any injury—he never had the hallmark symptoms of COVID-19 and when he was tested for COVID-19 due to an exposure, he tested negative and was asymptomatic. GSA is a contract detention facility that is owned and managed by The GEO Group ("GEO"), who provides all medical services at GSA. Here, Plaintiff received medical evaluation and treatment by GEO medical professionals in line with the Center for Disease Control and Prevention ("CDC") guidance and fully recovered from his ailments unrelated to COVID-19. Any alleged risk of future harm is speculative and unlikely because Plaintiff ████████████████████████████ which greatly reduce the risks of serious illness or death from contracting COVID-19. Further, there have not been any positive COVID-19 cases at GSA since January 18, 2024, and only one positive COVID-19 case in the last five months. Antiviral medication continues to be available at GSA and is now on the formulary.

*Third*, even if the Court finds that it has jurisdiction to hear Plaintiff's claims in his Complaint and motion for preliminary injunction, the Court should deny Plaintiff's motion for preliminary injunction because Plaintiff fails to show a likelihood of success on the merits. Plaintiff cannot establish that Defendants violated his or any putative class members' Fifth Amendment right to reasonable health and safety based on his allegations that Defendants intentionally denied Plaintiff and Declarant Mikhael Moiseev ("the Declarant")[2] antiviral treatment or that Defendants' failure to provide antivirals is unconstitutional punishment. Compl. ¶¶ 69, 77; Pl.'s Mot. at 12–19. To maintain a claimed violation of reasonable health and safety under the Fifth Amendment, a plaintiff must show "reckless disregard for detainee safety." *See Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020). The actions taken by U.S.

---

[2] The Complaint was initially brought by a second Named Plaintiff, Jorge Mutzutz, but he voluntarily dismissed his claims on February 13, 2024, after being released from detention. ECF No. 41. The Declarant is also no longer in detention. Ex. C ¶ 11. Thus, to the extent any claims relate to the Declarant, they should be considered moot as well. The only remaining Plaintiff in this case never showed any hallmark symptoms of COVID-19 and never tested positive for COVID-19. Ex. D ¶¶ 20, 23.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

Immigration and Customs Enforcement's ("ICE"), however, show the opposite. ICE has acted with deliberate and reasonable care to address the risks of COVID-19 and emerging treatment options. ICE's continued response to COVID-19, even after the pandemic has ended—including the issuance of updated guidance developed in consultation with the CDC that *encourages* the use of antiviral treatments—does not rise to the level of "reckless disregard" or "unconstitutional punishment." Moreover, neither Plaintiff nor the Declarant satisfy their burden of establishing that the medical treatment he or she received at GSA violated any legal standard. Instead, a review of the full medical records reflects that Plaintiff, and the Declarant, were not eligible for antiviral treatment, received thorough medical treatment appropriate for their circumstances, and fully recovered from any alleged ailments.

*Fourth*, the Court should also deny Plaintiff's motion for preliminary injunction because Plaintiff cannot establish irreparable harm and the equities weigh heavily in the government's favor. The evidence shows that Plaintiff and the Declarant fully recovered after receiving appropriate medical treatment in line with ICE and CDC guidance. Plaintiff and the Declarant have each failed to demonstrate that their desired treatment regimen would have changed the outcome of their recovery. Furthermore, the end of the pandemic and the availability of COVID-19 vaccines and treatments undermine the foundation of Plaintiff's claims—the alleged "high risk or serious harm from COVID-19" due to detention at GSA. Pl.'s Mot. at 20. Moreover, the Executive Branch has a strong interest in being able to respond to an evolving crisis, and to do so in a tailored manner at different detention facilities. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979). The relief Plaintiff requests is not appropriately tailored and would inflict serious harm on the United States and the public if granted because it threatens to disrupt ICE's operations at GSA.

## II.    BACKGROUND

### A.    ICE COVID-19 Guidance

The COVID-19 pandemic ended in May 2023.[3] In conjunction with the end of the COVID-19 public health emergency, the CDC issued post-pandemic guidance for managing COVID-19 in

---

[3]    *Id.*

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

correctional and detention facilities.[4] The post-pandemic guidance recommends facilities "use a combination of COVID-19 hospital admission levels and facility-specific risks to guide decisions about when to apply specific COVID-19 prevention actions." *Id*. For example, the guidance suggests facilities with a low-risk profile only test "residents and staff who have been exposed or who are symptomatic," instead of as an everyday strategy; to "allow individuals to use a mask or respirator based on personal preference," rather than mandate masks; and to "[c]onduct standard infection control, cleaning, and disinfection at all times." *Id*. In July 2023, ICE also published its current *Post Pandemic Emergency COVID-19 Guidelines and Protocol ("Post Pandemic Guidelines")*—developed in consultation with the CDC.[5] This guidance reflects the CDC's own *Guidance on Management of COVID-19 in Homeless Service Sites and in Correctional and Detention Facilities*.[6] Pursuant to these new guidelines,

> ICE facilities will only be required to test asymptomatic detainees upon intake, transfer or release if the facility is at an elevated risk level or the country to which the detainee will be removed requires a negative COVID test. Facility risk assessments based on facility COVID-19 spread and updated CDC community measures of COVID-19 spread will continue to guide operations as needed; if a facility has a high level of risk, the facility will implement higher level protocols. ICE will continue to offer COVID-19 vaccinations to detainees. ICE will continue to abide by all relevant court orders.[7]

For those who do contract COVID-19, ICE recommends the use of Federal Drug Administration ("FDA") approved treatments, including antiviral treatments, when appropriate.

> Infection with SARS-CoV-2, the virus that causes COVID-19, can lead to severe symptoms, hospitalization, and death. The FDA has issued Emergency Use Authorizations for several antiviral products for treatment of COVID-19 patients with mild to moderate symptoms and risk factors for severe illness due to COVID-19 infection. ICE will continue to consider all FDA approved treatments for COVID-19. Treatment with antiviral

---

[4]   *See* Centers for Disease Control and Prevention: COVID-19, May 11, 2023, https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html (last visited Feb. 23, 2024).

[5]   *ICE's Enforcement and Removal Operations Post Pandemic Emergency COVID-19 Guidelines and Protocols*, *Version 2.0*, July 13, 2023, https://www.ice.gov/doclib/coronavirus/eroCOVID19Post PandemicEmergencyGuidelinesProtocol_07132023.pdf. (last visited Feb. 23, 2024).

[6]   *Supra id.*

[7]   *ICE updates detention guidelines to align with the current CDC guidance for COVID-19*, U.S. Immigration and Customs Enforcement, May 11, 2023, https://www.ice.gov/news/releases/ice-adds-thousands-accessible-detention-beds (last visited Feb. 23, 2024).

