BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
JEFFREY S. ROBINS
Deputy Director
SARAH L. VUONG
Assistant Director
ANNA L. DICHTER
MICHELLE M. RAMUS
SHANE A. YOUNG
ALEXA S. WHITE
Trial Attorneys
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 353-2405; Fax: (202) 305-7000
Anna.l.dichter@usdoj.gov
*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### (EUREKA)

| | |
|---|---|
| VICTOR JIMENEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>    Defendants. | No. 1:23-cv-06353-RMI<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL AND FACTUAL BACKGROUND .......................................................................... 2

I.      ICE COVID-19 Guidance and Response to COVID-19 at GSA .................................. 2

II.     The Named Plaintiff ................................................................................................ 5

      A.      Immigration Background ................................................................................ 5

      B.      Medical History ............................................................................................. 5

III.    Class Certification Requirements ............................................................................. 6

ARGUMENT   .................................................................................................................... 7

I.      The Proposed Class Fails to Satisfy the Numerosity Requirement of Rule 23(a)(2) .... 8

II.     The Proposed Class Fails to Satisfy the Commonality Requirement of Rule 23(a)(2) and the Typicality Requirement of Rule 23(a)(3) .......................................................... 9

      A.      The Proposed Class Fails to Satisfy the Commonality Requirement of Rule 23(a)(2) .... 10

      B.      The Proposed Class Fails to Satisfy the Typicality Requirement of Rule 23(a)(3) .......... 15

III.    The Named Plaintiff Is Not an Adequate Class Representative under Rule 23(a)(4) ................. 16

IV.     This Court Lacks Jurisdiction to Order Injunctive Relief on a Class-Wide Basis ...................... 17

CONCLUSION .................................................................................................................. 18

1

2

# TABLE OF AUTHORITIES

## CASES

3

4
*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 14, 16

5

6
*C.G.B. v. Wolf*,
   464 F. Supp. 3d 174 (D.D.C. 2020) ........................................................................... 14

7

8
*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ............................................................................................ 6, 11

9

10
*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .................................................................................................. 6

11
*Crawford v. Honig*,
   37 F.3d 485 (9th Cir. 1995) ...................................................................................... 16

12
*Derron B. v. Tsoukaris*,
   No. 20-CV-3679-JMV, 2020 WL 2079300 (D.N.J. Apr. 30, 2020) .................................... 13

13

14
*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................................ 11, 16

15
*Garland v. Aleman-Gonzalez*,
   596 U.S. 543 (2022) ............................................................................................ 1, 17

16

17
*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982) .................................................................................................. 7

18
*Gordon v. Cty. of Orange*,
   888 F.3d 1118 (9th Cir. 2018) .................................................................................... 13

19

20
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 8, 12, 13, 16

21

22
*Hanon v. Dataproducts*,
   976 F.2d 497 (9th Cir. 1992) ...................................................................................... 15

23
*In re Google AdWords Litigation*,
   No. 5:08-CV-3369-EJD, 2012 WL 28068 (N.D. Cal. Jan. 5, 2012) .................................... 9

24

25
*In re Lorazepam & Clorazepate Antitrust Litig.*,
   202 F.R.D. 12 (D.D.C. 2001) ...................................................................................... 10

26

27
*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) ........................................................................... 1, 11, 14, 18

28

*Kas v. Financial General Bankshares, Inc.*,
    105 F.R.D. 453 (D.D.C. 1984) .................................................................................. 9, 10

*Kingsley v. Hendrickson*,
    135 S. Ct. 2466 (2015) ............................................................................................. 13

*McCarthy v. Kleindienst*,
    741 F.2d 1406 (D.C. Cir. 1984) ................................................................................. 7

McReynolds v. Sodexho Marriott Services, Inc.,
    208 F.R.D. 428 (D.D.C. 2002) .................................................................................. 16

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ..................................................................................... 16

*Nguyen Da Yen v. Kissinger*,
    70 F.R.D. 656 (N.D. Cal. 1976) ................................................................................ 13

*Preap v. Johnson*,
    303 F.R.D. 566 (N.D. Cal. 2014) .............................................................................. 14

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ............................................................................... 8

*Reno v. Am.- Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) .................................................................................................. 17

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) .............................................................................. 15

*Swain v. Junior*,
    958 F.3d 1081 (11th Cir. 2020) ................................................................................ 18

*Taylor v. D.C. Water & Sewer Auth.*,
    241 F.R.D. 33 (D.D.C. 2007) .................................................................................... 16

*Ticor Title Ins. Co. v. Brown*,
    511 U.S. 117 (1994) .................................................................................................. 16

*Valentine v. Collier*,
    956 F.3d 797 (5th Cir. 2020) ..................................................................................... 18

*Wal–Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................... *passim*

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ..................................................................................... 7

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

1

**STATUTES**

2    8 U.S.C. § 1226(c) ........................................................................................................... 5

3    8 U.S.C. § 1252(f)(1) ...................................................................................... 1, 8, 17, 18

4    8 U.S.C. §§ 1221–1231 ................................................................................................... 17

5

6                    **FEDERAL RULES OF CIVIL PROCEDURE**

7    Fed. R. Civ. P. 23(a) ................................................................................................... 7, 10

8    Fed. R. Civ. P. 23(a)(1) ................................................................................................... 8

9    Fed. R. Civ. P. 23(a)(2) ............................................................................................ 9, 10

10   Fed. R. Civ. P. 23(a)(3) ................................................................................................... 9

