NICOLE KIM (SBN 324698)
*NicoleKim@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa St., 41st Floor
Los Angeles, California 90017
Tel.: +1 213 426-2495
Fax: +1 213 623-1673

SEAN RIORDAN (SBN 255752)
*sriordan@aclunc.org*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA**
39 Drumm Street
San Francisco, California 94111
Tel.: +1 415 621-2493

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
425 California St., Suite 700
San Francisco, California 94104
Tel.: +1 202 393-4930

EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA**
1313 West 8th Street
Los Angeles, CA 90017
Tel.: +1 213 977-5232

*Attorneys for Petitioners-Plaintiffs
Additional Counsel listed on signature page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### EUREKA DIVISION

| | |
|---|---|
| VICTOR JIMENEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; PATRICK LECHLEITNER, Deputy Director and Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement; MOISES BECERRA, Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement,<br><br>　　　　　Defendants. | Case No. 1:23-cv-06353-RMI<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PROVISIONAL CLASS CERTIFICATION**<br><br>DATE: April 2, 2024<br>TIME: 11:00am |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. DISCUSSION ........................................................................................................... 2

    A. The Class Is Sufficiently Numerous. ........................................................... 2

    B. The Case Raises Common Questions of Law or Fact. ................................. 4

    C. The Proposed Class Representatives' Claims Are Typical of Those of the Class. ........................................................................................ 6

    D. Proposed New Plaintiffs and Their Counsel Will Adequately Represent the Class. .................................................................................... 9

    E. Certification of a Rule 23(b)(2) Class Is Appropriate ................................ 10

III. CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahlman v. Barnes*,
　445 F. Supp. 3d 671 (C.D. Cal. 2020) ......................................................................... 2

*Alcantara v. Archambeault*,
　613 F. Supp. 3d 1337 (S.D. Cal. 2020) .................................................................. 1, 6

*Amaro v. Gerawan Farming, Inc.*,
　No. 1:14-cv-00147-DAD-SAB, 2016 WL 3924400 (E.D. Cal. May
　20, 2016) ..................................................................................................................... 4

*Biden v. Texas*,
　597 U.S. 785 (2022) ................................................................................................. 11

*Brown v. Plata*,
　563 U.S. 493 (2011) ................................................................................................... 6

*C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
　317 F.R.D. 91 (N.D. Cal. 2016) ................................................................................. 3

*Catholic Social Services, Inc. v. INS*,
　232 F.3d 1139 (9th Cir. 2000) (en banc) ................................................................. 12

*Criswell v. Boudreaux*,
　No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675 (E.D. Cal. Sept.
　2, 2020) ....................................................................................................................... 2

*Direct Marketing Ass'n v. Brohl*,
　575 U.S. 1 (2015) ..................................................................................................... 12

*Ellis v. Costco Wholesale Corp.*,
　657 F.3d 970 (9th Cir. 2011) ................................................................................... 10

*Freeman v. FDIC*,
　56 F.3d 1394 (D.C. Cir. 1995) ................................................................................. 12

*Galvez v. Jaddou*,
　52 F.4th 821 (9th Cir. 2022) .................................................................................... 11

*Garland v. Aleman Gonzalez*,
   596 U.S. 543 (2022) ............................................................................................... 12

*Gonzales v. Dep't of Homeland Security*,
   508 F.3d 1227 (9th Cir. 2007) ............................................................................... 12

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) ................................................................................................. 4

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................................... 7

*Hernandez v. Cnty. of Monterey*,
   305 F.R.D. 132 (N.D. Cal. 2015) ......................................................................... 2, 5

*Hum v. Dericks*,
   162 F.R.D. 628 (D. Haw. 1995) ............................................................................... 2

*Ikonen v. Hartz Mountain Corp.*,
   122 F.R.D. 258 (S.D. Cal. 1988) .............................................................................. 2

*J.L. v. Cissna*,
   No. 18-cv-04914-NC, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019) ......................... 5

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) .......................................................................................... 7, 13

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) .............................................................................. 2

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ........................................................................... *passim*

*Reid v. Donelan*,
   297 F.R.D. 185 (D. Mass. 2014) ............................................................................... 4

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ................................................................................. 13

