BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
JEFFREY S. ROBINS
Deputy Director
SARAH L. VUONG
Assistant Director
MICHELLE M. RAMUS
ALEXA S. WHITE
SHANE A. YOUNG
ANNA L. DICHTER
Trial Attorneys
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 353-2405; Fax: (202) 305-7000
Anna.L.Dichter@usdoj.gov
*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(EUREKA)**

| | |
|---|---|
| VICTOR JIMENEZ,<br><br>Plaintiff,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Defendants. | No. 1:23-cv-06353-RMI<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY[1] TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

---

[1] Defendants contemporaneously filed an Unopposed Motion for Leave to File Sur-Reply.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
No. 1:23-cv-06353-RMI

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................ 1

II. ARGUMENT ............................................................................................................................. 1

    A. The Court lacks jurisdiction to grant Plaintiffs the class-wide relief they seek under 8 U.S.C. § 1252(f)(1) ........................................................................................................................... 1

    B. The additional proposed Plaintiffs suffer the same standing deficiencies as Plaintiff Jimenez ................................................................................................................................... 3

    C. Plaintiffs fail to show a likelihood of success on their Fifth Amendment Claim ............. 9

        i. Defendants have not made any intentional decision to deny Plaintiffs access to timely testing or antiviral medications at GSA (Factor 1) .................................................. 10

        ii. Defendants have not put Plaintiffs or the Declarants at substantial risk of suffering serious harm (Factor 2) ............................................................................................. 11

        iii. Defendants have taken reasonable measures to abate the risks of contracting COVID-19 (Factor 3) .................................................................................................................. 13

        iv. Defendants' actions did not cause injury (Factor 4) ................................................. 14

    D. Plaintiffs do not face irreparable harm ............................................................................ 14

    E. The balance of equities weighs heavily against preliminary relief .................................. 14

III. CONCLUSION ....................................................................................................................... 15

i
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
No. 1:23-cv-06353-RMI

**CASES**

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................................. 4

*Fraihat v. U.S. Immigr. & Customs Enf't*,
  16 F.4th 613 (9th Cir. 2021) ............................................................................................... 13

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ........................................................................................ 14, 15

*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022) ......................................................................................................... 2, 3

*General Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) .............................................................................................................. 7

*Geo Grp., Inc. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) ................................................................................................ 3

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ............................................................................................. 14

*Lopez v. Brewer*,
  680 F.3d 1068 (9th Cir. 2012) ........................................................................................... 15

*Munns v. Kerry*,
  782 F.3d 402 (9th Cir. 2015) ............................................................................................... 4

*Roberts v. Corrothers*,
  812 F.2d 173 (9th Cir. 1997) ............................................................................................... 4

*Roman v. Wolf*,
  977 F.3d 935 (9th Cir. 2020) .................................................................................10, 11, 14

*United States v. Garcia*,
  No. 14-cr-20035, 2021 WL 1499312 (C.D. Ill. Apr. 16, 2021) ........................................ 12

*Whitmore v. Ark*,
  495 U.S. 149 (1990) ............................................................................................................. 4

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................................ 5, 14

## STATUTES

8 U.S.C. § 1226(a) ............................................................................................................. 1, 2

8 U.S.C. § 1226(c) ............................................................................................................. 1, 2

8 U.S.C. § 1231(a) ................................................................................................................. 2

8 U.S.C. § 1231(a)(1)(A)–(B) ................................................................................................. 1

8 U.S.C. § 1231(g) ........................................................................................................... 1, 2, 3

8 U.S.C. § 1252(f)(1) ....................................................................................................... 1, 2, 3

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 4, 15

Fed. R. Evid. 801 ................................................................................................................... 5

## MISCELLANEOUS

CDC COVID-19 Treatment and Medications, Jan. 18, 2024, https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html (last visited Mar. 14, 2024) ............................. 11

*CDC Updates and Simplifies Respiratory Virus Recommendations*, Center for Disease Control and Prevention, https://www.cdc.gov/media/releases/2024/p0301-respiratory-virus.html (last visited Mar. 1, 2024) .......................................................................................................................................... 9

CDC Yellow Book, *COVID-19*, Center for Disease Control and Prevention (updated August 2022), https://wwwnc.cdc.gov/travel/yellowbook/2024/infections-diseases/covid-19 ................................... 5

COVID-19, *Benefits of getting Vaccinated*, Center for Disease Control and Prevention (updated Sep. 22, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html .......................... 9

*COVID-19 Symptoms*, Center for Disease Control and Prevention (Updated Oct. 26, 2022) https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html#:~:text=Fever%20or%20chills, Fatigue ............................................................................................................................. 10

Darragh O'Connell, MD, *Signs and Symptoms of COVID-19*, Healthline (updated Jan. 11, 2022), https://www.healthline.com/health/coronavirus-symptoms#symptoms ............................................. 10

*Guidance on Management of COVID-19 in Homeless Service Sites and in Correctional and Detention Facilities* Center for Disease Control and Prevention (updated May 11, 2023), https://archive.cdc.gov/#/results?q=https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html&start=0&rows=10 ......................................... 9

Random House Dictionary of the English Language (2d ed. 1987) ....................................................... 2

Webster's Third New International Dictionary (1961) ........................................................................ 2