4

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

1
2
3

medication is known to be effective against a particular variant of SARS-CoV- 2, reduces the risk of progression to severe disease, decreases the need for hospitalization, and reduces the severity of disease thereby improving survival. Treatment appears to work best when started early after the diagnosis is made in appropriately selected patients. For this reason, ICE recommends that each detainee newly diagnosed with COVID-19 be assessed for possible treatment with this medication.[8]

4    The Post Pandemic Guidelines also provide that ICE detention facilities must ensure that ICE

5    detainees receive medical evaluation and treatment at first signs of COVID-19 symptoms and conduct

6    COVID-19 tests on ICE detainees showing or reporting symptoms. Post Pandemic Guidelines at 4, 15-16.

7    And the *ICE's Health Service Corp ("IHSC") Operations Memorandum 21-001 – Coronavirus (COVID-*

8    *19) Vaccination Guidelines and Protocol* and *IHSC COVID-19 Treatment Clinical Guidance ("IHSC*

9    *Clinical Guidance")*, provided to all detention facilities nationwide, offer guidance on the use of antiviral

10   medications for the outpatient treatment of mild to moderate COVID-19 illness in patients with certain

11   risk factors for severe COVID-19 illness and outlines how to prescribe and administer several antiviral

12   medications, as well as the timeline that should be followed. Declaration of Ada Rivera ("Rivera Decl.")

13   ¶¶ 13–14, attached as Ex. A; *see* Ex. A, Attach. C. The IHSC Clinical Guidance also lists the categories

14   of individuals who should not receive antivirals, including those that are asymptomatic, those exhibiting

15   severe symptoms of COVID-19, and those taking medications with a possible drug interaction. Ex. A,

16   Attach. C.

17   IHSC also operates a FY 2024 Medication Formulary for non-IHSC Staffed Detention Facilities

18   ("IHSC Medication Formulary") consisting of approved medications that applies to pharmaceuticals

19   prescribed and dispensed at non-IHSC staffed detention facilities.[9] It is updated once a year and is not

20   intended to be all-inclusive. Ex. A. ¶¶ 16–17. The absence of a drug name on the formulary list does not

21   necessarily denote that the drug is not authorized or that its use is restricted. *Id.* ¶ 17. The IHSC Medication

22
23
24

---

[8]    *See supra* n.4, at 16.

25   [9]    U.S. Dep't of Homeland Sec., *Ice Health Service Corps: FY 2024 Medication Formulary for non-IHSC Staffed Detention Facilities*, https://www.ice.gov/doclib/about/offices/ihsc/pdf/medication
26   FormularyNonIHSC.pdf. (last visited Feb. 23, 2024).

27                                                                5
**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
28   **MOTION FOR A PRELIMINARY INJUNCTION**
     **AND MOTION TO DISMISS**
     No. 1:23-cv-06353-RMI

Formulary now lists two COVID-19 antivirals, Paxlovid and Lagevrio.[10] But regardless of Paxlovid and Lagevrio's earlier absence from IHCS's Medication Formulary, non-IHSC staffed detention facilities were authorized to prescribe and use COVID-19 antivirals as if they were on the formulary list without requiring prior ICE review and approval. Ex. A. ¶ 18. GSA receives its pharmaceutical services from the mail order correctional pharmacy, CorrectRx Pharmacy Services. ICE and CorrectRx Pharmacy Services entered into an agreement in June 2022 authorizing nationwide use and availability of COVID-19 antivirals at no cost to ICE detainees. *Id.* ¶ 19; *see id.*, Attach. E.

**B.      Response to COVID-19 at GSA**

GSA follows ICE's post-pandemic guidelines. Declaration of Stephanie Hicks ("Hicks Decl.") ¶ 5, attached as Ex. B. Individuals detained at GSA are evaluated by a facility medical provider based on best medical practices, including IHSC Clinical Guidance and CDC guidance. *Id.* ¶ 6. GSA's medical team evaluates for COVID-19 treatment, including antiviral therapies, in line with the applicable guidance. *Id.* ¶ 7. As of February 22, 2024, no antiviral therapies have been clinically indicated. *Id.* On January 11, 2024, the IHSC Medication Formulary was updated to include COVID-19 antivirals Paxlovid and Lagevrio. *Id*. ¶ 14. Medications contained on the IHSC Medication Formulary are generally in stock at GSA and administered as soon as necessary. *Id.* ¶ 8.

Under ICE's post-pandemic guidelines, GSA has maintained a green/low risk profile since September 8, 2023, with just twenty-four[11] detainees testing positive in the eight months since the pandemic ended, none of which resulted in hospitalization or death. *See* Ex. A. ¶¶ 22–23; Ex. B ¶¶ 15, 19–20. A green status indicates that there are fewer than two hospitalizations or deaths caused by COVID-19, the medical isolation rate is less than 2% of the general population, and the CDC hospital risk status is low. Ex. A. ¶ 24. GSA's success in the post-pandemic period is most directly attributable to the

---

[10]    *See supra id.*

[11]    Defendants note a discrepancy between the number of detainees that tested positive in August. The Declaration of Ada Rivera notes twenty positive tests in August 2023. Ex. A ¶ 22(b). The Declaration of Stephanie Hicks notes twenty-four positive tests in August 2023. Ex. B ¶ 15. For the purposes of this motion, Defendants rely on the numbers indicated in the Hicks Declaration, as GEO reports its numbers to ICE.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

availability of vaccines and boosters, which have greatly reduced the risks of serious illness or death from contracting COVID-19. Both Plaintiff and the Declarant were offered the COVID-19 vaccine at GSA. Ex. D ¶¶ 8, 15.

### C.    Plaintiff and Declarant

#### i.    Plaintiff Victor Jimenez

##### a.    *Immigration Background*

Plaintiff Victor Jimenez was born in 1969 and is a national and citizen of El Salvador. Declaration of ICE Officer Cesar Contreras ("Contreras Decl.") ¶ 4, attached as Ex. C. Plaintiff became a lawful permanent resident on October 12, 1989, and has since incurred a significant criminal record, including two convictions of attempted murder in violation of Cal. Penal Code § 664/187(a), for which he received a combined enhanced sentence of 24 years and 8 months. *Id.*

In accordance with 8 U.S.C. § 1226(c), the Department of Homeland Security ("DHS") detained Plaintiff at GSA on October 11, 2022. *Id.* ¶ 5. On January 20, 2023, the Los Angeles Immigration Court denied Plaintiff's applications for relief and ordered him removed to El Salvador. *Id.* On July 20, 2023, the Board of Immigration Appeals ("BIA") dismissed Plaintiff's appeal. *Id.* Currently, the Ninth Circuit has automatically stayed Plaintiff's removal pending resolution of his motion for appointment of counsel in connection with his Petition for Review ("PFR"). *Id.*; *see Martinez-Jimenez v. Garland*, No. 23-cv-1695 (9th Cir.).

##### b.    *Medical History*



**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**
**AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI



8

### iii.     Declarant Mikhael Moiseev

#### a.     *Immigration Background*

Declarant Mikhael Moiseev was born in 1966 and is a national and citizen of Russia. Ex. C. ¶ 6. On or about November 1, 1991, the Declarant entered the United States without inspection. *Id.* The Declarant incurred a significant criminal record, including among other things, a conviction for burglary, receiving stolen property, and federal mail fraud. *Id.* ¶ 7. On December 19, 2003, the San Francisco Immigration Court denied the Declarant's applications for relief and ordered her removed to Russia. *Id.* On April 9, 2004, the BIA summarily affirmed the Immigration Court's decision. *Id.* ¶ 9. Years later, the Declarant filed a motion to reopen, and on February 6, 2012, the BIA denied the motion. *Id.* The Declarant petitioned for review of the BIA's denial of her motion to reopen, and on January 13, 2016, the Ninth Circuit denied the petition. *Id.* ¶ 10; *see Moiseev v. Lynch*, No. 12-cv-70612 (9th Cir.).