11   Fed. R. Civ. P. 23(a)(4) ................................................................................................. 16

12   Fed. R. Civ. P. 23(b) ....................................................................................................... 1

13   Fed. R. Civ. P. 23(b) ....................................................................................................... 7

14   Fed. R. Civ. P. 23(b)(2) ......................................................................................... *passim*

15

16                            **MISCELLANEOUS**

17   Centers for Disease Control and Prevention: COVID-19, May 11, 2023,
        https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html (last
18      visited Feb. 25, 2024) ................................................................................................ 2, 12

19   Centers for Disease Control and Prevention: Underlying Medical Conditions,
        https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last visited
20      Jan. 26, 2024) ................................................................................................................ 16

21   *COVID-19 Treatments and Medications*, Centers for Disease Control and Prevention,
        https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html (last
22      visited Feb. 25, 2024) .................................................................................................. 14

23   *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, Centers for Disease
24      Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html
        (last visited Feb. 25, 2024) ............................................................................................ 2

25   *ICE's Enforcement and Removal Operations Post Pandemic Emergency COVID-19 Guidelines and*
26      *Protocols, Version 2.0* ("ERO's Post Pandemic Guidelines"), July 13, 2023,
27      https://www.ice.gov/coronavirus (last visited Feb. 25, 2024) ...................................... 2

28

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

*ICE updates detention guidelines to align with the current CDC guidance for COVID-19*, U.S. Immigration and Customs Enforcement, May 11, 2023, https://www.ice.gov/news/releases/ice-adds-thousands-accessible-detention-beds (last visited Feb. 25, 2024) ........................................................ 2

U.S. Dep't of Homeland Sec., Ice Health Service Corps: FY 2024 Medication Formulary for non-IHSC Staffed Detention Facilities, https://www.ice.gov/doclib/about/offices/ihsc/pdf/medicationFormulary NonIHSC.pdf (last visited Feb. 25, 2024) ........................................................................................... 2

WHO Director-General's opening remarks at the media briefing – 5 May 2023, https://www.who.int/news-room/speeches/item/who-director-general-s-opening-remarks-at-the-media-briefing---5-may-2023 (last visited Feb. 25, 2024) .................................................................. 2

### INTRODUCTION

Named Plaintiff Victor Martinez Jimenez ("Plaintiff") is a noncitizen detained in immigration custody at the Golden State Annex ("GSA") in McFarland, California, within the Eastern District of California.[1] ECF No. 1 ¶¶ 17–18. In his Motion for Provisional Class Certification, Plaintiff proposed the following class of individuals: "[a]ll individuals who are, or will be, detained by United States Immigration and Customs Enforcement ("ICE") at GSA, who are 50 years old or over or who have a medical condition that the CDC recognizes as a medical vulnerability for COVID-19." ECF No. 21 at 6 ("Pl.'s Mot.").

This Court should deny Plaintiff's motion for class certification for failure to meet the requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and Rule 23(b). Plaintiff's sweeping proposed class encompasses a broad range of dissimilarly situated individuals who are not sufficiently numerous, whose claims are not common, whose injuries are not typical, and who have different factual bases for their claims. Thus, even if Plaintiff was to prevail in this action, it would be unclear as to which class members would be entitled to relief. The single Named Plaintiff is also an inadequate representative of the class proposed in the Motion because of the factual differences that distinguish Plaintiff's claims from potential claims of the proposed class members, including significantly different medical conditions that require individualized analysis and disqualify their claims from class treatment. Additionally, Plaintiff cannot satisfy Rule 23(b)(2) because this Court lacks jurisdiction to grant relief on Plaintiff's constitutional claims on a class-wide basis pursuant to 8 U.S.C. § 1252(f)(1). *See generally Garland v. Aleman-Gonzalez*, 596 U.S. 543, 550 (2022); *Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018). When a court lacks jurisdiction to grant class-wide injunctive relief, it may not certify a class pursuant to Rule 23(b)(2) (even if the court holds jurisdiction to grant class-wide declaratory relief). *Id.*

---

[1] Jorge Mutzutz, a second Named Plaintiff, also initially brought the Complaint, but he voluntarily dismissed his claims on February 13, 2024. ECF No. 41.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

**LEGAL AND FACTUAL BACKGROUND**

**I.   ICE COVID-19 Guidance and Response to COVID-19 at GSA**

The COVID-19 pandemic ended in May 2023.[2] In conjunction with the end of the COVID-19 public health emergency, the CDC issued post-pandemic guidance for managing COVID-19 in correctional and detention facilities.[3] The post-pandemic guidance recommends facilities "use a combination of COVID-19 hospital admission levels and facility-specific risks to guide decisions about when to apply specific COVID-19 prevention actions." *Id.* For example, the guidance suggests facilities with a low-risk profile only test "residents and staff who have been exposed or who are symptomatic," instead of as an everyday strategy; to "allow individuals to use a mask or respirator based on personal preference," rather than mandate masks; and to "[c]onduct standard infection control, cleaning, and disinfection at all times." *Id.* In July 2023, ICE also published its *Post Pandemic Emergency COVID-19 Guidelines and Protocols*—developed in consultation with the CDC.[4] Pursuant to these new guidelines,

> ICE facilities will only be required to test asymptomatic detainees upon intake, transfer or release if the facility is at an elevated risk level or the country to which the detainee will be removed requires a negative COVID test. Facility risk assessments based on facility COVID-19 spread and updated CDC community measures of COVID-19 spread will continue to guide operations as needed; if a facility has a high level of risk, the facility will implement higher level protocols. ICE will continue to offer COVID-19 vaccinations to detainees. ICE will continue to abide by all relevant court orders.[5]

For those who do contract COVID-19, ICE has encouraged the use of Federal Drug Administration ("FDA") approved treatments, including antiviral treatments, when appropriate.