*Roman v. Wolf*,
   977 F.3d 935 (9th Cir. 2020) ..................................................................................... 5

*Sullivan v. City of Berkeley*,
   328 F.R.D. 352 (N.D. Cal. 2018) ............................................................................ 10

*Torres v. Milusnic*,
   472 F. Supp. 3d 713 (C.D. Cal. 2020) .................................................................................. 6

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................................ 6, 13

*Zepeda Rivas v. Jennings*,
   445 F. Supp. 3d 36 (N.D. Cal. 2020) .................................................................................. 6

I.  **INTRODUCTION**

When this motion was initially filed, Victor Jimenez ("Plaintiff") and Jorge Mutzutz sought to provisionally certify a class (the "Class," defined at ECF No. 21 at 5–6) for purposes of a classwide preliminary injunction. Mr. Mutzutz is no longer in Defendants' custody. ECF No. 41 at 2. He voluntarily dismissed his individual claim and no longer seeks to represent the class. *Id.* Plaintiff moved to add two new plaintiffs as class representatives: Jose Orozco Cuevas and Venancio Esteban Riego. ECF No. 46. Defendants filed a nonopposition to this motion to add Mr. Orozco Cuevas and Mr. Riego. ECF No. 48. As of the filing of this reply, this motion now asks the Court to provisionally certify the Class and appoint Mr. Jimenez, Mr. Orozco Cuevas, and Mr. Riego (the "Proposed Class Representatives") as representatives.

This motion raises a straightforward question. Each Proposed Class Representative qualifies for COVID-19 antiviral treatment under established medical practices, and each alleges that Defendants fail to provide adequate and timely testing and antiviral treatment for COVID-19. Each alleges a Fifth Amendment injury because he faces a substantial risk that he will test positive for COVID-19 and receive inadequate treatment due to Defendants' failures, and each seeks prospective injunctive relief to require Defendants to remedy these failures. Like the Proposed Class Representatives, all Class members qualify for COVID-19 antivirals due to age or medical conditions. All suffer this exact same Fifth Amendment injury, because all face the same risk that they will test positive for COVID-19 and receive inadequate treatment at Golden State Annex ("GSA"). *See Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (certifying class and explaining that "every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide ADC policy or practice that creates a substantial risk of serious harm").

This motion seeks to provisionally certify a class for purposes of a classwide preliminary injunction to remedy Defendants' failure to provide adequate and timely testing and antiviral treatment for COVID-19. Based on the strong overlap between the Proposed Class Representatives' claims and the Class's claims, the Court—like many other courts that have certified classes of people vulnerable to severe COVID-19—can readily certify the Class. *See, e.g., Alcantara v. Archambeault*, 613 F. Supp. 3d 1337, 1346–50 (S.D. Cal. 2020) (certifying medically vulnerable

1

subclass and crediting the plaintiffs' argument that "all subclass members are confined in [ICE's] Otay Mesa [detention center], and all are at high risk for severe illness or death from COVID-19"); *Ahlman v. Barnes*, 445 F. Supp. 3d 671, 685 (C.D. Cal. 2020) (certifying medically vulnerable subclasses because "Plaintiffs challenge Defendants' institution-wide response and seek institution-wide injunctive relief").

## II.     DISCUSSION

Federal Rule of Civil Procedure 23(a) sets out four requirements for certification of a class: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)–(4). A case may be certified as a class action if it meets these four requirements and qualifies as one of the types of cases set out in Rule 23(b). The Class satisfies the four elements of Rule 23(a) and also satisfies the requirements of Rule 23(b)(2).

### A.     The Class Is Sufficiently Numerous.

Rule 23(a)(1) requires that a putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants argue that this requirement is not met because there are only twenty-six individuals detained at GSA that are considered medically vulnerable. ECF No. 44 at 14.[1] This argument fails for multiple reasons.

***First***, there is no numerical cutoff for whether a class is sufficiently numerous, and classes of 20-40 meet the threshold. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012). "Courts have certified classes with as few as thirteen members." *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995). This is "especially true where, as here, the class . . . include[s] future, unknowable class members." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015) (citing *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986)); *see also Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675, at *12 (E.D. Cal. Sept. 2, 2020); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988). The requirement is further relaxed where a plaintiff seeks only injunctive and declaratory relief, allowing a plaintiff to rely on reasonable inferences that the number of unknown members is

---

[1] For citations of the docket, Proposed Class Representatives use ECF page numbers, not docket page numbers.

sufficient to make joinder impracticable. *See C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016).