## I. INTRODUCTION

The issue in this case is straightforward—Plaintiffs[2] challenge their access to COVID-19 antiviral medication at Golden State Annex ("GSA"). *See* ECF 1 and ECF 20 (both subtitled "Failure to provide COVID-19 antiviral medications to medically vulnerable immigrants detained at Golden State Annex"). In response, Defendants provided medical records, declarations, and policy updates showing that antiviral medication is readily available at GSA to those clinically indicated after evaluation by medical professionals. Now, after Defendants provided ample evidence that Plaintiff Jimenez and Declarant Moiseev had access to COVID-19 antiviral treatment but were not clinically indicated for antiviral treatment after evaluation by a medical professional at GSA because they never showed hallmark symptoms of COVID-19, Plaintiffs pivot to focus almost entirely on testing. Plaintiffs fail to engage with the medical evidence in this case that directly refutes their allegations. In fact, Plaintiffs continue to represent information that is unsupported by their medical records. The addition of two new Plaintiffs and a Declarant is of no further help. GSA medical professionals determined that *none* of these individuals were clinically indicated for antiviral treatment and provided *all* of these individuals timely, appropriate, and documented medical care. In short, Plaintiffs' disagreement with the medical treatment received by individuals at GSA should not carry more weight than the medical evaluations and reasonable treatment plans developed by a trained doctor. Plaintiffs' Amended Complaint should be dismissed and Plaintiff Jimenez's Motion for Preliminary Injunction should be denied.

## II. ARGUMENT

### A. The Court lacks jurisdiction to grant Plaintiffs the class-wide relief they seek under 8 U.S.C. § 1252(f)(1).

Plaintiffs incorrectly assert that "nothing about the requested injunctive relief would interfere with the authority or implementation of [8 U.S.C. §§ 1226(a) and (c), 8 U.S.C. § 1231(a)(1)(A)–(B) and 8 U.S.C. § 1231(g)]." ECF No. 53 at 9.[3] Although Plaintiffs characterize the injunction as one "to provide

---

[2]  On February 27, 2024, Plaintiff Jimenez moved to add two new Plaintiffs and amend his Complaint. ECF No. 46. Defendants did not oppose Plaintiff's motion. Defendants will refer to Plaintiff Jimenez and the two proposed Plaintiffs collectively as "Plaintiffs" in this reply and sur-reply.

[3]  Defendants cite to the blue ECF page numbers.

1
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
No. 1:23-cv-06353-RMI

Case 1:23-cv-06353-RMI   Document 58-2   Filed 03/18/24   Page 6 of 20

COVID-19 tests and antiviral treatment to medically vulnerable people at GSA," the proposed injunction seeks to compel GSA to provide COVID-19 tests and antiviral treatment in a specific manner contrary to the operational choices of Defendants, which would be intrusive on the daily operations of GSA. ECF No. 53 at 10. Under the proposed injunction here, facility officers and medical staff would have multiple timing provisions to follow for treatment that are more stringent than CDC and ICE guidelines. Additionally, Plaintiffs request onerous reporting requirements on a monthly basis covering not only the facilities stock of antivirals at GSA, but also a list of all class members and individual dates of symptoms, testing, and prescription medication. ECF No. 20-15. These provisions of the injunction would "enjoin or restrain" the operation of the section 1252(f)(1) covered provisions, specifically 8 U.S.C. §§ 1226(a) and (c), 8 U.S.C. §§ 1231(a) and (g). While true that none of these statutes address medical care in detention, they do cover whom ICE can detain, and Plaintiffs' requested injunction would restrain the manner in which ICE carries out these covered detention functions. *See* ECF 50 at 19–20 (discussing effect of preliminary injunction on ICE's operations at GSA).

Plaintiffs incorrectly focus on the statutory phrase "enjoin or restrain" in arguing that the proposed injunction is not prohibited by section 1252(f)(1). ECF No. 53 at 11. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549 (2022) (Defining "the term 'to enjoin' ordinarily means to 'require,' 'command,' or 'positively direct' an action or to 'require a person to perform, ... or to abstain or desist from, some act.'" And defining restrain as to "check, hold back, or prevent (a person or thing) from some course of action" and noting that "'restrain' sometimes has a 'broad meaning' that refers to judicial orders that 'inhibit' particular actions, and at other times it has a 'narrower meaning' that includes 'orders that stop (or perhaps compel)' such acts."). But the Supreme Court has explained that section 1252(f)(1) limits a court's jurisdiction to enjoin or restrain *the operation* of the relevant statutory provisions. "The 'operation of' (a thing) means the functioning of or working of (that thing)." *Id.* (citing Random House Dictionary of the English Language 1357 (2d ed. 1987) ("an act or instance, process, or manner of functioning or operating"); Webster's Third New International Dictionary, at 1581 ("method or manner of functioning")). And the manner "in which laws ordinarily 'work' or 'function' is through the actions of

2
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
No. 1:23-cv-06353-RMI

officials or other persons who implement them." *Id*. Thus, the Supreme Court accepted the government's explanation that the "operation of the provisions" in Section 1252(f)(1) is "a reference 'not just to the statute itself but to the way that [it is] being carried out.'" *Id.* at 550. Here, Plaintiffs' proposed injunction restrains the method or manner of how the detention statutes are carried out, as an injunction imposing additional burdens on GSA would intrude on the day-to-day operations at GSA by requiring increased monitoring and recording of information on every individual who falls within the broad class identified by Plaintiffs. The proposed injunction also disregards the need for individualized clinically indicated medical treatment plans to identify, prevent, and treat COVID-19.