On August 2, 2023, pursuant to a final order of removal, DHS detained the Declarant at GSA pursuant to 8 U.S.C. § 1231(a)(6) and sought travel documents to effectuate her removal to Russia. *Id.* ¶ 11. DHS released the Declarant on an order of supervision because the agency determined there was no significant likelihood that she could be removed within the reasonably foreseeable future. *Id.* As of October 31, 2023, Declarant Moiseev is no longer detained at GSA. *Id.*; *see* Compl. ¶ 45.

#### b.     *Medical History*



9

1

2

### III.   LEGAL STANDARD

***Dismissal under Federal Rules of Civil Procedure 12(b)(1).*** Dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(1) is required where the court lacks proper subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute." *Id.* "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Thus, "plaintiffs bear the burden both of making an initial, prima facie showing of jurisdictional facts at the pleading stage and of proving those facts by a preponderance at trial." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

Federal jurisdiction requires a live case or controversy at every stage of litigation. *See* U.S. Const. art. III, § 2, cl. 1; *Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* Courts may not "decide questions that cannot affect the rights of litigants in the case before them" or give "opinion[s] advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) and *Aetna Life Ins. Co. of Hartford, Conn. V. Haworth*, 300 U.S. 227, 241 (1937)). Rule 12(b)(1) governs motions to dismiss for lack of standing and mootness, which pertain to a court's subject-matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A challenge under Rule 12(b)(1) "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In a factual challenge, the Court must determine if it has the power to hear the case. Accordingly, "when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes

10

1 concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988);

2 Roberts v. Corrothers, 812 F.2d 1173, 177 (9th Cir.1997) ("In resolving a Rule 12 (b)(1) motion, the Court

3 is not limited to the Complaint's allegations, but may consider extrinsic evidence in determining whether

4 Plaintiff lacks standing.").

5        **Standard for Preliminary Injunction.** "A preliminary injunction is an extraordinary remedy never

6 awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs seeking

7 this extraordinary remedy must establish: 1) that they are "likely to succeed on the merits"; (2) "that they

8 are likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities

9 tip[] in [their] favor"; and (4) "that an injunction is in the public interest." *Id.* at 20. These last two factors

10 "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

11        But plaintiffs who seek a mandatory injunction—one that goes beyond simply maintaining the

12 status quo during litigation—bear a "doubly demanding" burden: "[they] must establish that the law

13 and facts clearly favor [their] position, not simply that [they are] likely to succeed." *Garcia v. Google,*

14 *Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Because this is a threshold inquiry for mandatory

15 injunctions, the Court need not consider the other *Winter* factors if the plaintiff cannot meet this

16 element. *See id.* The Ninth Circuit has cautioned that mandatory injunctions are "particularly disfavored"

17 and "should not issue in doubtful cases." *Id.* Nor should they be granted "unless extreme or very serious

18 damage will result." *Marlyn Nutraceuticals, Inc.* v. *Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79

19 (9th Cir. 2009).

20 **IV.    ARGUMENT**

21       **A.    The Court should dismiss Plaintiff's Complaint and deny Plaintiff's Motion for**

22           **Preliminary Injunction because the Court lacks jurisdiction to grant Plaintiff the class-wide relief he seeks under 8 U.S.C. § 1252(f)(1).**

23        At the threshold, the Court should dismiss Plaintiff's Complaint and deny Plaintiff's preliminary

24 injunction motion because under 8 U.S.C. § 1252(f)(1), the Court lacks jurisdiction to grant Plaintiff the

25

26

27                                  11

28 **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

class-wide relief he seeks.[12] *See Aleman-Gonzalez*, 596 U.S. at 550. As the Supreme Court noted, "the critical language in [section 1252(f)(1)] strips lower courts of 'jurisdiction or authority' to 'enjoin or restrain the operation of' the relevant statutory provisions." *Id.* at 548. After analyzing the phrase "enjoin or restrain the operation of," the Supreme Court explained that 8 U.S.C. § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Id.* at 550. The statutory provisions at issue, which include, but are not limited to, 8 U.S.C. §§ 1226 and 1231, "charge the Federal Government with the implementation and enforcement of the immigration laws governing the inspection, apprehension, examination, and removal of aliens. *See Aleman-Gonzalez*, 596 U.S. at 550. "Accordingly, the 'operation of' the relevant statutes is best understood to refer to the Government's efforts to enforce or implement them." *Id.* "[T]he operation of the provisions is a reference not just to the statute itself but to the way that it is being carried out." *Id.* (alterations and quotation marks omitted). Specifically, 8 U.S.C. § 1226 gives ICE the authority to arrest and detain an individual "pending a decision on whether the [individual] is to be removed from the United States." 8 U.S.C. § 1226(a). This statutory provision also requires ICE to detain certain criminal noncitizens. 8 U.S.C. § 1226(c). Section 1231(a) authorizes ICE to detain and remove noncitizens after a noncitizen is ordered removed from the United States, and explicitly requires ICE to detain those noncitizens for a period of at least 90 days, 8 U.S.C. § 1231(a)(1)(A)–(B). Because ICE has the statutory authority to detain noncitizens, and in some circumstances is even required to, ICE also has the authority and discretion to contract with private contractors who provide detention space and services for detainees.[13]

---

[12]    Title 8 U.S.C. § 1252(f)(1) provides: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated."

[13]    8 U.S.C. § 1231(g)(1) gives both "responsibility" and "broad discretion" to the Secretary of Homeland Security "to choose the place of detention for deportable aliens." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir.), *amended by* 807 F.2d 769 (9th Cir. 1986). "The Secretary has

12

It is ICE's authority under these sections that 8 U.S.C. § 1252(f)(1) protects. Here, the Court lacks the ability to grant the injunctive relief that Plaintiff requests because the relief he seeks would restrain "the way that" sections 1226 and 1231 "[are] being carried out" by ICE on a class-wide basis. *Id*. Plaintiff requests a broad injunction mandating immediate changes at GSA, including stocking antiviral medicine onsite, requiring specific timelines for treatment, increased testing, and an evaluation within 24-hours of reporting symptoms,[14] posting educational material, and monthly reporting. Pl.'s Mot. at 21–23, ECF No. 20-15, Proposed Order; Compl., Prayer for Relief ¶ c. The immediate changes deviate from CDC guidance and would greatly impact ICE's implementation of its detention and removal responsibilities. To begin, ICE has a multi-year contract with GEO for the detention of noncitizens at GSA, and that contract includes the provision of medical services for all detainees at GSA. An injunction imposing changes that go beyond ICE and GEO's contractual agreement, including any changes that differ from federal or CDC guidelines, would jeopardize the underlying contract and ICE's ability to detain