> Infection with SARS-CoV-2, the virus that causes COVID-19, can lead to severe symptoms, hospitalization, and death. The FDA has issued Emergency Use Authorizations

---

[2]     *See* WHO Director-General's opening remarks at the media briefing – 5 May 2023, https://www.who.int/news-room/speeches/item/who-director-general-s-opening-remarks-at-the-media-briefing---5-may-2023 (last visited Jan. 26, 2024) ("It is therefore with great hope that I declare COVID-19 over as a global health emergency."); *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html (last visited Feb. 25, 2024).

[3]     *See* Centers for Disease Control and Prevention: COVID-19, May 11, 2023, https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html (last visited Feb. 25, 2024).

[4]     *See supra id.*

[5]     *ICE updates detention guidelines to align with the current CDC guidance for COVID-19*, U.S. Immigration and Customs Enforcement, May 11, 2023, https://www.ice.gov/news/releases/ice-adds-thousands-accessible-detention-beds (last visited Feb. 25, 2024).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

for several antiviral products for treatment of COVID-19 patients with mild to moderate symptoms and risk factors for severe illness due to COVID-19 infection. ICE will continue to consider all FDA approved treatments for COVID-19.

Treatment with antiviral medication is known to be effective against a particular variant of SARS-CoV- 2, reduces the risk of progression to severe disease, decreases the need for hospitalization, and reduces the severity of disease thereby improving survival. Treatment appears to work best when started early after the diagnosis is made in appropriately selected patients. For this reason, ICE recommends that each detainee newly diagnosed with COVID-19 be assessed for possible treatment with this medication.[6]

The Post Pandemic Guidelines also provide that ICE detention facilities must ensure that ICE detainees receive medical evaluation and treatment at first signs of COVID-19 symptoms and conduct COVID-19 tests on ICE detainees showing or reporting symptoms. Post Pandemic Guidelines at 4, 15–16. And the *ICE's Health Service Corp ("IHSC") Operations Memorandum 21-001 – Coronavirus (COVID-19) Vaccination Guidelines and Protocol* and *IHSC COVID-19 Treatment Clinical Guidance ("IHSC Clinical Guidance")*, provided to all detention facilities nationwide, offer guidance on the use of antiviral medications for the outpatient treatment of mild to moderate COVID-19 illness in patients with certain risk factors for severe COVID-19 illness and outlines how to prescribe and administer several antiviral medications, as well as the timeline that should be followed. ECF No. 42-5 ("PI Opp."), Ex. A ¶¶ 13–14; *id.*, Attach. C. The IHSC Clinical Guidance also lists the categories of individuals who should not receive antivirals, including those that are asymptomatic, those exhibiting severe symptoms of COVID-19, and those taking medications with a possible drug interaction. *Id.*, Attach. C.

IHSC also operates a FY 2024 Medication Formulary for non-IHSC Staffed Detention Facilities ("IHSC Medication Formulary") consisting of approved medications that applies to pharmaceuticals prescribed and dispensed at non-IHSC staffed detention facilities.[7] It is updated once a year and is not intended to be all-inclusive. PI Opp., Ex. A ¶¶ 16–17. The absence of a drug name on the formulary list

---

6   *See ICE's Enforcement and Removal Operations Post Pandemic Emergency COVID-19 Guidelines and Protocols*, *Version 2.0* ("ERO's Post Pandemic Guidelines"), July 13, 2023, https://www.ice.gov/coronavirus (last visited Feb. 25, 2024), at 16.

7   U.S. Dep't of Homeland Sec., *Ice Health Service Corps: FY 2024 Medication Formulary for non-IHSC Staffed Detention Facilities*, https://www.ice.gov/doclib/about/offices/ihsc/pdf/medicationFormularyNonIHSC.pdf (last visited Feb. 25, 2024).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

does not necessarily denote that the drug is not authorized or that its use is restricted. *Id.* ¶ 17. The IHSC Medication Formulary now lists two COVID-19 antivirals, Paxlovid and Lagevrio.[8] But regardless of Paxlovid and Lagevrio's earlier absence from IHCS's Medication Formulary, non-IHSC staffed detention facilities were authorized to prescribe and use COVID-19 antivirals as if they were on the formulary list without requiring prior ICE review and approval. PI Opp., Ex. A ¶ 18. GSA receives its pharmaceutical services from the mail order correctional pharmacy, CorrectRx Pharmacy Services. ICE and CorrectRx Pharmacy Services entered into an agreement in June 2022 authorizing nationwide use and availability of COVID-19 antivirals at no cost to ICE detainees. *Id.* ¶ 19; *see id.* Attach. E.

GSA follows ICE's post-pandemic guidelines. PI Opp., Ex. B ¶ 5. Individuals detained at GSA are evaluated by a facility medical provider based on best medical practices, including IHSC Clinical Guidance and CDC guidance. *Id.* ¶ 6. GSA's medical team evaluates for COVID-19 treatment, including antiviral therapies, in line with the applicable guidance. *Id.* ¶ 7. As of February 22, 2024, no antiviral therapies have been clinically indicated. *Id.* On January 11, 2024, the IHSC Medication Formulary was updated to include COVID-19 antivirals Paxlovid and Lagevrio. *Id*. ¶ 14. Medications contained on the IHSC Medication Formulary are generally in stock at GSA and administered as soon as necessary. *Id.* ¶ 8.