***Second***, Defendants' assertion that "the current number of individuals detained at GSA that are considered high risk under CDC guidelines is twenty-six," ECF No. 44 at 14, fails to account for the entire class. According to the Defendants' declarations, these twenty-six individuals are those in the Chronic Care Clinic Program,[2] which only includes nine people over the age of 50. ECF No. 43-2 at ¶ 23. This list, at the very least, excludes detained people over the age of 50 who are not part of this program—all of whom fit Plaintiffs' class definition. ECF No. 21 at 5–6. This list also excludes detained people with conditions that are not chronic but that nonetheless qualify them for COVID-19 antiviral medications.[3] This number also fails to account for the fact that GSA's population has nearly doubled since the date Defendants counted their Chronic Care Clinic Program list, which almost certainly has resulted in a significant increase in the number of people on that list.[4]

***Third***, Defendants attempt to defeat numerosity by asserting that there have only been twenty-five COVID-19 cases at GSA since May 2023. ECF No. 44 at 14-15. However, this number is artificially small due to Defendants' systematic practice of denying timely testing to symptomatic individuals and their failure to require testing during outbreaks. *See* ECF No. 20-11 at ¶¶ 7–8; ECF No. 20-13 at ¶ 5; ECF No. 46-3 at ¶ 8; ECF No. 46-4 at ¶¶ 7, 9, 11. But for Defendants' testing

---

[2] Defendants' reference to a "Chronic Care Program" refers to the ICE requirements for people with chronic conditions that require regular follow-up: "Detainees with chronic conditions shall receive care and treatment, as needed, that includes monitoring of medications, diagnostic testing and chronic care clinics." ICE, *Performance-Based National Detention Standards 2011* (rev. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

[3] *People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 11, 2023) (listing conditions such as being overweight, obese, or a former smoker).

[4] Defendants' count of 26 people on their Chronic Care Clinic Program list is current as of January 31, 2024. ECF No. 43-2 at ¶ 23. At that point, the population of GSA was approximately 244 people. *Detention Facilities Average Daily Population*, Transactional Records Access Clearinghouse Immigration, https://trac.syr.edu/immigration/detentionstats/facilities.html (last visited Mar. 11, 2024) (listing GSA's population as of February 5, 2024 as 244 people). As of February 1, 2024, the population at GSA had increased to 379 people. ECF No. 43-2 at ¶ 22.

practices, this number would undoubtedly be much higher. Additionally, the class, which consists of people who would need COVID-19 antiviral medication, includes those who have not yet tested positive and is not limited by the number of positive tests.

**Fourth**, Defendants misstate the law when they argue that Plaintiff's numerosity requirement depends on the "assum[ption] that individuals would not file suit on their own." ECF No. 44 at 15. Rule 23(a)(1)'s numerosity requirement exists to allow for a class to ensure that "adjudication nets expediencies for the litigants *and the judiciary*." *Amaro v. Gerawan Farming, Inc.*, No. 1:14-cv-00147-DAD-SAB, 2016 WL 3924400, at *3 (E.D. Cal. May 20, 2016) (emphasis added); *see also Gratz v. Bollinger*, 539 U.S. 244, 267 n.17 (2003) ("[T]he class-action device saved the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion.") (internal citation omitted). Here, the number of people detained at GSA has grown to at least 379. ECF No. 43-2 at ¶ 22. Requiring each of these members to personally litigate the issues in this case would be impracticable and a waste of judicial resources. *See Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014) (certifying class of detained immigrants where "an influx of future members will continue to populate the class").

Here, joinder is sufficiently impracticable and Rule 23(a)(1)'s numerosity requirement is met. Plaintiffs seek to certify a class of "all individuals who are, or will be, detained by ICE at GSA, who are 50 years old or over or who have a medical condition that the CDC recognizes as a medical vulnerability for COVID-19."[5] ECF No. 21 at 5–6. This class is far larger that Defendants' conservative estimate. This class already satisfies the Rule 23(a)(1) numerosity requirement, and its size continues to increase.