Plaintiffs also argue that their requested injunction will not "interfere with ICE's authority or ability to carry out Section 1231(g), which instructs the agency to 'arrange for appropriate places of detention.'" ECF No. 53 at 10. However, if ICE's contract with GSA cannot be upheld because the injunction requires changes that go beyond the contractual agreement, it could impact whether ICE could place any individuals at GSA. *See* ECF No. 50 at 19. Indeed, Plaintiffs do not dispute that *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022), supports Defendants' argument that ICE contracts out its detention responsibilities to private contractors like GEO, who run GSA, and any interference with that contract could affect ICE's ability to detain individuals at that facility.

Finally, the fact that ICE's Post-Pandemic Guidelines acknowledge that the agency will abide by court orders does not make Defendants' claims regarding the effect of a burdensome injunction "demonstrably false," as claimed by Plaintiffs. ECF No. 53 at 11. Nor does the fact that the agency follows court orders provide this Court with jurisdiction despite ection 1252(f)(1). Plaintiffs request that the court order onerous monitoring and reporting which will in turn restrain ICE's determinations on how to carry out its statutory detention authority. Section 1252(f)(1) therefore bars the Court from granting Plaintiffs' requested relief. The Court should dismiss Plaintiffs' Amended Complaint and deny Plaintiffs' Motion for Preliminary Injunction.

**B.     The additional proposed Plaintiffs suffer the same standing deficiencies as Plaintiff Jimenez.**

The Court should dismiss Plaintiffs' Amended Complaint and deny Plaintiffs' Motion for Preliminary Injunction for lack of standing. *Roberts v. Corrothers*, 812 F.2d 173, 177 (9th Cir. 1997) ("In resolving a Rule 12(b)(1) motion, the Court is not limited to the Complaint's allegations, but may consider extrinsic evidence in determining whether Plaintiff lacks standings"); *Whitmore v. Ark*, 495 U.S. 149, 154 (1990) ("It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invite the jurisdiction of the court must establish the requisite standing to sue"). To establish standing based on imminent risk of harm, the imminent harm that Plaintiffs fear must be "*certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original and internal citation omitted). "[A] theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Id.* at 410. Plaintiffs' claimed injuries cannot be speculative or hypothetical, rather it "must be sufficiently imminent for a federal court to address it prospectively." *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015).

The factual evidence in this case does not support Plaintiffs' allegations that they face imminent risk of harm due to Defendants' COVID-19 policies. ECF No. 53 at 12. Plaintiffs have not shown that they suffered injury or will certainly suffer imminent harm in the future. Plaintiff Jimenez states that he "has been tested for COVID-19 only *once* while at GSA even though there have been multiple reported COVID-19 outbreaks at the facility." ECF No. 53 at 12. But Plaintiff Jimenez's allegations are unsupported by his medical records. His medical records indicate that he was tested ▮ while at GSA. ECF No. 50 at 13–14. Also, evidence demonstrates that there has only been one COVID-19 outbreak at GSA—in August 2023. *See* ECF No. 43-1 ¶ 22 (stating that the only COVID-19 outbreak at GSA occurred in August 2023). Plaintiff Jimenez's denial of his own medical records and refusal to engage with the evidence provided in this case underscores why this case should be dismissed outright—the evidence simply does not show that Plaintiffs have suffered any injury or are at risk of imminent injury in the future.

Further, Plaintiff Jimenez's argument that "Defendants cannot prove that [Plaintiff] has not contracted COVID-19 at GSA or that he has not been injured by their unlawful policies at the facility" impossibly seeks for Defendants to prove a negative. ECF No. 53 at 13. Plaintiff Jimenez was evaluated by a doctor on ▇▇▇▇ in August 2023 alone. It is Plaintiffs' burden to establish an injury, not Defendants' burden to establish that there has not been an injury. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Defendants cannot prove that Plaintiff Jimenez, or anyone else, have not contracted COVID-19 at GSA, particularly where about 40% of people are asymptomatic,[4] and there has only been one case of COVID-19 at GSA since the August outbreak. ECF No. 43-2 ¶¶ 15, 19. Defendants have provided evidence, and Plaintiff Jimenez does not dispute, that he has fully recovered from any ailments. ECF No. 43-4 ¶ 24.[5] Thus, Plaintiff Jimenez was not injured by any alleged unlawful policy at GSA.