---

general administrative powers to contract with private parties. The Secretary has "authority to make contracts . . . as may be necessary and proper to carry out the Secretary's responsibilities." *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022) (quoting 6 U.S.C. § 112(b)(2)). "Pursuant to federal procurement regulations, the Secretary has "authority and responsibility to contract for authorized supplies and services," and the Secretary "may . . . delegate broad authority to manage the agency's contracting functions to heads of such contracting activities." *Id.* (quoting 48 C.F.R. § 1.601(a)). ICE, a component of the Department of Homeland Security, carries out immigration detention and "contracts out its detention responsibilities to (1) private contractors, who run facilities owned either by the contractor or the federal government, and (2) local, state, or other federal agencies." *Id.*

[14]  Plaintiff requests that antiviral treatment be initiated within 12 hours of prescription, Pl.s' Mot. 21, but CDC guidance recommends starting antiviral treatment as soon as possible, or within 5 or 7 days of the onset of symptoms. CDC COVID-19 Treatment and Medications, Jan. 18, 2024, https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html (last visited Feb. 23, 2024) ("CDC COVID-19 Treatment and Medications"). Plaintiff requests that antiviral medication be stocked at GSA, Pl.s' Mot. 21, but CDC guidance does not require stocking medication on site, rather it focuses on access to the medication. *See generally* CDC COVID-19 Treatment and Medications. Plaintiff requests that GSA offer rapid testing to any class member who exhibits symptoms within 24 hours of reporting symptoms, Pl.s' Mot. 21-22, but CDC recommends testing immediately (and Defendants have incorporated that guidance into their Post Pandemic Guidelines). CDC COVID-19 testing: What You Need To Know, Sep. 25, 2023, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/testing.html (last visited Feb 23, 2024). Plaintiff requests an evaluation, within 24 hours, for those who test positive for COVID-19, Pl.s' Mot. 22, but CDC guidance does not place a 24-hour timeframe on such evaluation. *See* CDC COVID-19 Treatment and Medications. CDC guidance also does not recommend specific educational materials for antiviral treatment or monthly reporting. Pl.'s Mot. 23; *see generally* CDC COVID-19 Treatment and Medications.

13

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION
AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

noncitizens at GSA. At the very least, a court order mandating Plaintiff's extensive changes would intrude into the day-to-day administration of operations at GSA as it would require increased monitoring and recording of information on every individual who falls within the broad class identified by Plaintiff. The proposed injunction also disregards the need for individualized clinically indicated medical treatment plans to identify, prevent, and treat COVID-19. At most, a court order mandating these changes could force ICE to have to choose between no longer detaining individuals at GSA or paying additional costs to do so. Where ICE is required to detain certain noncitizens under 8 U.S.C. § 1231(a)(1)(A) and certain criminal noncitizens under 8 U.S.C. § 1226(c), an injunction that interferes with this duty restrains ICE's ability to operate and therefore, is barred by section 1252(f)(1). Thus, the Court should deny Plaintiff's preliminary injunction motion and dismiss Plaintiff's Complaint because it is barred from granting the requested relief.

**B.     The Court should dismiss Plaintiff's Complaint and deny Plaintiff's Motion for Preliminary Injunction because Plaintiff lacks standing to bring his claims.**

Even assuming the Court determines that section 1252(f)(1) does not bar jurisdiction to issue an injunction, this Court should still dismiss the Complaint because Plaintiff lacks standing to bring his claims. The Court may consider outside evidence in reaching this decision because in a factual challenge, "when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy*, 850 F.2d at 560. And in a motion for preliminary injunction, it is Plaintiff's burden to "establish that the law and facts clearly favor [their] position . . . ." *Garcia, Inc.*, 786 F.3d at 740.

Standing is "an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The standing inquiry is "especially rigorous when reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997). To satisfy the "'irreducible constitutional minimum' of standing" under Article III, the party invoking

14

federal jurisdiction must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc v. Robins.*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560). "Foremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that is 'concrete and particularized.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Lujan*, 504 U.S. at 560). Speculative injuries do not confer Article III standing. *Lujan*, 504 U.S. at 555, 560-1.  Here, the only injury that Plaintiff alleges in his Complaint is "an increased risk of serious harm from COVID-19." Compl. ¶ 68. But the facts do not support Plaintiff's allegation.

Here, Plaintiff has not suffered an injury in fact, traceable to Defendants' COVID-19 policies. And any future injury is speculative rather than cognizable. The medical records for Plaintiff indicate that he never tested positive for COVID-19 and never had any hallmark symptoms of COVID-19. Ex. D ¶¶ 20, 23; *see generally* Ex. E. Thus, the treating physician correctly determined that Plaintiff was not a candidate for Paxlovid. The treating physician's declaration for the Declarant indicates that, while she did test positive for COVID-19, she was asymptomatic. Ex. D. ¶ 10. And again, without symptoms, the treating physician properly determined in her medical discretion that the Declarant should not receive Paxlovid. *See id.* ¶12. Neither Plaintiff nor the Declarant suffered any injury traceable to Defendants—if anything, the medical records and treating physician's declaration indicate that Plaintiff and the Declarant received timely treatment that was appropriate for their symptoms and in line with ICE and CDC guidance. Additionally, the evidence shows that both Plaintiff and the Declarant fully recovered after receiving medical treatment. Ex. D. ¶¶ 13; 24. According to the medical professionals who conducted their evaluations for antivirals, neither were appropriate for antiviral treatment, and Plaintiff cannot establish an injury where he has failed to show that his desired treatment regimen would have changed the outcome of his recovery. Ex. D ¶¶ 12, 23. Plaintiff is not entitled to impose excessive and mandatory obligations on Defendants or prescribe his own treatment regimen based on a conjectural injury that he has not suffered. *Spokeo, Inc.*, 578 U.S. at 340.

Moreover, Plaintiff cannot show any likelihood of a future injury. The Supreme Court has held that "in the absence of a realistic threat of future injury," a plaintiff cannot "'demonstrate a case or controversy'" that would justify relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). A speculative claim of future injury is not enough. *Id.* at 111. Here, Plaintiff fails to demonstrate that he is likely to suffer harm in the future for several reasons. First, GSA has maintained a green/low risk profile since September 8, 2023, with just twenty-four detainees testing positive in the eight months since the pandemic ended, none of which resulted in hospitalization or death. *See* Ex. A. ¶¶ 22–23; Ex. B ¶¶ 20–21. A green status indicates that there are fewer than two hospitalizations or deaths caused by COVID-19, the medical isolation rate is less than 2% of the general population, and the CDC hospital risk status is low. Ex. A. ¶ 24. Second, Plaintiff has received multiple COVID-19 vaccinations and boosters, which provide sustained protection against severe disease and death. Ex. D ¶ 15; *see infra n.*18. And third, the medical records confirm that GSA is providing thorough medical treatment, in line with ICE and CDC guidance, that is successful. *See supra* Section II.B. GEO's medical team at GSA evaluates specifically for COVID-19 antiviral therapies in line with applicable guidance. Ex. B ¶¶ 5–7; Ex. D ¶¶ 5–6. Finally, antivirals have always been available at GSA, when clinically indicated, and are obtained from nearby Pharmacies as soon as possible, when needed. *See* Ex. A ¶ 18; Ex. B ¶ 9. Based on these facts, Plaintiff has failed to meet his burden of showing any "realistic threat of future injury." *Lyons*, 461 U.S. at 103.