Under ICE's post-pandemic guidelines, GSA has maintained a green/low risk profile since September 8, 2023, with just twenty-four[9] detainees testing positive in the eight months since the pandemic ended, none of which resulted in hospitalization or death. *See* PI Opp., Ex. A ¶¶ 22–23; PI Opp., Ex. B ¶¶ 15, 19–20. A green status indicates that there are fewer than two hospitalizations or deaths caused by COVID-19, the medical isolation rate is less than 2% of the general population, and the CDC hospital risk status is low. PI Opp., Ex. A ¶ 24. GSA's success in the post-pandemic period is most directly attributable to the availability of vaccines, which have greatly reduced the risks of serious illness or death

---

[8]     *See supra id.*

[9]     Defendants note a discrepancy between the number of detainees that tested positive in August. The Declaration of Ada Rivera notes twenty positive tests in August 2023. PI Opp., Ex. A ¶ 22(b). The Declaration of Stephanie Hicks notes twenty-four positive tests in August 2023. PI Opp., Ex. B ¶ 15. For the purposes of this motion, Defendants rely on the numbers indicated in the Hicks Declaration, as GEO reports its numbers to ICE.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

from contracting COVID-19. ████████████████████████████ PI Opp., Ex. D ¶ 15.

## II.  The Named Plaintiff

### A.  Immigration Background

Plaintiff was born in 1969 and is a national and citizen of El Salvador. PI Opp., Ex. C ¶ 4. Plaintiff became a lawful permanent resident on October 12, 1989, and has since incurred a significant criminal record, including two convictions of attempted murder in violation of Cal. Penal Code § 664/187(a), for which he received a combined enhanced sentence of 24 years and 8 months. *Id.*

In accordance with 8 U.S.C. § 1226(c), the Department of Homeland Security ("DHS") detained Plaintiff at GSA on October 11, 2022. *Id.* ¶ 5. On January 20, 2023, the Los Angeles Immigration Court denied Plaintiff's applications for relief and ordered him removed to El Salvador. *Id.* On July 20, 2023, the Board of Immigration Appeals ("BIA") dismissed Plaintiff's appeal. *Id.* Currently, the Ninth Circuit has automatically stayed Plaintiff's removal pending resolution of his motion for appointment of counsel in connection with his Petition for Review ("PFR"). *Id.*; *see Martinez-Jimenez v. Garland*, No. 23-cv-1695 (9th Cir.).

### B.  Medical History



**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**



### III.   Class Certification Requirements

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To fall within the exception, Plaintiff "must affirmatively demonstrate his compliance" with Rule 23 of the Federal Rules of Civil Procedure. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A party seeking certification of a proposed class must demonstrate the existence of the four required elements set forth in Rule 23(a) of the Federal Rules of Civil Procedure. Specifically, the moving party must show that:

(1) the class is so numerous that joinder of all members is impracticable ("numerosity");

(2) there are questions of law or fact common to the class ("commonality");

(3) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class ("typicality"); and

(4) the named plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation").

*See* Fed. R. Civ. P. 23(a); *see also Wal-Mart*, 564 U.S. at 345 ("Class certification is governed by Federal Rule of Civil Procedure 23.").

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3). *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Plaintiff seeks certification under Rule 23(b)(2). ECF No. 21 at 12. Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds that generally apply to the class." Fed. R. Civ. P. 23(b)(2). The "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (citation omitted).

The proponent of a class action has the burden of proof as to each of Rule 23's requirements. *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984). The Supreme Court has held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982). If a court is not fully satisfied, the class cannot be certified. *Id.* "While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23." *Zinser*, 253 F.3d at 1186. When reviewing a motion for class certification, it "'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal–Mart*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 160–61).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

**ARGUMENT**

This Court should deny the motion for class certification where Plaintiff bases his request on only one individual *and* fails to meet the requirements of Rule 23(a) or (b)(2). Plaintiff has never tested positive for COVID-19, and he is detained at a facility that has not experienced a significant number of COVID-19 cases since August 2023. Additionally, Defendants have taken clear steps, in consideration of CDC guidance, to prevent COVID-19 infections at GSA, the facility where Plaintiff is detained. Plaintiff relies on an overbroad definition of his proposed class and fails to meet the numerosity, commonality, typicality, or adequacy of representation requirements of Rule 23(a) or (b)(2). Plaintiff is also an inadequate representative of the class proposed in the Motion because of the factual differences that distinguish Plaintiff's claims from potential claims of the proposed class members. Finally, Plaintiff cannot satisfy Rule 23(b)(2) because this Court lacks jurisdiction to grant relief on Plaintiff's constitutional claims on a class-wide basis pursuant to 8 U.S.C. § 1252(f)(1). Therefore, this Court should deny Plaintiff's motion to certify a class.

**I.   The Proposed Class Fails to Satisfy the Numerosity Requirement of Rule 23(a)(2).**

To satisfy the numerosity requirement, Plaintiff must show "that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). Although "the number of class members is the most important factor, the ultimate question concerns the practicability of their joinder." S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary at 540 (2017). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).