**B.   The Case Raises Common Questions of Law or Fact.**

Contrary to Defendants' arguments, ECF No. 44 at 16–20, the Proposed Class Representatives easily satisfy the commonality requirement of Rule 23. Plaintiffs' case rests on

---

[5] For a list of medical conditions that the CDC considers a medical vulnerability for COVID-19, see *People with Certain Medical Conditions*, *supra* note 2.

4
1:23-cv-06353-RMI
Plaintiffs' Class Certification Reply

common questions about Defendants' inadequate COVID-19 guidelines and the substantial risk of serious illness and death caused by Defendants' testing and treatment practices.

Where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members," commonality is generally satisfied. *Hernandez*, 305 F.R.D. at 153 (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)); *see also J.L. v. Cissna*, No. 18-cv-04914-NC, 2019 WL 415579, at *8 (N.D. Cal. Feb. 1, 2019) (finding commonality where lawsuit challenged DHS and USCIS policy and practice). Plaintiff's case challenges common practices, and Defendants have identified common policies that apply class-wide in their attempt to counter Plaintiff's claims. *E.g.*, ECF No. 43 at 24 (pointing to "Defendants' policies regarding COVID-19 antiviral treatment").

Defendants misunderstand the nature of Plaintiffs' complaint by asserting that there is a "wide factual variation requiring individual adjudications of each class member's claims." ECF No. 44 at 18.[6] To the contrary, there is no wide factual variation here because all class members are medically vulnerable and the established medical standard of care treats all risk factors alike. ECF No. 20-14 at ¶ 16 (explaining that the medical standard of care is "to provide COVID-19 antiviral treatment to symptomatic patients with one or more risk factors"); *see also Alcantara*, 613 F. Supp. 3d at 1347 ("Defendants argue that although each subclass member is at high risk [for COVID-19], each has a different risk profile. This may be true, but it does not detract from the undisputed common feature of the subclass, which is that each member is at high risk.") (internal citation omitted). Moreover, all class members are subject to Defendants' inadequate COVID-19 policies and practices at GSA. This commonality is evident from Defendants' admission that "Golden State Annex has not provided COVID-19 antiviral therapies to any detainee," ECF No.

---

[6] For this proposition, Defendants cite only *C.G.B. v. Wolf*, which does not govern here. ECF No. 44 at 20. In *Wolf*, the court declined to certify a class of transgender women because not all members of the class had a condition that the CDC identified as "high-risk" and because the women were dispersed across various U.S. detention centers, thereby precluding a "common classwide answer." 464 F. Supp. 3d 174, 202–06 (D.D.C. 2020). In contrast, here Plaintiffs all reside in the GSA, and all have a medical condition or age that the CDC recognizes as a medical vulnerability to COVID-19. *See* ECF No. 21 at 12 (proposing a class definition of "[a]ll individuals who are, or will be, detained by ICE at GSA, who are 50 years old or over or who have a medical condition that the CDC recognizes as a medical vulnerability for COVID-19").

43-2 at ¶ 7, making clear that this deprivation cuts across all people who would be eligible for this treatment. While "a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death . . . every inmate suffers exactly the same constitutional injury when he is exposed to a single . . . [COVID-19] policy or practice that creates a substantial risk of serious harm." *Roman v. Wolf*, 977 F.3d 935, 944 (9th Cir. 2020) (internal quotations omitted). Accordingly, individual adjudications are not required because the "truth or falsity" of Plaintiffs' contention—that Defendants' COVID-19 policies and practices cause heightened risk to Plaintiffs' health and safety—can be decided in "one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Brown v. Plata*, 563 U.S. 493, 532 (2011) (stating that inadequate medical care in a detention facility threatens all people detained there); *Parsons*, 754 F.3d at 678 ("These policies and practices are the 'glue' that holds together the . . . class . . . .").

As this Court and other courts have held in cases involving ICE detention and COVID-19, a common answer is possible under such circumstances. *See e.g.*, *Roman*, 977 F.3d at 944–45 (provisionally certified class of all ICE detainees at one detention center); *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 38 (N.D. Cal. 2020) (provisionally certified class of all ICE detainees at two detention centers); *Torres v. Milusnic*, 472 F. Supp. 3d 713, 746 (C.D. Cal. 2020) (provisionally certified class of "all current and future" detainees who are over the age of 50 and have underlying health conditions).[7] As such, Plaintiffs satisfy the commonality requirement.