The proposed new Plaintiffs' and the new Declarant's allegations further highlight that they do not have risk of imminent injury.[6] The first new Plaintiff, Esteban Riego, alleges that he had COVID-19 in 2021, two years before he was detained at GSA. ECF No. 46-4 ¶¶ 2, 4. He alleges that GSA has not offered him a COVID-19 vaccine since he arrived. *Id.* ¶ 6. However, the medical records indicate that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Second Declaration of Dr. Owolabi ¶ 10, attached as Ex. G; Riego Medical Records, attached as Ex. H at 32. Plaintiff Riego further alleges that there was a COVID-19 outbreak in December 2023. ECF No. 46-4 ¶ 7. This is not true. *See* ECF No. 45-1 ¶ 22 (stating there were zero COVID-19 positive cases at GSA in December 2023).[7] Plaintiff

---

[4] CDC Yellow Book, *COVID-19*, Center for Disease Control and Prevention (updated August 2022), https://wwwnc.cdc.gov/travel/yellowbook/2024/infections-diseases/covid-19.

[5] Notably, Plaintiff Jimenez fails to acknowledge that the headaches he complained of on August 10, 2023, were one of more than ten occasions where he was treated for headaches and that he often attributed his headaches to high blood pressure, stress, and medication. ECF No. 50 at 8. Plaintiff also fails to acknowledge that after his medical visit, his treating physician ordered follow up testing or that he has been repeatedly noncompliant with his medications. *Id.* Finally, Plaintiff Jimenez fails to acknowledge that his vitals were taken nine times throughout August 2023 and on August 21, 2023, and that he reported having no medical concerns. Thus, even if Plaintiff Jimenez did contract COVID-19 in August 2023, he was thoroughly monitored, determined not to have the hallmark symptoms of COVID-19, and fully recovered. *Id.*

[6] Much of Plaintiffs' and the Declarant's declarations contain hearsay and should not be permitted as evidence to prove the truth of the matter. Fed. R. Evid. 801.

[7] *See supra* n.2.

5
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
No. 1:23-cv-06353-RMI

Riego also claims that during the COVID-19 outbreak, during which he tested negative, he was surrounded by individuals who were sick. ECF No. 46-4 ¶ 7; Ex. G ¶ 11. But the medical records show that GEO offered to move him to a different COVID-19 negative dorm during the August 2023 outbreak and he declined. Ex G ¶ 12; Ex. H at 43. And while Plaintiff Riego further alleges that at some point in time he was sick for twenty days and had headaches, sore throat, cough, and fevers after he tested negative for COVID-19, ECF No. 46-4 ¶ 8, his medical records refute his allegations. *See generally* Ex. H. There are no medical records indicating that he was seen for any of these symptoms in August, September, October, November, or December 2023. *Id*. When Plaintiff Riego was ███████████████████████████ *Id*. He did ███████████████████████████████████ *Id*. at 44-63. Most of Plaintiff Riego's medical records ████████████████████████████ ███████ *See generally* Ex. H. In sum, like Plaintiff Jimenez, Plaintiff Riego cannot establish an injury sufficient to provide standing as he has received thorough and appropriate medical care and is not at imminent risk of harm.

The second new Plaintiff, Orozco Cuevas, makes similar allegations. Plaintiff Cuevas speculates that there was a COVID-19 outbreak in December 2023. ECF No. 46-3 ¶ 6. But not every round of a virus is necessarily COVID-19. *See* ECF No. 45-1 ¶ 22 (stating there were zero COVID-19 positive cases at GSA in December 2023). Plaintiff Cuevas' medical file has no medical notes related to a COVID-19 exposure or complaint of COVID-19 like symptoms during December 2023. *See generally* Cuevas Medical Records, attached as Ex. I; Ex. G ¶ 20 ("There were no cases of COVID-19 in December of 2023 in Cuevas' dorm."). Although Plaintiff Cuevas alleges that he is afraid of contracting COVID-19 at GSA, his medical records reveal that he ██████████████████████████████ Ex. G ¶ 17; Ex. I at 35. He did, however, ████████████████████ just days before signing his declaration. Ex. G ¶ 17; Ex. I at 2. While in immigration custody, Plaintiff Cuevas has had ██████ ████████████████████ before his transfer to GSA. Ex. I at 24-31; Ex. G ¶ 19. During the August 2023 outbreak, he ██████████ and when GEO offered to move him to a COVID-19 negative

dorm, he refused. Ex. G ¶ 18. Most of Plaintiff Cuevas' medical records pertain to ▮▮▮ ▮▮▮ which are unrelated to the issue in this case. *See generally* ECF No. 46-3. Thus, like Plaintiff Jimenez and Plaintiff Riego, Plaintiff Cuevas has received thorough and appropriate medical care and is not at imminent risk of harm sufficient to establish an injury at the hands of Defendants.

Plaintiffs also submit, for the first time, a new declaration from Gustavo Coreas, who is not a party to this suit. ECF Nos. 53, 53-1. Defendants did not oppose the motion to add two new Plaintiffs, both of whom were disclosed to Defendants ahead of time. *See* ECF No. 46 at 4; *see also supra* n.2. But the same does not apply to Declarant Coreas. First, Declarant Coreas is not a named Plaintiff. He cannot establish standing on behalf of Plaintiffs or the proposed class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982) ("A declarant cannot establish standing for class representatives unless specifically named as a class representative."). Second, in his Opposition, Plaintiff Jimenez states that he was "unable to include [Declarant Coreas] in his motion to add new plaintiffs due to timing." ECF No. 53 at 8. However, Declarant Coreas has been detained since March 2022, and he signed his declaration on February 23, 2024, well before Plaintiff Jimenez filed a motion to add new plaintiffs. ECF No. 53-1 ¶¶ 2, 13. Plaintiffs do not provide a sufficient reason why Declarant Coreas could not have been included in the motion to add new plaintiffs.[8]