Any additional court involvement is unnecessary here, where Plaintiff is receiving appropriate medical treatment based on his individual circumstances, antiviral medication is readily available to those that qualify, testing is occurring upon symptom onset, and the likelihood of future injury is speculative. GEO's medical team at GSA has confirmed, and the medical records reflect, that they follow ICE and CDC guidance, including evaluating specifically for COVID-19 antiviral therapies. *See supra* Section II.B. Defendants have also updated the IHSC Medication Formulary to include the antivirals that Plaintiff requests. Ex. A ¶ 20. Defendants' COVID-19 policies include testing any individuals that are symptomatic. *Id.* ¶ 10. Thus, the Court should dismiss Plaintiff's Complaint and deny Plaintiff's motion for preliminary injunction because Plaintiff has not established that he has standing to bring his claims.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

1

2

**C.      The Court should deny Plaintiff's Motion for Preliminary Injunction because Plaintiff fails to show a likelihood of success with his Fifth Amendment Claims.**

3

Even if the Court reaches the merits of Plaintiff's preliminary injunction motion, Plaintiff cannot

4

establish a likelihood of success on these merits as his two substantive due process claims fail. Plaintiff

5

contends that Defendants have not provided "conditions of reasonable health and safety to people in its

6

custody" and that this violates his and any proposed class members' Due Process rights. Compl. ¶¶ 66–

7

73; Pl.'s Mot. at 12. Plaintiff is wrong. As the Ninth Circuit explained in *Roman*, the government violates

8

the Fifth Amendment right to reasonable health and safety, if, and only if:

9

> [It] made an intentional decision with respect to the conditions under which the plaintiff
> was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious
> harm; (iii) the [government] did not take reasonable available measures to abate that risk,
> even though a reasonable official in the circumstances would have appreciated the high
> degree of risk involved …; and (iv) by not taking such measures, the [government] caused
> the plaintiff's injuries.

10

11

12

*Roman*, 977 F.3d at 943. Applying these standards, Plaintiff fails to state a violation of the Fifth

13

Amendment claim and thus, cannot demonstrate entitlement to a preliminary injunction on this claim.

14

**i.      Defendants have not made any intentional decision to deny Plaintiff access to antiviral medications at GSA or put Plaintiff at any greater risk (Factor 1 and Factor 2).**

15

16

Plaintiff asserts that "Defendants have made an intentional decision not to implement responsive

17

measures that would protect the health and safety of [Plaintiff] despite being fully aware of the risks

18

COVID-19 poses to them." Pl.'s Mot. at 13; *see also* Compl. ¶ 52. This contention is simply not true.

19

Beyond the extensive guidance, directives, and requirements that Defendants have issued and updated

20

since the start of the pandemic in 2020, in July 2023, Defendants updated ICE's nationwide policies

21

regarding COVID-19 antiviral medications to encourage all facilities to assess whether antiviral

22

medication is appropriate for each individual who tests positive for COVID-19 and, if so, administer it.

23

Defendants' current COVID-19 policy, which is folded into ICE's contract with GEO,[15] states:

24

25

---

[15]      Declaration of Supervisory Detention and Deportation Officer Cesar Contreras ¶ 6, attached as

26

Ex. F (ICE's contract with Geo includes language that GEO must abide by the Performance Based

27

17

28

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**
**AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

> Treatment with antiviral medication is known to be effective against a particular variant of SARS-CoV-2, reduces the risk of progression to severe disease, decreases the need for hospitalization, and reduces the severity of disease thereby improving survival. Treatment appears to work best when started early after the diagnosis is made in appropriately selected patients. For this reason, ICE recommends that each detainee newly diagnosed with COVID-19 be assessed for possible treatment with this medication.

*See* Post Pandemic Guidelines at 16. GEO follows this directive, as well as Defendants' IHSC COVID-19 Treatment Clinical Guidance. Ex. B ¶¶ 5–6. The purpose of IHSC's COVID-19 Treatment Clinical Guidance is "to provide guidance on the use of antiviral medications for the outpatient treatment of mild to moderate COVID-19 illness in patients with certain risk factors for severe COVID-19 illness." Ex. A, Attach. C. This guidance outlines how to prescribe and administer several antivirals as well as the timeline that should be followed. *Id.* ICE also has added two COVID-19 antivirals, Paxlovid and Lagevrio, to IHSC's Medication Formulary. *Supra* n.8. Contrary to Plaintiff's assertions, Defendants' policies regarding COVID-19 antiviral treatment have *encouraged* the use of antiviral medications and, if anything, *promoted* the reasonable health and safety of Plaintiff. Indeed, Plaintiff's own argument shows that he is aware of Defendants intentional policies promoting antiviral treatment. Compl. ¶ 52; Pl.'s Mot. at 14–15. For instance, Plaintiff quotes the same paragraph in Defendants' Post Pandemic Guidelines that includes Defendants' recommendation to quickly assess and prescribe antivirals when appropriate. Pl.'s Mot. at 14; Post Pandemic Guidelines at 16. Thus, Plaintiff fails to show a likelihood of success on the merits of his claim because he presents no evidence to meet his burden of establishing that Defendants made an intentional decision not to support timely supply of antiviral treatment to detained individuals. Pl.'s Mot. at 16; *see also* Compl. ¶ 72.

Plaintiff also argues that "Defendants' failure to ensure the availability of [antiviral] COVID-19 drugs [] sharply increases the risk that [Plaintiff] will die or face serious complications from COVID-19." Pl.'s Mot. at 16; *see also* Compl. ¶ 73. However, despite Plaintiff's claim, Defendants are not failing to ensure the availability of antiviral medication. Defendants' nationwide policies have recommended

National Detention Standards, including Section 4.3, Part C. Communicable Disease and Infection Control, which allows for written plans addressing new public health issues).

18

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

treating those who do contract COVID-19 with antiviral medications, when appropriate. *See* Post Pandemic Guidelines at 14. Further, as noted, Defendants have added two COVID-19 antiviral medications to the IHSC Medication Formulary, even though "non-IHSC staffed detention facilities have been authorized to prescribe and use COVID-19 antivirals as if they were on the formulary list without requiring prior ICE review and approval." Ex. A ¶ 18; s*ee supra* n.8. Far from putting Plaintiff at greater risk, Defendants' policies have promoted vaccines, which greatly reduce Plaintiff's risks of serious illness or death from contracting COVID-19. *Martinez v. CoreCivic*, No. 20-cv-1309, 2021 WL 2550319, at \*8 (D.N.M. June 22, 2021) ("In fact, every time a staff member, or pre-trial detainee, or prisoner is vaccinated, the overall risk of outbreak at [the detention facility] decreases."). Indeed, the evidence shows that Plaintiff received ███████████████████████████ and *never* tested positive for COVID-19 while at GSA, Ex. D ¶¶ 15, 23, and the Declarant was offered ████████████ ██████████ *Id*. ¶ 8. After the Declarant, who was asymptomatic at the time, tested positive for COVID-19 after an exposure, the medical staff examined and monitored her daily. *Id.* ¶ 11. Neither Plaintiff nor the Declarant were eligible for antiviral treatment, as Plaintiff never tested positive for COVID-19 and the Declarant was asymptomatic the entire duration of her infection. *See generally* Ex. D.