Here, Plaintiff fails to show that there are least forty individuals with their defined high-risk factors. Plaintiff instead points to the total number of detainees at GSA (239) and GSA's detention capacity (700) to argue that "the current number of detainees is merely the floor for this numerosity requirement." ECF No. 21 at 13–14. However, the current number of individuals detained at GSA that are considered high risk under CDC guidelines is twenty-six, the rate of COVID-19 is very low, and the only Named Plaintiff remaining in this case never tested positive for COVID-19. PI Opp., Ex. B ¶ 17–18, 21, 23; PI Opp., Ex. D ¶ 23; *see generally* PI Opp., Ex. E. There have only been twenty-five COVID-19 cases

at GSA since the end of the pandemic in May 2023. PI Opp., Ex. B ¶¶ 15, 19–20. Plaintiff also fails to show that it would be impracticable to join individuals in this suit. Pl.'s Mot. at 14. Likewise, without citing to any facts, Plaintiff argues that his proposed class meets the numerosity requirement by assuming that individuals would not file suit on their own. *Id.* Accordingly, Plaintiff has failed to satisfy the element of numerosity required for class certification under Rule 23(a)(1), and this Court should deny Plaintiff's motion for class certification.

## II. The Proposed Class Fails to Satisfy the Commonality Requirement of Rule 23(a)(2) and the Typicality Requirement of Rule 23(a)(3).

Plaintiff does not establish commonality and typicality in his proposed class definition, where the proposed class is broadly drawn and brings within its ambit differing factual circumstances and differing legal claims. Fed. R. Civ. P. 23(a)(2), (3). To obtain class certification, Plaintiff must demonstrate that the proposed class members are entitled to common relief. *See* Fed. R. Civ. P. 23(a)(2), (b)(2). To establish commonality, the Supreme Court has repeatedly held that "[i]t is not the raising of common 'questions' – even in droves – but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (citation omitted). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (citation omitted).

This requirement is likewise present in Rule 23(b)(2), which requires that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." For certification under Rule 23(b)(2), Plaintiff must show that "declaratory relief is available to the class as a whole" and that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. Therefore, Plaintiff has the burden of demonstrating that the factual differences in the class are unlikely to bear on the individual's entitlement to relief. *See In re Google AdWords Litigation*, No. 5:08-cv–3369-EJD, 2012 WL 28068 *15–16 (N.D. Cal. Jan. 5, 2012) ("The question of which advertisers among the hundreds of thousands of proposed class members are even entitled to restitution would require individual inquiries."). If the factual differences have the likelihood of changing the outcome of the legal issue, then class certification may not be appropriate.

The typicality requirement of Rule 23(a)(3) ensures that the interests of the named representative align with the interests of the class.  As long as the claims "resemble or exhibit the essential characteristics of those of the representatives," Rule 23(a)(3) will be satisfied. *Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453, 461 (D.D.C. 1984). The typicality requirement is not met, however, if the proposed class representatives are subject to unique defenses. *Id.* At bottom, the typicality requirement is used to ascertain "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001) (citations omitted).

Rule 23(a)'s commonality and typicality requirements occasionally merge: "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 350.

### A.  The Proposed Class Fails to Satisfy the Commonality Requirement of Rule 23(a)(2)

To obtain class certification, Plaintiff must demonstrate that the proposed class is entitled to common relief as to each count on which certification is sought. *See* Fed. R. Civ. P. 23(a)(2), (b)(2). For purposes of commonality, it is not enough to simply allege that all class members share the same characteristics—for example, that they have the same employer or make the same request for relief. *See Wal-Mart*, 564 U.S. at 349–50 ("Reciting these questions is not sufficient to obtain class certification."); *see also* ECF No. 21 at 16 "([A]ll putative Class Members are or will be civil detainees at GSA."). Nor is it enough to allege "that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349–50; *see also* ECF No. 21 at 6 ("Defendants' failure to follow proper COVID-19 testing procedures and to implement the use of COVID-19 antiviral treatments is a violation of [the proposed class members'] Fifth Amendment right to medical care while in civil detention."). Such claims "give[] no cause to believe that all their claims can productively be litigated at once." *Wal-Mart*, 564 U.S. at 349–50. A qualifying common question must be able to generate an answer that "resolve[s] an issue that is central to

the validity of each" class member's claim "in one stroke." *Id.* Dissimilarities within a proposed class potentially impede the generation of common answers. *Id.*

The commonality requirement is especially rigorous when seeking class-wide injunctive relief based on an alleged policy or practice. In that instance, a plaintiff must present "significant proof" that the alleged practice in fact exists and that the entire class was subjected to it. *Wal-Mart*, 564 U.S. at 353; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011*)*. Moreover, Rule 23(b)(2) certification is appropriate only when the alleged conduct "is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.* The Supreme Court noted in reviewing a Ninth Circuit immigration detention case, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Jennings*, 138 S. Ct. at 852 (quoting *Wal-Mart*, 564 U.S. at 360).

Plaintiff must show that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. Accordingly, Plaintiff bears the burden to demonstrate that the factual differences among the proposed class members are unlikely to affect their entitlement to relief. *See id.* If the factual differences have the likelihood of changing the outcome of the legal issue, then class certification is not appropriate. *Cf. Califano*, 442 U.S. at 701; *Wal-Mart*, 564 U.S. at 348, 358. Class certification under Rule 23(a) and (b)(2), therefore, requires two steps: (1) the identification of a common legal problem, and (2) a showing that the common legal issue may be resolved as to all class members simply by virtue of their membership in the class. *Wal-Mart*, 564 U.S. at 350 (concluding that the common legal problem "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke.*" *Id.* (emphasis added)).