**C.   The Proposed Class Representatives' Claims Are Typical of Those of the Class.**

The Proposed Class Representatives also easily meets the typicality requirement under Rule 23(a)(3), which Defendants largely intertwine with their commonality objections. ECF No. 44 at 20–22. Defendants assert that Mr. Jimenez's circumstances "do not reflect the circumstances of the proposed class." *Id.* at 20. In doing so, Defendants ignore the typicality test, which "refers to the

---

[7] Defendants cite dicta in *Jennings v. Rodriguez* to argue that class actions may not be appropriate ways to resolve Due Process Clause claims. ECF No. 44 at 20. But the *Jennings* Court's observation was specific to the "flexible . . . procedural protections" required by a procedural due process claim and has nothing to do with the substantive due process claims in this case. *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018).

nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Parsons*, 754 F.3d at 685 (internal quotation omitted). Thus, the test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation omitted). Plaintiff passes the test.

The injury to the Class is the violation of their Fifth Amendment substantive due process rights because of Defendants' failure to provide "adequate medical care" and "conditions of reasonable health and safety to people in its custody." ECF No. 1 at 13. Each Class member thus "suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm." *Parsons*, 754 F.3d at 678.

Mr. Jimenez's claims are typical of those of the Class because he is 54 years old and suffers from cardiovascular medical issues, thus qualifying as someone at higher risk of severe COVID-19. Likewise, Mr. Orozco Cuevas is 56 years old and suffers from high blood pressure; and Mr. Riego is 60 years old and suffers from hypertension, diabetes, an aneurysm, and dissection of the aorta. Therefore, they face the same risk as all other Class members: that they will become sick with COVID-19 and will be denied adequate and timely testing and antiviral treatment for COVID-19. The typicality inquiry ends there. *Parsons*, 754 F.3d at 686 ("Each [named plaintiff] declares that he or she is being exposed, like all other members of the putative class, to a substantial risk of serious harm by the challenged [prison] policies and practices. The named plaintiffs thus allege the same or a similar injury as the rest of the putative class . . . .") (internal citation omitted).

Even accepting the Defendants' argument that the Court must find the factual specifics of Plaintiff's past COVID-19 infection to be typical (which is contrary to clear Ninth Circuit precedent set out in *Parsons*), those factual specifics show that Mr. Jimenez faced the exact same defective medical treatment that the class risks. In August of 2023, Mr. Jimenez reported that he was experiencing headaches and chest pains, felt feverish, and had a runny nose. *See* ECF No. 20 at 10–11; Owolabi Decl., at ¶¶ 17, 19, 20. Despite having symptoms and being in a unit where multiple

people had already tested positive for COVID-19, GSA did not administer a COVID-19 test until a week after reporting his symptoms. ECF No. 20 at 11. Therefore, not only is Defendants' assertion that Plaintiff showed "no hallmark COVID-19 symptoms" completely incorrect,[8] their focus on the fact that he tested negative for COVID-19 more than a week after first experiencing symptoms is misplaced. ECF No. 44 at 18.

The CDC states that COVID-19 antivirals should be taken as soon as possible and Paxlovid must be taken within five days of symptoms onset in order to be effective.[9] Thus, by failing to test Mr. Jimenez until more than a week after he began experiencing symptoms, GSA failed to determine whether he had contracted the virus and placed him in serious risk of contracting a severe case of COVID-19. GSA likewise placed him at serious risk by giving him a debunked COVID-19 treatment that put him at increased risk due to his history of cardiovascular issues. *See* ECF No. 20 at 10–11. This is inadequate medical care and a violation of Mr. Jimenez's constitutional rights. It is also emblematic of the course of conduct that all other class members face and is thus not unique to Mr. Jimenez. As such, even the factual specifics of Mr. Jimenez's prior treatment for COVID-19 are typical.