Even though Defendants are under no obligation to respond to Declarant Coreas' allegations, his claims bolster Defendants' position—that none of the individuals named in this case suffered any injury or are at risk of suffering imminent harm. Declarant Coreas is ▮ years old, ▮▮▮ ▮▮▮ and ▮▮▮ ▮▮▮ Coreas Medical Records, 2, 61, 69, attached as Ex. J; Ex. G ¶ 25. Declarant Coreas alleges that he worries that if he contracts COVID-19 at GSA he will not have access to antivirals. ECF No. 53-

---

[8] To the extent that Plaintiff Jimenez is trying to circumvent the Federal Rules of Civil Procedure and avoid amending his Complaint, Motion for Preliminary Injunction, and Motion for Provisional Class Certification under the normal course, those attempts should be denied as they have made the case procedurally muddled and overly burdensome to respond to.

7
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY TO
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
No. 1:23-cv-06353-RMI

1. Yet, on August 25, 2022, Declarant Coreas ██████████████████ at intake at GSA. Ex. J at 77. While relying on inadmissible hearsay, Declarant Coreas alleges that he was told antivirals "are only for severe cases of COVID, and that [he] would not qualify for [antivirals] because [he] is healthy." *Id.* ¶ 6. In addition to relying on inadmissible hearsay, Declarant Coreas does not allege when this conversation took place, nor does he specifically mention with whom he spoke. *See generally* ECF No. 53-1. Moreover, Declarant Coreas claims that GSA did not give detainees COVID-19 tests in August or September of 2023. ECF No. 53-1 ¶ 7. But the records indicate that ██████████████████ ██████████████████ within a couple of hours of his sick call. Ex G ¶ 27; Ex. J at 56-57. He tested positive for COVID-19, but his ██████████████████ ██████████████████ Ex. J at 83-100. Contrary to his allegations, Declarant Coreas ██████████████████ *Id.* The following day, Declarant Coreas was given ██████ ██████████████████ *Id.* at 58. On August 23, 2023, the medical notes state that Declarant Coreas ██████████████████ *Id.* at 93. On August 29, 2023, Declarant Coreas followed up at ██████████████████ ██████████████ *Id.* at 83. ██████ *Id.* By September 1, 2023, he ██████ ██████████████████ *Id* at 79. Significantly, Declarant Coreas received ██████████████████ *Id* at 14-15. Declarant Coreas' medical records indicate that from March 18, 2022, when he arrived at GSA until less than a month ago, ██████████ ██████████████████ *See generally id.*

The evidence establishes that Defendants have tested individuals with COVID-19 symptoms and individuals exposed to COVID-19, provided medical care appropriately tailored to each individual's medical needs, and offered vaccinations and boosters—and Plaintiffs fail to show otherwise. *See generally* ECF No. 50. While Plaintiffs recognize that outside of GSA, "COVID-19 has resulted in fewer hospitalizations as the number of people who are vaccinated grows," ECF No. 53 at 14, they fail to

acknowledge that vaccinations also prevent harm within GSA. Indeed, Plaintiff Jimenez was vaccinated twice against COVID-19 and received two boosters, Plaintiff Cuevas was vaccinated in February 2024, and Declarant Coreas was vaccinated this month. *See* ECF No. 50 at 7; *supra* II.B. Vaccines "are effective at protectiving people from getting seriously ill, being hospitalized, and dying [and remain] the safest strategy for avoiding hospitalizations, long term health outcomes, and death."[9]

Finally, contrary to Plaintiffs' assertion that outside GSA, "there are still 'significant numbers of people getting sick,' and COVID-19 remains a significant cause of long-term disability and death, ECF No. 53 at 14, the Center for Disease Control is actively revising its recommendations to reflect the decrease in COVID-19 hospitalizations and deaths and treat COVID-19 as a respiratory virus similar to other seasonal viruses.[10] Indeed, as of March 1, 2024, the CDC has archived its Guidance on Management of COVID-19 in Homeless Service Sites and in Correctional and Detention Facilities.[11] That guidance is now historical and is no longer being updated. *Id.* The evidence in this case, and new CDC recommendations, refute Plaintiffs' allegations that they are in imminent risk of harm. For this reason, Plaintiffs lacks standing and the Court should dismiss the Complaint and deny the Motion for Preliminary Injunction.

### C. Plaintiffs fail to show a likelihood of success on their Fifth Amendment Claim.

Defendants submit this argument as a sur-reply to Plaintiffs' Reply in Support of Plaintiff Jimenez's Motion for Preliminary Injunction to address the proposed new Plaintiffs and their effect on Defendants' arguments in its opposition filed to the motion. Plaintiff Jimenez did not move to amend his Motion for Preliminary Injunction. *See* ECF Nos. 20, 46. Yet, on March 11, 2024, Plaintiffs filed a Reply

---

[9] COVID-19, *Benefits of getting Vaccinated*, Center for Disease Control and Prevention (updated Sep. 22, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

[10] *CDC Updates and Simplifies Respiratory Virus Recommendations*, Center for Disease Control and Prevention, https://www.cdc.gov/media/releases/2024/p0301-respiratory-virus.html (Mar. 1, 2024) ("Today's announcement reflects the progress we have made in protecting against severe illness from COVID-19.").