Given ICE's extensive COVID-19 guidance, which specifically tracks CDC's guidance for detention facilities, the availability of vaccines and boosters, the documented monitoring of Plaintiff and the Declarant when they reported symptoms, and the recent addition of two antivirals onto the IHSC Medication Formulary list, Plaintiff fails to meet his burden of establishing that ICE made an intentional decision to deny access to antiviral medications or that Plaintiff was at substantial risk of suffering serious harm due to ICE's policies. Because Plaintiff is unlikely to succeed on the merits of his claim, the Court should dismiss his motion for preliminary injunction.

        **ii.**     **Defendants have not acted with reckless disregard, nor caused Plaintiff's injuries (Factor 3 and Factor 4).**

Plaintiff also incorrectly argues that "Defendants have not taken reasonably available measures to abate COVID-19 risks." Pl.'s Mot. at 17; *see also* Compl. ¶ 70. To satisfy the third factor, Plaintiff must

19

show something "akin to reckless disregard." *Fraihat*, 16 F.4th at 636. *"*The 'reckless disregard' standard is a formidable one." *Id.* Neither "mere lack of due care, nor an inadvertent failure to provide adequate medical care, nor even medical malpractice, without more, is sufficient to meet this standard." *Id.* (internal quotations omitted). Plaintiff must show that Defendants "disregarded an excessive risk to the plaintiff['s] health and safety by failing to take reasonable and available measures that could have eliminated that risk." *Id.* (internal quotations omitted). The available evidence makes clear that Defendants' conduct does not satisfy this reckless disregard standard.

Defendants' guidance and directives encourage all facilities to consider antiviral treatment quickly, if appropriate. *See* Post Pandemic Guidelines at 16. ICE's guidance also states that "all detention facilities housing ICE detainees must also comply with the following guidance found in the CDC's *Guidance on Management of COVID-19 in Homeless Service Sites and in Correctional and Detention Facilities." See supra* n.4. And ICE's IHSC Medication Formulary now lists two COVID-19 antiviral medications, which have always been easy to prescribe. *Supra* n.8; Ex. A ¶ 18. Despite these policies and their application, Plaintiff challenges the COVID-19 Post Pandemic policies Defendants implemented nationwide, seeking to substitute their medical opinion or preferred medical treatment plan in place of the guidance crafted by knowledgeable officials, in consultation with the CDC. *See generally* Pl.'s Mot.; Compl. But the Ninth Circuit has already held that Defendants' COVID-19 policies, issued during the height of the pandemic, did not amount to reckless disregard, but rather that "the deliberate indifference standard recognizes that the Executive must have some discretion in addressing a complex problem like how to react to a global pandemic. *Fraihat*, 16 F.4th at 619.[16] In *Fraihat*, the Ninth Circuit vacated the district court's grant of a preliminary injunction and class certification, holding that ICE's nationwide COVID-19 policies do not meet the "reckless disregard" or "deliberate indifference" standards and therefore do not violate the Fifth

---

[16]     Notably, Plaintiff does not engage with the Ninth Circuit's more recent decision in *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 619 (9th Cir. 2021). But *Fraihat* is much more analogous to the Plaintiffs' claims here, which seek to challenge Defendants' nationwide policies. Regardless of whether the Court uses the deliberate indifference or reckless disregard standard, the Ninth Circuit has already held that Defendants' COVID-19 policies do not rise to either.

20

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**
**AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

Amendment. *Id*.[17] The Ninth Circuit recognized that, "the slew of national guidance, directives, and mandatory requirements that [ICE] issued and then frequently updated . . . belies the notion that ICE acted with 'reckless disregard.'" *Id*. Here, ICE's current policies, updated to address new protective measures and treatments even after the pandemic has ended, and including adding two antivirals to the IHSC Medication Formulary, are even more robust than the policies the Ninth Circuit addressed in *Fraihat* and cannot possibly rise to the level of something "akin to reckless disregard," regardless of Plaintiff's desire that it does. *Roman*, 977 F.3d at 943; *see Wilson v. Ponce*, No. 20-cv-4451, 2022 WL 2155119, at *8 (C.D. Cal. Feb. 2, 2022) ("[T]he time has come to end this litigation. The current situation, happily, is far from the literally mortal situation that existed in the spring of 2020."); *Martinez v. CoreCivic*, 2021 WL 2550319, at *7 (D.N.M. June 22, 2021) ("Refusal notwithstanding, the mere availability of the vaccine at [the Correction Center] also moots this action (and strips standing from all detainees for all future risk-based coronavirus actions), given that this lawsuit is premised entirely on COVID-19 exposure.");[18] *see also Fraihat*, 16 F.3d at 637 ("[P]laintiffs have not made a clear showing that in responding to the evolving and unprecedented COVID-19 pandemic, ICE acted with deliberate indifference to medical needs or in reckless disregard of health risks.") (internal quotations omitted).

Plaintiff further argues that Defendants have caused Plaintiff's injuries by putting Plaintiff "in imminent danger caused by the unsafe conditions that Defendants fail to mitigate." Pl.'s Mot. 18; *see also* Compl. ¶ 52. However, none of the facts in this case support this contention. The question here is whether Defendants' "*intentional decision caused Plaintiff's injuries*." *Roman*, 977 F.3d at 943 (emphasis added). As explained, Defendants have not made an intentional decision to deny Plaintiff or the Declarant antiviral medication—neither of them had symptoms to indicate its need. *See generally* Ex. D. Moreover,

---

[17]   Refusal of the vaccine does not preserve a detainee's claim. *See, e.g., United States v. Garcia*, No. 14-cr-20035, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) ("Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. . . . Indeed, while [a detainee] is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk.") (collecting cases).

[18]   *Id*.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**
**AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

Defendants' COVID-19 policies encourage antiviral treatment, and the antiviral medications desired by Plaintiff are easily obtained. Ex. A ¶ 18; Ex. B ¶¶ 8-9. Even prior to the change of the IHSC Medication Formulary, ICE explicitly stated that the list was not exhaustive, and GEO had a procedure for obtaining medications not included on the list. Ex. A ¶¶ 17–18; Ex. B ¶¶ 8–13. Thus, Plaintiff fails to raise any compelling argument that Defendants made any intentional decision or caused any injury, particularly where Plaintiff only raises speculative injuries since he *never* tested positive for COVID-19. Pl.'s Mot. at 18; Compl. ¶ 52.