Plaintiff's proposed class fails to meet the rigorous commonality requirement needed here. Plaintiff argues that the claims of the proposed class "are common to all Class Members and thus deserve class-wide resolution." Pl.'s Mot. at 16. Those claims are:

> (1) whether Defendants are, in fact, failing to follow proper COVID-19 testing procedures at GSA; (2) whether Defendants are, in fact, refusing to treat individuals in their custody who test positive for COVID-19 with antiviral medications such as Paxlovid; (3) whether the failure to implement such testing and treatment procedures in the face of a potentially fatal virus subjects the Class to a heightened risk of serious illness and death; and (4) whether these failures are a violation of proposed Class Members' Fifth Amendment Due Process Rights.

*Id.* Plaintiff argues that "[t]hese issues are common to all Class Members and thus deserve class-wide resolution. But as a threshold matter, the single Named Plaintiff's circumstances illustrate the lack of commonality here. Plaintiff never tested positive for COVID-19, was never eligible for antiviral treatment, and was evaluated by a medical professional at GSA who determined that antiviral treatment would be inappropriate for him based on his circumstances. PI Opp., Ex. D ¶ 20, 25; *see generally* PI Opp., Ex. E. This determination aligned with CDC guidance, which does not recommend antiviral treatment for individuals who test negative for COVID-19 and show no hallmark COVID-19 symptoms.[10] Thus, Plaintiff's own circumstances illustrate the lack of commonality here—as there is no common claim or legal problem that could be resolved as to all proposed class members. *Wal-Mart*, 564 U.S. at 350. Plaintiff also submitted a declaration from another proposed class member, Mikhael Moiseev, who did test positive for COVID-19, but was asymptomatic the entire duration of her infection, making her inappropriate for antiviral treatment as well. PI Opp., Ex. D ¶¶ 10–13.

Indeed, determining whether an individual is high risk and receiving appropriate protection specific to their medical concerns involves "wide factual variation" and "[d]issimilarities within the proposed class." *See Wal-Mart*, 564 U.S. at 350. Each individual would require evaluation by a medical professional to determine an appropriate treatment plan based on their individual circumstances. And this Court would need to substitute the judgment of medical professionals to determine whether the treatment

---

[10]    *See generally* Centers for Disease Control and Prevention: COVID-19, May 11, 2023, https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html (last visited Feb. 25, 2024).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

each individual received was appropriate. With such varied facts at issue, it is not sufficient for Plaintiff to allege merely that all of the proposed class members have raised some "common questions." *Id.* ("[The commonality] language is easy to misread, since any competently crafted class complaint literally raises common 'questions.'"). Thus, although "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to establish commonality]," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1996), commonality cannot be established where there is wide factual variation requiring individual adjudications of each class member's claims. *See Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656, 663–64 (N.D. Cal. 1976).

Further, Plaintiff's due process claim requires proof that "the conditions under which the plaintiff was confined . . . put the plaintiff at substantial risk of suffering serious harm." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). He must also show that the defendant's conduct in failing to abate the risk of harm was "objectively unreasonable." *Id.* As explained, that inquiry "turns on the facts and circumstances of each particular case," including each proposed class member's age, medical history, and unique risk profile. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *Gordon*, 888 F.3d at 1125; *see also Derron B. v. Tsoukaris*, No. 20-cv-3679-JMV, 2020 WL 2079300, at *8 (D.N.J. Apr. 30, 2020) ("[A] petitioner's individual circumstances . . . are critical to the [Fifth Amendment] analysis."). In reality, the claims of the proposed class members depend on highly individualized medical care on a case-by-case basis for each proposed class member, each of whom has significantly different medical conditions and factual circumstances that must be considered in assessing their claims.

It is not enough for Plaintiff to make allegations that ICE failed to follow the policies and procedures in place when providing his own individualized medical care, especially where the evidence shows otherwise. PI Opp., Ex. D ¶¶ 20, 23 (indicating that Plaintiff received medical treatment in line with CDC guidance and never tested positive for COVID-19 or showed any hallmark COVID-19 symptoms, making antiviral treatment inappropriate for him); *see generally* PI Opp., Ex. E (same). The question of whether an individual should be tested for COVID-19 under the policies and procedures in place, whether an individual should be offered treatment with antiviral medications, and whether an individual faces a heightened risk of serious illness or death without COVID-19 testing or treatment with

antiviral medications, will necessarily depend on an analysis of his or her individual medical conditions and factual circumstances, including what other medications the individual is taking and whether there are any drug contraindications.[11] These questions are all part of the individualized medical care that the GEO medical professionals provide. Due to the multiple variations in medical care, Plaintiff's due process claim is not capable of class-wide resolution. *See C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 203 (D.D.C. 2020) (ruling detainees' "varying levels of susceptibility to COVID-19" precluded certification of Fifth Amendment claim). Thus, if this Court intends to consider common relief for the proposed class members, it will not be able to provide that relief—namely ordering injunctive relief providing class members testing and antiviral treatment for COVID-19—without considering the totality of each individual's circumstances separately. Indeed, the Supreme Court has questioned whether a due process claim can ever be resolved in a class action since such claims are best resolved on a case-by-case basis. *Jennings*, 138 S. Ct. at 852.