Mr. Orozco Cuevas' circumstances and Mr. Riego's circumstances are also typical of the defective medical treatment that the Class risks. In December of 2023, there was a COVID-19 outbreak in Mr. Orozco Cuevas' dormitory. ECF No. 46-3 at ¶ 6. Despite many of Mr. Orozco Cuevas' dormmates being high risk for severe COVID-19, no one was offered antiviral COVID-19 treatment. *Id.* Mr. Riego also witnessed a severely inadequate COVID-19 outbreak response in

---

[8] The CDC's list of common COVID-19 symptoms includes "fever or chills," "congestion or runny nose," "headache," and "muscle or body aches." *Symptoms of COVID-19*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited Mar. 6, 2024).

[9] *See If You Get Sick with COVID-19, Antiviral Treatments Can Protect You Against Severe Illness*, Ctrs. for Disease Control & Prevention (Dec. 21, 2023, 5:00 PM), https://www.cdc.gov/ncird/whats-new/antiviral-treatments.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Frespiratory-viruses%2Fwhats-new%2Fantiviral-treatments.html; *Paxlovid (Nirmatrelvir Co-packaged with Ritonavir): A Preferred Oral Antiviral Drug to Treat COVID-19*, Admin. For Strategic Preparedness & Response, https://aspr.hhs.gov/COVID-19/Therapeutics/Products/Paxlovid/Pages/default.aspx (last updated Feb. 20, 2024).

1  December of 2023. ECF No. 46-4 at ¶ 7. Defendants asked for volunteers to take a COVID-19 test
2  but did not request that symptomatic persons take a COVID-19 test. *Id.* Defendants also did not
3  wash anyone's blankets or clothing and did not offer COVID-19 antiviral pills or a COVID-19
4  vaccine to anyone. *Id.* While Mr. Riego initially did not have symptoms, he volunteered to take a
5  COVID-19 test, which was negative. *Id.* Days later, he had a headache, sore throat, and cough, and
6  he felt feverish and was sick for twenty days. *Id.* at ¶ 8. He, too, was not offered COVID-19 antiviral
7  pills or a COVID-19 vaccine. *Id.* Given that antivirals must be taken as soon as possible,[10] Mr.
8  Orozco Cuevas and Mr. Riego, like the rest of the Class, face an inadequate medical response if
9  they ever contract COVID-19. Accordingly, the two additional Proposed Class Representatives
10 also demonstrate specific factual circumstances that are typical of the issues the Class faces
11 obtaining adequate and timely testing and antiviral treatment for COVID-19.

**D.   Proposed New Plaintiffs and Their Counsel Will Adequately Represent the Class.**

Plaintiffs satisfy the Rule 23(a)(4) requirement of fairly and adequately protecting the interests of the class. Fed. R. Civ. P. 23(a)(4). "This prerequisite has two parts: (1) that the proposed representative plaintiff and his counsel do not have any conflicts of interest with the proposed class; and (2) that they will prosecute this action vigorously on behalf of the class." *Sullivan v. City of Berkeley*, 328 F.R.D. 352, 357–58 (N.D. Cal. 2018). Defendants do not contest the adequacy of counsel or that Mr. Jimenez will prosecute this action vigorously on behalf of the class. Instead, they speculate—with absolutely no factual support—that his representation of "people with wholly different medical concerns or high-risk characteristics than he has" is a conflict of interest. ECF No. 44. at 23. Defendants once again misapply the standard.

Adequate representation does not require that class representatives share the exact characteristics of every member of the class. It instead requires "an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). This requirement is met when

---

[10] *See If You Get Sick*, *supra* note 8.

the challenged policy applies equally to all members of the class—as it does with Proposed New Plaintiffs and all class members. *Id.*

The Proposed Class Representatives do not have any interests antagonistic to the class. Each has multiple risk factors for severe COVID-19. ECF No. 20-11 at ¶¶ 3, 4 (age over 50 and hypertension); ECF No. 46-3 at ¶¶ 1, 3 (age over 50 and hypertension); ECF No. 46-4 at ¶ 3 (age over 50, hypertension, diabetes, an aneurism, and dissection of the aorta). The established medical standard of care treats all risk factors alike: "to provide COVID-19 antiviral treatment to symptomatic patients with one or more risk factors." ECF No. 20-14 at ¶ 16. Thus, contrary to Defendants' unsupported speculation, there is no possible grounds for antagonism based on differences in medical conditions. Mr. Jimenez has a common interest with the class in seeking redress for Defendants' failure to follow proper COVID-19 testing procedures and to provide COVID-19 antiviral medications at GSA. *See* ECF No. 20-11 at ¶ 11. The same is true for Mr. Orozco Cuevas and Mr. Riego. *See* ECF No. 46-3 at ¶ 8; ECF No. 46-4 at ¶ 12. The Proposed Class Representatives are prepared to zealously represent the Class. As such, the Proposed Class Representatives are adequate representatives of the class.