[11] *Guidance on Management of COVID-19 in Homeless Service Sites and in Correctional and Detention Facilities* Center for Disease Control and Prevention (updated May 11, 2023), https://archive.cdc.gov/#/results?q=https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html&start=0&rows=10 ("This is archived content from the CDC website. The information here may be outdated and links may no longer function.").

9
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
No. 1:23-cv-06353-RMI

in Support of Plaintiff Jimenez's Motion for Preliminary Injunction ("Plaintiffs' Reply") asserting new arguments and factual allegations regarding COVID-19 medical treatment at GSA for Plaintiff Riego, Plaintiff Cuevas, and Declarant Coreas. *See* ECF No. 53 at 14-24. Defendants contemporaneously seek leave to file this sur-reply for two reasons. First, Defendants request that this Court strike or decline to consider Plaintiffs' new arguments and factual allegations related to Plaintiff Riego, Plaintiff Cuevas, and Declarant Coreas because these arguments were inappropriately raised for the first time in Plaintiffs' Reply. Second, should this Court decide to consider the information raised for the first time in Plaintiffs' Reply, Defendants request an opportunity to address the new arguments and factual allegations. Thus, to the extent the Court considers the proposed new Plaintiffs discussed in Plaintiffs' Reply, Defendants provide the following response.

Even with the addition of the proposed new Plaintiffs, Plaintiffs cannot establish a likelihood of success on the merits that would warrant a preliminary injunction as they cannot show that Defendants have violated their right to reasonable health and safety under the framework set out in *Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020).[12] Thus, their remaining substantive due process claim fails.

> **i. Defendants have not made any intentional decision to deny Plaintiffs access to timely testing or antiviral medications at GSA (Factor 1).**

Under the first factor for analyzing the right to reasonable health and safety, Plaintiffs must establish that Defendants made "an intentional decision with respect to the conditions under which the plaintiff[s were] confined." *Id.* Plaintiffs argue that Defendants "intentional decision" is their failure to "address the ample evidence that detained immigrants at GSA are not timely tested and are not offered antiviral medication, even when eligible." ECF No. 53 at 16. But the addition of new Plaintiffs does not

---

[12] Without basis, Plaintiffs asserts that Defendants did not "dispute the appropriateness of any particular contour of Plaintiff's proposed injunction" and therefore, "it is undisputed that if the Court grants injunctive relief, it should include the terms of Plaintiff's proposed injunction." ECF No. 53 at 19. However, Defendants contested the reasonableness of the specific provisions of Plaintiff Jimenez's proposed injunction in detail in their Motion to Dismiss. ECF No. 50 at 13 ("Plaintiff requests a broad injunction mandating immediate changes at GSA, including stocking antiviral medicine onsite, requiring specific timelines for treatment, increased testing, and an evaluation within 24-hours of reporting symptoms, posting educational material, and monthly reporting."). These immediate changes are unreasonable because they deviate from CDC guidance. ECF No. 50 at 13.

1  change the fact that individuals are being tested at GSA. Plaintiff Jimenez, Declarant Moiseev, Plaintiff
2  Riego, Plaintiff Cuevas, and Declarant Coreas █████████████ multiple times, including after
3  exposure in August 2023 despite not showing any hallmark symptoms of COVID-19.[13] ECF No. 43-4 ¶
4  21 (Plaintiff Jimenez ██████████████ despite showing no COVID-19 symptoms); ECF No. 43-
5  4 ¶ 10 (Declarant Moiseev was ██████████████ despite showing no COVID-19 symptoms); Ex. G ¶
6  11. (Plaintiff Riego received ██████████ despite showing no COVID-19 symptoms); Ex. G ¶¶ 18,
7  19; *see generally* Ex. I (Plaintiff Cuevas received ████████ before his transfer to GSA and has
8  received ██████████████ while at GSA). Additionally, "[n]o antiviral therapies have been
9  clinically indicated" at GSA because no individual detained at GSA has been eligible for antiviral
10 treatment, including the newly proposed Plaintiffs. *See generally* ECF No. 43-4; *supra* II.B.

      The disconnect lies with Plaintiffs' misunderstanding of clinical indications for antiviral treatment. Plaintiffs believe that they should all automatically receive antiviral treatment simply for being over the age of 50 or having a high-risk factor. *See, e.g.*, ECF No. 53 at 20 (arguing Declarant Coreas is automatically eligible for antiviral treatment because he is a former smoker with latent tuberculosis). This is incorrect. An individual only qualifies for antiviral treatment if they have COVID-19 symptoms and a medical professional determines that it is the right treatment for them.[14] Some individuals that are over 50 years old or are designated high-risk have other health contra-indications that may make antiviral treatment unsafe for them. *Id.* For this reason, an individual is not "eligible" for antiviral treatment until a case-by-case analysis is done at the time the individual shows COVID-19 symptoms. *Id.* Defendants' policies take these nuances into account by encouraging evaluation for antiviral treatment instead of mandating it. ECF No. 50 at 10–13, 24, 26, 28. Defendants' COVID-19 policies provide reasoned