Instead, Plaintiff mirrors his unconstitutional punishment arguments, asserting that he is "in the agonizing position of being detained in an environment known to drastically increase the risk of contracting COVID-19 while simultaneously facing potentially life-threatening medical complications from the disease." *Id*. (emphasis omitted). But even under the guise of an unconstitutional punishment claim, Plaintiff's contentions are unsupported. As an initial matter, GSA has maintained a green/low risk profile since September 8, 2023, with just twenty-four detainees testing positive in the eight months since the pandemic ended, none of which resulted in hospitalization or death. Ex. A ¶¶ 22–25. Moreover, the two remaining individuals at issue here, Plaintiff and the Declarant, all received significant medical care and were not appropriate for antiviral treatment. *See generally* Ex. D. Plaintiff was seen ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ for headaches, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. E, at 43, 61, 77, 96, 104, 107. He did not have any of the hallmark COVID-19 symptoms and when he was tested for COVID-19, due to an outbreak at the facility, he tested negative. Ex. D ¶¶ 20, 23. And although the Declarant tested positive for COVID-19 after an exposure, she was asymptomatic the entire duration of her infection. *Id*. ¶¶ 10–12. Thus, despite Plaintiff's contrary claims, the facts do not show that Plaintiff or the Declarant are in "unsafe conditions" or that Defendants have failed to mitigate the risk of increased illness.

Moreover, conditions of confinement that are "reasonably related to a legitimate Governmental objective," such as detention mandated or permitted by statute, do not "amount to 'punishment.'" *Bell v. Wolfish*, 441 U.S. at 539. So long as confinement serves a "legitimate governmental purpose" and is not

22

excessive, it is not an impermissible "punishment" in violation of due process. *Id.* at 538–39. Here, ICE detained Plaintiff pursuant to its mandatory detention authority under 8 U.S.C. § 1226(c) due to his criminal convictions and detained the Declarant in its discretion under section 1231 due to her final removal order. *See supra* Section II.C.ii. In maintaining custody of Plaintiff and those similarly situated, in detention facilities, the government protects the public and ensures that the Nation's immigration laws are properly enforced. The Supreme Court has recognized that preventing detained aliens from absconding and ensuring that they appear for removal proceedings, as well as protecting the community from dangerous criminal aliens, are legitimate governmental objectives. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018). Here, contrary to Plaintiff's assertions, Plaintiff received adequate medical care in line with the Post Pandemic Guidelines and CDC guidance. *See* Ex. D ¶¶ 14-24; Ex. B ¶ 7. Adequate medical care in mandatory detention does not rise to the level of unconstitutional punishment. *See Alvarez v. Larose*, 445 F. Supp. 3d 861, 867 (S.D. Cal. 2020), as amended (June 7, 2020) (Discussing Plaintiffs' unconstitutional punishment claim and explaining that the Fifth Amendment "cannot require a complete elimination of all risk of contracting the [COVID-19] virus . . . [h]olding otherwise would place an impossible burden on detention facilities."); *see also Bell*, 441 U.S. at 535 (Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense….") Opening the door to permit Plaintiff's release from mandatory immigration detention over a disagreement about the course of his medical treatment—an alleged failure to prescribe a single drug whose use is to be determined by a medical professional, when Plaintiff never tested positive for COVID-19—makes the true thrust of Plaintiff's motion clear: an intent to challenge the entire practice of immigration detention itself regardless of the speculative nature of his arguments.

Plaintiff likewise makes a half-hearted attempt to claim that Defendants violated Plaintiff's "right to be free of punishment in civil detention" or that Defendants imposed a restriction or condition in response to COVID-19 that reflects unconstitutional "punishment" under the Fifth Amendment. Pl.'s Mot. at 18; Compl. 77. Plaintiff bases this claim solely on the argument that because California correctional facilities have antiviral medications on their formulary list or have updated protocols that instruct the

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION
AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

1  facilities to make antiviral medications available, they are being "held in more restrictive conditions than

2  their criminal counterparts." Pl.'s Mot. at 19; Compl. ¶ 55.

3  But as has been explained, Defendants have added antiviral medications to the IHSC Medication

4  Formulary and have instructed all facilities to assess whether antiviral treatment is appropriate for

5  detainees who test positive for COVID-19. *See supra* n.8.  Even before this update, the medical staff at

6  GSA could prescribe medications that are not on the IHSC Medication Formulary, including antivirals, if

7  the medication was needed. Ex. B ¶ 10. In these circumstances, the medication would be available 24-48

8  hours later, depending upon availability from the supplier. *Id.* ¶10e. Accordingly, Plaintiff's assertion that

9  he does not have access to antivirals because the IHSC Medication Formulary does not include antiviral

10 medication has no merit. Pl.'s Mot. 19; Compl. ¶ 47. In short, as in *Fraihat*, the policies at issue here are

11 reasonable, and do not come close to "reckless disregard" or "deliberate indifference." Plaintiff is unlikely

12 to succeed on the merits of his claim and this case should be dismissed.

### B.   The Court must deny Plaintiff's Motion for Preliminary Injunction because Plaintiff fails to show irreparable injury absent injunctive relief.

Not only should the court deny Plaintiff's motion for preliminary injunction because Plaintiff fails to demonstrate a likelihood of success on the merits, but the Court should deny the motion because Plaintiff also cannot show irreparable harm. Defendants have taken extensive measures to address the harms and risks presented by COVID-19 and to address the evolving treatment options, long after the COVID-19 pandemic has ended. Plaintiff nonetheless contends that the "dangerous, unsafe conditions [at GSA] constitute irreparable harm," and that by not having "potentially lifesaving treatment on hand," Plaintiff is likely to suffer irreparable harm. Pl.'s Mot. at 19–20. But to establish irreparable harm, the movant must first "demonstrate that irreparable injury is likely in the absence of an injunction." A court "will not issue [injunctive relief] if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury." *Park Village Apartment Tenants Association v. Foster*, 636 F.3d 1150 (9th Cir. 2011) (internal citation and quotation marks omitted). Rather, a movant "must establish a likelihood of irreparable harm that is grounded in evidence, not in conclusory or speculative allegations of harm."

24

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1133 (9th Cir. 2014).

Plaintiff's conclusory statements regarding harm are not enough. "There is no doubt that COVID-19 poses risks of harm to all Americans." *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020). "But the question is whether Plaintiffs have shown that they will suffer irreparable injuries even after accounting for the protective measures in [GSA]." *Swain v. Junior*, 958 F.3d 1081, 1090 (11th Cir. 2020); *Valentine*, 956 F.3d 797. Plaintiff generally asserts that everyone in the proposed class is at risk of infection unless they are granted their requested relief. Pl.'s Mot. at 19–20. But the relief he seeks, a court order mandating testing requirements that go beyond CDC recommendations, and the immediate availability of antiviral treatments, is proof that the claims against Defendants are unfounded. Pl.'s Mot. at 21–22. Defendants' Post Pandemic Guidance already follows CDC recommendations on testing. *See* Post Pandemic Guidance at 4 ("Detainees will be tested when testing is recommending based on clinical and CDC guidelines."); *id.* at 16 ("[A]ll detention facilities housing ICE detainees must also comply with [CDC guidance]."). And Defendants have added two antiviral medications to the IHSC Medication Formulary. Ex. A ¶ 20; Ex. B ¶ 8 ("Medication contained on the ICE formulary is generally in stock at GSA. When a medication is in stock it is administered as soon as necessary by GEO Medical."). Moreover, the COVID-19 public health emergency ended with the proliferation of vaccines and treatments. *See supra* n.1. Now, once vaccinated, there is no reasonable expectation that Plaintiff, or any of the putative class members, will be subject to the irreparable harm of serious illness or death COVID-19 that once existed. *See Clark v. Governor of New Jersey*, 53 F.4th 769, 778 (3d Cir. 20220 (noting the unlikelihood of return to pandemic restrictions due to increased "knowledge of the virus and its vectors of transmission, the rollout of vaccines, and the availability of therapeutic responses to infection.") (citations omitted). Indeed, "[t]he totality of evidence across many studies . . . shows that [] COVID-19 vaccines provide sustained protection against severe disease and death, the purpose of their vaccine."[19] With the implementation of