Because Plaintiff cannot meet his burden to show he has met the commonality requirement of Rules 23(a)(2) or (b), this Court must deny his motion to certify a class. *See Preap v. Johnson*, 303 F.R.D. 566, 584 (N.D. Cal. 2014), *aff'd*, 831 F.3d 1193 (9th Cir. 2016) (citing *Wal-Mart*, 564 U.S. at 350); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### B.  The Proposed Class Fails to Satisfy the Typicality Requirement of Rule 23(a)(3)

Plaintiff's proposed class lacks typicality for the same reasons it lacks commonality: the proffered class definition includes groups of individuals whose factual interests differ from the single proposed class representative. The commonality and typicality requirements of Rule 23(a) are interrelated and, in some instances, merge. *Wal-Mart*, 564 U.S. at 350. "Both [requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* Because Plaintiff's circumstances do not reflect the circumstances of the proposed class and Plaintiff suffered no injury, Plaintiff will be similarly unable

---

[11]     *COVID-19 Treatments and Medications*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html (last visited Feb. 25, 2024) ("Some treatments might have side effects or interact with other medications you are taking. Ask a healthcare provider if medications to treat COVID-19 are right for you.").

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

to satisfy Rule 23(a)(3). *See id.* (where "individualized assessments are necessary" the class fails on typicality under Rule 23(a)(3)).

To establish typicality, Plaintiff must show "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). The typicality requirement is not met if the proposed class representatives are subject to unique defenses. *Id.* Here, this Court cannot find typicality. Plaintiff's sweeping proposed class encompasses a broad range of individuals with significantly different medical conditions and factual bases for their claims to relief, and the unique analysis required to respond to various individual allegations make class certification improper.

Plaintiff argues that the proposed class "meets the typicality requirement because the proposed Class Representatives and all putative Class Members are or will be civil detainees at GSA." ECF No. 21 at 16. Plaintiff further argues that all members of the proposed class are "subject to a substantial risk of serious illness or death from Defendants' failure to follow proper COVID-19 testing procedures and wholesale refusal to implement antiviral treatment necessary to prevent serious harm." ECF No. 21 at 16–17. Yet, as discussed above, proposed class members' significantly different medical conditions and different factual circumstances will require individualized analysis to determine if relief should be provided for their claims. In fact, Plaintiff serves as a prime example; a review of his medical treatment at GSA indicates that the treatment he received was appropriate for his condition. *See, e.g.*, PI Opp., Ex. D ¶¶ 20–23; *see generally* PI Opp., Ex. E. Even where proposed class members may have some similarities in their medical conditions and factual circumstances, they also have significant differences. For example, although some proposed class members have received a COVID-19 booster vaccination, not all individuals who would fall into the proposed class may have done so. In fact, Mikhael Moiseev, the declarant in this case and a proposed class member, ████████████████████████████ PI Opp., Ex. D ¶ 8. Each individual's varying COVID-19 vaccination and booster statuses, in combination with

their differing medical conditions, would require an individual analysis to determine any risk of severe COVID-19-associated outcomes.[12]

Ultimately, Plaintiff simply cannot satisfy his burden to show that *every* proposed class member's claims will be reasonably coextensive with those of himself in a way that establishes typicality for the purposes of Rule 23(a)(3). Accordingly, this Court should deny Plaintiff's motion for class certification.

## III.   The Named Plaintiff Is Not an Adequate Class Representative under Rule 23(a)(4)

Pursuant to Rule 23(a)(4), the named Plaintiff must fairly and adequately protect the interests of other members of the class. Fed. R. Civ. P. 23(a)(4). To determine whether Plaintiff will adequately represent a class, courts must resolve two questions: (1) whether Plaintiff and his counsel have any conflicts of interest with other class members; and (2) whether Plaintiff and his counsel will prosecute the action vigorously on behalf of the class. *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 45 (D.D.C. 2007) (citing *McReynolds v. Sodexho Marriott Services, Inc.*, 208 F.R.D. 428, 446 (D.D.C. 2002); *Ellis*, 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Adequate representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1995). Ultimately, the adequacy requirement "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent," *Amchem Prods., Inc.*, 521 U.S. at 594, and often "merge[s] . . . with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence," *id.* at 626 n.20. This notion is compounded by the nature of a class certified pursuant to Rule 23(b)(2), the members of

---

[12]   *See* Centers for Disease Control and Prevention: Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last visited Jan. 26, 2024) ("Providers should consider the patient's age, presence of underlying medical conditions and other risk factors, and vaccination status in determining the risk of severe COVID-19-associated outcomes for any patient.").

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

1   which do not have a right to opt out of their class. *See Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003)

2   (citing *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (per curiam)).

3          Here, Plaintiff is an inadequate representative for the same reasons that he fails to satisfy typicality

4   and commonality, and because his interests may conflict with the interests of other proposed members.

5   Plaintiff requests a permanent injunction providing proposed class members with testing and antiviral

6   treatment for COVID-19, but it is impossible for Plaintiff to adequately represent people with wholly

7   different medical concerns or high-risk characteristics than he has. Accordingly, Plaintiff has not satisfied

8   his burden to meet the standard as an adequate class representative for the purposes of Rule 23(a)(4), and

9   this Court should deny Plaintiff's motion for class certification.

10   **IV.    This Court Lacks Jurisdiction to Order Injunctive Relief on a Class-Wide Basis**

11          Finally, Plaintiff cannot satisfy Rule 23(b)(2) because this Court does not have jurisdiction to grant

12   relief on Plaintiff's constitutional claims on a class-wide basis. Federal law provides that "no court (other

13   than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C.