### E. Certification of a Rule 23(b)(2) Class Is Appropriate.

This Court has jurisdiction to grant the requested injunctive relief on a class-wide basis. Defendants argue that the court lacks jurisdiction to grant the requested relief, namely COVID-19 testing and antiviral treatment, pursuant to 8 U.S.C. § 1252(f)(1). But Section 1252(f)(1) does not bar class-wide relief here. As an initial matter, 8 U.S.C. § 1252(f)(1) does not deprive lower courts of subject matter jurisdiction, but rather limits a court's authority to issue class-wide injunctive relief for certain claims. *Biden v. Texas*, 597 U.S. 785, 798 (2022). Section 1252(f)(1) limits the authority of lower courts to "enjoin or restrain the operation of the provisions of part IV of this subchapter," or 8 U.S.C. §§ 1221–1232, on a class-wide basis.[11] Defendants' suggested reading of Section 1252(f)(1) would expand its scope to a startling degree, making it functionally impossible

---

[11] "Because § 1252(f)(1) is located within Title 8, Chapter 12, Subchapter II of the United States Code, the reference in § 1252(f)(1) to 'the provisions of part IV of this subchapter' appears to refer to 8 U.S.C. §§ 1221–1232." *Galvez v. Jaddou*, 52 F.4th 821, 830 (9th Cir. 2022).

for federal courts to address constitutional violations regarding conditions of confinement in immigration detention. This is particularly true because claims "for injunctive relief stemming from allegedly unconstitutional conditions of confinement are the quintessential type of claims that Rule 23(b)(2) was meant to address." *Parsons*, 754 F.3d at 687.

Defendants claim that the injunctive relief requested in this case would "interfere[] with ICE's execution of its detention responsibilities under the [Immigration and Nationality Act ("INA")], including its ability to detain individuals at GSA," such that it would trigger Section 1252(f)(1)'s limits. ECF No. 44 at 23. But this claim is flawed for several reasons. First, Defendants have failed to identify any specific statutory provision subject to Section 1252(f)(1)'s limits that Plaintiff's requested injunction would restrain. The provision of medical care to detainees is not even remotely addressed by the statutes covered by Section 1252(f)(1), which, to the extent that they address detention, concern only ICE's authority to detain or release certain groups of non-citizens. *See* 8 U.S.C. §§ 1226, 1231; *see also* Pl.'s Opp. Br. at 3-7. Indeed, *Aleman Gonzalez* characterized "the statutes to which § 1252(f)(1) refers" as provisions "governing the inspection, apprehension, examination, and removal of aliens," none of which apply here. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549-550 (2022). Moreover, Section 1252(f)(1) does not reach the *entire* INA—only a subpart—and class-wide relief that falls outside its scope is not prohibited. *Catholic Social Services, Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc); *Gonzales v. Dep't of Homeland Security*, 508 F.3d 1227, 1233 (9th Cir. 2007). Defendants' argument fails on its face, as they do not identify or show how *any* statute covered by Section 1252(f)(1) is restricted.

Second, Defendants also grossly overstate the scope of 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) does not bar, as Defendants claim, "any order impacting ICE's ability" to execute its detention responsibilities, including cost. ECF No. 44 at 23. Section 1252(f)(1) only prohibits orders that directly "enjoin or restrain" the operation of the covered provisions—which Defendants have not even identified—not orders that would merely "affect" them. Unlike other statutes that use broader language to bar injunctions of certain covered activities, Section 1252(f)(1) includes only the words "enjoin or restrain," but does not include the word "affect" when referring to the

covered provisions. *Compare Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) (concluding that inclusion of word "affect" in 12 U.S.C. § 1821(j) to limit court restraint of the Federal Deposit Insurance Corporation's power is a "sweeping ouster of courts' power to grant equitable remedies") *with Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 12–13 (2015) (concluding that "enjoin, suspend or restrain" in 28 U.S.C. § 1341 refers only to court orders that "stop" tax collection, not orders that "merely inhibit" it.).