---

[13]  The hallmark symptoms of COVID-19 are cough, fever, loss of taste or smell, fatigue. Darragh O'Connell, MD, *Signs and Symptoms of COVID-19*, Healthline (updated Jan. 11, 2022), https://www.healthline.com/health/coronavirus-symptoms#symptoms; *see also COVID-19 Symptoms*, Center for Disease Control and Prevention (Updated Oct. 26, 2022) https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html#:~:text=Fever%20or%20chills,Fatigue

[14]  CDC COVID-19 Treatment and Medications, Jan. 18, 2024, https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html (last visited Mar. 14, 2024) ("Some treatments might have side effects or interact with other medications you are taking. Ask a healthcare provider if medications to treat COVID-19 are right for you.").

guidance promoting timely testing and access to antiviral treatment, when appropriate. As such, Defendants' policies do not violate the Fifth Amendment right to reasonable health and safety. ECF No. 53 at 16–17.

### ii. Defendants have not put Plaintiffs or the Declarants at substantial risk of suffering serious harm (Factor 2).

The government violates the right to reasonable health and safety when the conditions that Defendants intentionally create places "the plaintiff at substantial risk of suffering serious harm." *Roman*, 977 F.3d at 943. Plaintiffs' argument that Defendants placed Plaintiffs "in imminent risk of harm" rests on the flawed premise that Defendants' policies have created an unreasonable risk to Plaintiffs' health and safety. ECF No. 53 at 17. As discussed, Plaintiff Jimenez, the proposed new Plaintiffs, and the Declarants are not at imminent risk of harm because they all received reasonable medical care and separately refused administration of COVID-19 vaccines. *See supra* II.B (discussing that Plaintiff Riego ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ offered to switch dorms during the only COVID-19 outbreak and refused, and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.); *see supra id.* (discussing that Plaintiff Cuevas ▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ offered to switch dorms during the only COVID-19 outbreak and refused, and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). A detainee's refusal of a vaccine weighs against Plaintiffs' request for injunctive relief. *See United States v. Garcia*, No. 14-cr-20035, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) ("Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. . . . Indeed, while [a detainee] is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk.").

Plaintiffs also argue that the conditions at GSA have worsened because the population has increased. But all individuals in facilities with an elevated risk are tested for COVID-19 at intake, and those who test positive are quarantined. Thus, population size alone does not grossly increase the risk of

12
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
No. 1:23-cv-06353-RMI

COVID-19. ECF No. 50 at 10.

Plaintiffs also do not establish a likelihood of success on the merits that Defendants' decision not to stock antivirals at the facility violated their Fifth Amendment rights. ECF No. 53 at 16. Even with the addition of the declarations of three detainees at GSA, Plaintiffs cannot demonstrate how a potential delay of 24 to 48 hours will lead to imminent harm, particularly where Defendants assert that someone will drive to a local pharmacy to pick up the medication if it is needed sooner. ECF No. 53 at 17. While Plaintiffs would like antivirals started within 24 hours of prescription, there is no indication that this timeline would not be followed when necessary.

### iii. Defendants have taken reasonable measures to abate the risks of contracting COVID-19 (Factor 3).

To satisfy the third *Roman* factor, Plaintiffs must show that Defendants' conduct was objectively unreasonable—something "akin to reckless disregard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 636 (9th Cir. 2021); ECF No. 50 at 25–26. Plaintiffs, however, do not argue that Defendants acted with reckless disregard by issuing COVID-19 guidance and directives—nor can they. The Ninth Circuit has made clear that ICE's COVID-19 mandates and guidance documents do not amount to reckless disregard, deliberate indifference, or objectively unreasonableness. *Fraihat*, 16 F.4th at 637. Plaintiffs circumvent the Ninth Circuit's holding in *Fraihat* by arguing that they challenge the conditions at GSA. ECF No. 53 at 20 n.12. However, Plaintiffs' claims rest on the nationwide COVID-19 policies issued by Defendants—the same policies that GSA follows.[15] ECF No. 43-2 ¶ 5 ("GSA follows the guidance and protocols outlined in the Post-Pandemic Emergency COVID-19 Guidelines and Protocol."). Here, the evidence shows that Defendants' reasonable COVID-19 policies are being followed by GSA and detainees at GSA are receiving appropriate medical care tailored to their individual circumstances. *See supra* II.B.

Although Plaintiffs argue that the "on the ground facts about the actual COVID-19 treatment the [putative] Class receives are indisputable," ECF No. 53 at 19, Plaintiffs ignore the extensive factual evidence that Defendants submitted that refutes Plaintiffs' and Declarant's allegations. *See supra* II.B. For

---

[15] Plaintiffs have not included GSA as a Defendant in this case, despite their numerous allegations against the facility.