---

[19]     *5 Things You Should Know about COVID-19 Vaccines*, Centers for Disease Control and Prevention - Respiratory Viruses, October 13, 2023. https://www.cdc.gov/respiratory-viruses/whatsnew/5-things-you-should-know.html. (last visited Feb. 23, 2024).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**
**AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

these medical advances, courts have consistently refused to grant further relief based on medical vulnerability to COVID-19. *See Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 164 (4th Cir. 2021) ("We are now better informed concerning COVID-19. The availability of vaccines and other measures to combat the virus have led to a significant change in the relevant circumstances — including the resumption of pre-COVID-19 activities — as evidenced by the removal of many restrictions."); *see also Brinson v. Aviles*, No. 22-cv-5389 (MCA), 2023 WL 3867241, at *4 (D.N.J. June 7, 2023) ; *Wilson*, 2022 WL 2155119, at *8; *Martinez*, 2021 WL 2550319, at *7. Thus, with the availability of treatments and vaccines, detainees are no longer at an unreasonable risk of suffering severe illness or death from COVID-19 and cannot establish likelihood of irreparable harm.

C.      **The Court must deny Plaintiff's Motion for Preliminary Injunction because the equities weigh heavily against preliminary relief.**

Finally, the equities in this case weigh heavily in favor of the government. The balance of equities and public-interest components of the preliminary injunction analysis typically "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. A district court may not dismiss the government's legitimate interests "in only a cursory fashion." *Winter*, 555 U.S. at 26. Instead, it must give serious consideration to the harm a preliminary injunction would inflict on the government and, consequently, the public the government serves. *See, e.g.*, *id.*

It is well settled that there is a significant public interest in the enforcement of immigration laws and the routine workings of day-to-day functions of the immigration detention system. *See, e.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 562 (1976). Plaintiff's proposed preliminary injunction seriously threatens that interest. Among other things, Plaintiff's requested relief threatens to disrupt ICE's operations at detention facilities nationwide and will require substantial changes to ICE detention facility operations and intergovernmental service agreements with state and local governments. *See generally* Pl.'s Mot. at 20–23; *See supra* Section III.A. An injunction overriding Defendants' nationwide guidance— based on CDC recommendations—and tailored measures to prevent and contain COVID-19 intrudes into the day-to-day administration of detention facilities, disregards the need for individualized treatment

26

1  plans, and unnecessarily infringes on the operations of ICE facilities, even when a facility has few or no

2  confirmed cases of COVID-19.  Plaintiff requests an injunction mandating immediate changes at GSA

3  regardless of whether those changes are tailored to the needs of individual detention settings, whether the

4  required standards are consistent with federal or CDC guidelines, and without providing time for ICE to

5  assess and address any inconsistencies or problems with those standards. Pl.'s Mot. at 21–23.

6       Not only is the proposed preliminary injunction wholly unnecessary under the facts of this case, it

7  would create "an administrative nightmare" for Defendants to comply with, particularly with the policies

8  and procedures going beyond CDC recommendations. *See Valentine*, 956 F.3d at 802 (holding that courts

9  should give CDC guidance its due weight). This is the sort of micromanagement of ICE operations that

10  other circuits have rejected. *See, e.g.*, *Swain*, 958 F.3d at 1090 (staying injunction that hamstrung "officials

11  with years of experience running correctional facilities, and the elected officials they report to, from acting

12  with dispatch to respond to this unprecedented pandemic"); *Valentine*, 956 F.3d at 806 (staying injunction

13  that prescribed testing, cleaning, and information-sharing standards at detention facilities). These concerns

14  are only magnified when applied to COVID-19 policies and directives updated long after the pandemic

15  has ended to account for evolving treatment trends.

16       Plaintiff and putative class members, by contrast, will not suffer comparable harm without an

17  injunction. The government has taken extensive measures to address the harms and risks presented by

18  COVID-19 and to address plaintiff's concerns. *See* Post Pandemic Guidelines. Moreover, Plaintiff's

19  claims of future injury are hypothetical, particularly in light of the policies that ICE has created and

20  disseminated. *Cf. Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc*., 736 F.3d 1239, 1250 (9th Cir. 2013)

21  (conclusory or speculative allegations are not enough to establish a likelihood of irreparable harm). The

22  measures Defendants have put in place to mitigate against the risk of COVID-19 were extensive at the

23  time the Ninth Circuit vacated the district court's preliminary injunction in *Fraihat*. Defendants' efforts

24  have only increased since that time.

25       Because the harm to the public interest from Plaintiff's proposed preliminary injunction far

26  outweighs any harms Plaintiff has demonstrated he will experience without injunctive relief, the Court

27

28  **DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**
**AND MOTION TO DISMISS**
No. 1:23-cv-06353-RMI

1  should deny Plaintiff's request for preliminary relief.

2  **V.      CONCLUSION**

3          Plaintiff fails to show that the Court has jurisdiction to provide the relief he seeks under Rule

4  12(b)(1). Plaintiff also fails to establish that he is clearly entitled to the "extraordinary and drastic"

5  preliminary injunction that he seeks. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Thus, the

6  Court should dismiss Plaintiff's Complaint in its entirety and deny Plaintiff's Motion for Preliminary

7  Injunction.

8  Dated: February 25, 2024                    Respectfully submitted,

9                                              BRIAN M. BOYNTON
                                               Principal Deputy Assistant Attorney General
10                                             U.S. Department of Justice, Civil Division

11                                             WILLIAM C. PEACHEY
                                               Director
12
                                               JEFFREY S. ROBINS
13                                             Deputy Director

14                                             SARAH L. VUONG
                                               Assistant Director
15
                                               MICHELLE M. RAMUS
16                                             SHANE A. YOUNG
                                               ALEXA S. WHITE
17                                             Trial Attorneys

18                                             */s/ Anna L. Dichter*
                                               ANNA L. DICHTER
19                                             Trial Attorney
                                               U.S. Department of Justice, Civil Division
20                                             Office of Immigration Litigation – DCS
                                               P.O. Box 868, Ben Franklin Station
21                                             Washington, DC 20044
                                               Tel:     (202) 353-2405
22                                             Fax:     (202) 305-7000
                                               Email:  Anna.L.Dichter@usdoj.gov
23
                                               *Counsel for Defendants*
24

25

26

27                                      28
    **DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
28  **MOTION FOR A PRELIMINARY INJUNCTION**
    **AND MOTION TO DISMISS**
    No. 1:23-cv-06353-RMI