14   §§ 1221–1231] other than with respect to the application of such provisions to an individual alien against

15   whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). The statute "prohibits

16   federal courts from granting class-wide injunctive relief against the operation of §§ 1221–1231." *Reno v.*

17   *Am.- Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999).

18          This Court cannot grant Plaintiff the class-wide relief he seeks because it is prevented from doing

19   so by 8 U.S.C. § 1252(f)(1). *See Aleman-Gonzalez*, 596 U.S. at 548. The INA and the Supreme Court's

20   decision in *Aleman- Gonzalez* make clear that this Court lacks jurisdiction to grant class-wide injunctive

21   relief that interferes with ICE's execution of its detention responsibilities under the INA, including its

22   ability to detain individuals at GSA. Any order impacting ICE's ability to do this, or the cost associated,

23   is barred. 8 U.S.C. § 1252(f)(1); *Aleman-Gonzalez*, 596 U.S. at 548.

24          Here, Plaintiff has requested a preliminary injunction mandating immediate changes at GSA,

25   including stocking antiviral medicine onsite, requiring specific timelines for treatment, increasing testing,

26   requiring an evaluation within 24-hours, posting educational material, and monthly reporting, regardless

27   of whether those changes are tailored to the needs of individual detention settings, whether the required

28   **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

standards are consistent with federal or CDC guidelines, and without providing time for ICE to assess and address any inconsistencies or problems with those standards. Pl.'s Mot. for Prelim. Inj. at 21–23. The proposed preliminary injunction creates "an administrative nightmare" for Defendants to comply with, particularly with the policies and procedures affecting not only GSA, but facilities across the country. *See Valentine v. Collier,* 956 F.3d 797, 802 (5th Cir. 2020) (holding that courts should give CDC guidance its due weight). This is the sort of micromanagement of ICE operations that other circuits have rejected. *See, e.g., Swain v. Junior*, 958 F.3d 1081, 1090 (11th Cir. 2020) (staying injunction that hamstrung "officials with years of experience running correctional facilities, and the elected officials they report to, from acting with dispatch to respond to this unprecedented pandemic"); *Valentine*, 956 F.3d at 806 (staying injunction that prescribed testing, cleaning, and information-sharing standards at detention facilities). These concerns are only magnified when applied to COVID-19 policies and directives updated long after the pandemic has ended to account for evolving treatment trends. Relief that overrides Defendants' nationwide guidance—based on CDC recommendations—and tailored measures to prevent and contain COVID-19 intrudes into the day-to-day administration of detention facilities, disregards the need for individualized responses at different facilities to manage the COVID-19 pandemic based on varying housing structures, medical facilities, staffing, and population needs; and unnecessarily infringes on the operations of ICE facilities nationwide, many of which have few or no confirmed cases of COVID-19.

When a court lacks jurisdiction to grant class-wide injunctive relief, it may not certify a class pursuant to Rule 23(b)(2), even if the court holds jurisdiction to grant class-wide *declaratory* relief. *Jennings*, 138 S. Ct. at 851. Rule 23(b)(2) certification is thus proper "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* at 852. As the Supreme Court reiterated, a Rule 23(b)(2) class action litigated on common facts is not an appropriate way to resolve due process claims. *Id.* at 852 ("[D]ue process is flexible, we have stressed repeatedly, and it calls for such procedural protections as the particular situation demands." (internal quotation marks omitted)). Because Plaintiff's relief would disrupt ICE's operations at detention facilities nationwide and will require substantial changes to ICE detention facility operations and intergovernmental service agreements with

1  state and local governments, it is barred under 8 U.S.C. § 1252(f)(1). This Court should deny Plaintiff's

2  motion to certify the proposed class.

3                                         **CONCLUSION**

4        This Court should deny Plaintiff's Motion for Provisional Class Certification because the proposed

5  class definition encompasses a broad range of dissimilarly situated individuals who are not sufficiently

6  numerous, whose claims are not common, whose injuries are not typical, and who have different factual

7  bases for their claims. Further, Plaintiff is an inadequate representative of the class proposed in the Motion,

8  and the Motion does not propose any subclasses or indicate that Plaintiff could represent a proposed

9  subclass. Moreover, Plaintiff would require this Court to engage in an individualized inquiry into each

10  claim to determine whether each proposed class member, with distinctly different medical conditions and

11  factual circumstances, received inappropriate medical treatment and has a risk of serious illness or death

12  from COVID-19 while in detention. Plaintiff is therefore not entitled to proceed as a class representative,

13  and this Court should deny his motion.

14                                          * * *

15  Dated: February 25, 2024                    Respectfully submitted,

16                                              BRIAN M. BOYNTON
17                                              Principal Deputy Assistant Attorney General
                                                U.S. Department of Justice, Civil Division

18                                              WILLIAM C. PEACHEY
19                                              Director

20                                              JEFFREY S. ROBINS
21                                              Deputy Director

22                                              SARAH L. VUONG
23                                              Assistant Director

24                                              MICHELLE M. RAMUS
                                                SHANE A. YOUNG
25                                              ALEXA S. WHITE
                                                Trial Attorneys

26
27                                              /s/ *Anna L. Dichter*
                                                ANNA L. DICHTER
28                                              Trial Attorney

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROVISIONAL CLASS CERTIFICATION**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel:     (202) 353-2405
Fax:     (202) 305-7000
Email: Anna.l.dichter@usdoj.gov

*Counsel for Defendants*