Third, nothing about the requested relief would limit ICE's ability to detain people under the terms of the INA. Defendants claim that the requested relief would cause an "administrative nightmare," "infringe[] on the operation of ICE facilities nationwide" and "will require substantial changes to ICE detention facility operations and intergovernmental service agreements with state and local governments." ECF No. 44 at 23–24. Defendants' claim grossly exaggerates the scope of the request. The Proposed Class merely requests the provision of COVID-19 tests and antiviral medications to medically vulnerable people at *one* detention facility. Defendants' claim that the requested relief would override the operation of ICE's national COVID-19 guidelines is unfounded, particularly as these guidelines expressly contemplate facility-specific COVID-19 mitigation requirements resulting from court orders and require adherence to them "even where they impose more stringent requirements."[12]

Finally, Defendants' claim that Section 1252(f)(1) bars class certification in a case requesting declaratory relief is patently incorrect. Section 1252(f)(1), on its face, does not strip the court of jurisdiction or authority to issue class-wide declaratory relief, nor has the Supreme Court opined on the question. *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010) ("Section 1252(f) was not meant to bar classwide declaratory relief."); *see also Aleman Gonzalez*, 596 U.S. at 552 n.2 ("Because only injunctive relief was entered here, we have no occasion to address [the Government's suggestion that § 1252(f)(1) bars class-wide declaratory relief]."). Indeed, Defendants' citation to *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018), is not binding precedent,

---

[12] U.S. Immigration and Customs Enforcement, *Post Pandemic Emergency COVID-19 Guidelines and Protocols, Version 2.0* at 5 (Jul. 13, 2023), https://www.ice.gov/doclib/coronavirus/eroCOVID19PostPandemicEmergencyGuidelinesProtocol_07132023.pdf [https://perma.cc/B642-UW65].

but merely an instruction to the lower court to consider the question of whether Rule 23(b)(2) class certification was proper in light of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and the question of individualized relief, *not* Section 1252(f)(1). For these reasons, this court has jurisdiction and authority to grant the requested relief on a class-wide basis.

### III.  CONCLUSION

For the foregoing reasons, the Court should provisionally certify the Class, appoint the Proposed Class Representatives as Class representatives, and appoint the undersigned counsel as Class counsel.

| | |
|---|---|
| Dated: March 11, 2024 | **GOODWIN PROCTER LLP** |
| | By:   */s/ Nicole Kim* |

Sean Riordan (SBN 255752)
*sriordan@aclunc.org*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA**
39 Drumm Street
San Francisco, California 94111
Tel.: +1 415 621-2493

Kyle Virgien (SBN 278747)
*kvirgien@aclu.org*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
425 California St., Suite 700
San Francisco, California 94104
Tel.: +1 202 393-4930

Eunice Cho (*pro hac vice*)
*echo@aclu.org*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Tel.: +1 202 548-6616

Eva Bitran (SBN 302081)
*ebitran@aclusocal.org*
Mayra Joachin (SBN 306065)
*mjoachin@aclusocal.org*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA**
1313 West 8th Street
Los Angeles, CA 90017
Tel: +1 213 977-5232

Linnea Cipriano (*pro hac vice*)
*LCipriano@goodwinlaw.com*
Timothy J. Beavers (*pro hac vice*)
*TBeavers@goodwinlaw.com*
Jacob Tyson (*pro hac vice*)
*JTyson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Tel.: +1 212 813 8800
Fax: +1 212 355 3333

Nicole Kim (SBN 324698)
*NicoleKim@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa St., 41st Floor
Los Angeles, California 90017
Tel.: +1 213 426 2495
Fax: +1 213 623 1673

Oscar Barron-Guerra (SBN 345284)
*OBarronGuerra@goodwinlaw.com*
**GOODWIN PROCTER LLP**
3 Embarcadero Center, 28th Floor
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

*Attorneys for Petitioners-Plaintiffs*