13
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
No. 1:23-cv-06353-RMI

example, Plaintiffs state that Declarant Moiseev "was not tested for two weeks after she began to feel COVID-19 symptoms." ECF No. 53 at 19–20 But Declarant Moiseev did not display or report any symptoms and had stable vital signs during that time. ECF No. 50 at 15–16. Plaintiffs also incorrectly rely on facts related to an individual who has been voluntarily dismissed and is no longer a Plaintiff or putative class member. ECF No. 53 at 20. The new declarations submitted with both the Amended Complaint and the Opposition also provide little evidence of reckless disregard as the medical evidence refutes Plaintiffs claims and they are based on third party hearsay. *See* ECF 46-3, ¶ 6, Cuevas Decl. (claiming that a recent outbreak of illness in his dorm might be COVID-19 and stating that he "spoke with several detainees . . . and [] did not hear of any instances where GSA staff offered anyone antiviral COVID-19 treatment."); ECF 51-3, ¶ 11, Coreas Decl. (recounting an interaction with a congested detainee in December). GSA provided Declarant Coreas with frequent ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See generally* Ex. J. In sum, Defendants have taken reasonable steps to abate the risks of contracting COVID-19 and Plaintiffs cannot show otherwise.

   **iv.** **Defendants' actions did not cause injury (Factor 4).**

  The government violates the right to reasonable health and safety when its actions "caused the plaintiff's injuries." *Roman*, 977 F.3d at 943. As explained above, Defendants have not denied Plaintiffs "adequate and timely testing and treatment," *see supra* § II.C.i, or caused Plaintiffs to suffer any injury, *see supra* § II.C.ii.

  **D.** **Plaintiffs do not face irreparable harm.**

  In addition to establishing a likelihood of success on the merits, "[a] plaintiff seeking a preliminary injunction must establish . . . that he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. Plaintiffs argue that "the deprivation of constitutional rights unquestionably constitutes irreparable injury." ECF No. 17 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 944 (9th Cir. 2017)). However, Plaintiffs have not demonstrated that Defendants have deprived them of any constitutional right here. *See generally* ECF No. 50. Plaintiffs' allegations of a constitutional violation are not enough to establish irreparable harm or warrant injunctive relief. *Garcia v. Google, Inc.*, 786 F.3d

733, 740 (9th Cir. 2015) (en banc) ("Plaintiff must establish that the law and facts clearly favor [his] position"). Similarly, Plaintiffs' conclusory assertion that the "constitutional nature of Plaintiff's harm is alone enough to warrant injunctive relief" misses the mark because Plaintiffs must do more than allege a constitutional harm, they must establish that they are likely to suffer irreparable harm. ECF No. 53 at 23; *Winter*, 555 U.S. at 24. As Defendants have argued repeatedly, the evidence in this case refutes Plaintiffs' allegations that they are unable to access COVID-19 tests or antiviral treatment, *see supra* II.B, and that Plaintiffs face irreparable harm. Thus, the Court should deny Plaintiffs' motion for injunctive relief.

### E. The balance of equities weighs heavily against preliminary relief.

Plaintiffs again argue that a violation of an individual's constitutional right is sufficient to warrant injunctive relief. ECF No. 53 at 23. But here, Defendants have not violated Plaintiffs' constitutional rights.[16] *See generally* ECF No. 50; *supra* II.C. Moreover, any harm Plaintiffs allege is outweighed by the serious harms of the proposed injunction to the government. The balance of equities weighs in Defendants favor because the relief Plaintiffs request threatens to disrupt ICE's operations at detention facilities and impede the government's ability to enforce immigration laws. ECF No. 50 at 32; *see supra* § II.A. Therefore, the Court should deny Plaintiff's motion for injunctive relief.[17]

## III. CONCLUSION

Plaintiffs fail to show that the Court has jurisdiction to provide the relief they seek under Rule 12(b)(1). Plaintiffs also fail to establish that they are clearly entitled to the "extraordinary and drastic" preliminary injunction that he seeks. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Thus, the Court should dismiss Plaintiffs' Complaint in its entirety and deny Plaintiff Jimenez's Motion for

---

[16] Because Plaintiffs' Motion for Preliminary Injunction seeks the same relief as the ultimate relief sought in their Amended Complaint, any injunction would amount to a mandatory injunction—and even if the Court had reason to think that Plaintiffs met the lower standard for a preliminary injunction, they certainly have not met the high bar for a mandatory injunction. *Garcia*, 786 F.3d at 740 (en banc) ("[Plaintiffs] must establish that the law and facts clearly favor [their] position, not simply that [they are] likely to succeed.").

[17] To the extent that Plaintiffs assert Defendants did not "dispute the appropriateness of any particular contour of Plaintiff's proposed injunction," ECF No. 53 at 19, that assertion is false. Defendants contested the reasonableness of the specific provisions of Plaintiff Jimenez's proposed injunction in detail in their opposition. *See, e.g.*, ECF No. 50 at 9, 19, 19 n.14, 33.

15
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND SUR-REPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
No. 1:23-cv-06353-RMI

Preliminary Injunction.

Dated: March 18, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Civil Division

WILLIAM C. PEACHEY
Director

JEFFREY S. ROBINS
Deputy Director

SARAH L. VUONG
Assistant Director

MICHELLE M. RAMUS
SHANE A. YOUNG
ALEXA S. WHITE
Trial Attorneys

/s/ *Anna L. Dichter*
ANNA L. DICHTER
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation – DCS
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel:    (202) 353-2405
Fax:    (202) 305-7000
Email:  Anna.L.Dichter@usdoj.gov

*Counsel for Defendants*