Nicole Kim (SBN 324698)
*NicoleKim@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa St., 41st Floor
Los Angeles, California 90017
Tel.: +1 213 426 2495
Fax: +1 213 623 1673

SEAN RIORDAN (SBN 255752)
*sriordan@aclunc.org*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA**
39 Drumm Street
San Francisco, California 94111
Tel.: +1 415 621-2493

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
425 California St., Suite 700
San Francisco, California 94104
Tel.: +1 202 393-4930

EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
SOUTHERN CALIFORNIA**
1313 West 8th Street
Los Angeles, CA 90017
Tel: +1 213 977-5232

*Attorneys for Petitioners-Plaintiffs*
*Additional Counsel listed on signature page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### EUREKA DIVISION

VICTOR JIMENEZ, VENANCIO ESTEBAN RIEGO, and JOSE OROZCO CUEVAS,

Petitioners-Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; PATRICK LECHLEITNER, Deputy Director and Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement; MOISES BECERRA, Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement,

Respondents-Defendants.

Case No. 1:23-cv-06353-RMI

**FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**(Failure to provide COVID-19 antiviral medications to medically vulnerable immigrants detained at Golden State Annex)**

Plaintiffs Victor Jimenez, Venancio Esteban Riego, and Jose Orozco Cuevas (collectively, "Plaintiffs") bring this action on behalf of themselves and others similarly situated against the U.S. Immigration and Customs Enforcement ("ICE"), ICE Deputy Director Patrick Lechleitner, and ICE San Francisco Field Office Director Moises Becerra (collectively, "Defendants"), and allege as follows:

**INTRODUCTION**

1.      Since March 2020, the COVID-19 pandemic has undeniably changed day-to-day life in the United States, especially among those with certain medical vulnerabilities, as well as those living in jails, prisons, and detention centers.  In the United States, over 1.1 million people have died so far from COVID-19.[1]  According to the Centers for Disease Control and Prevention ("CDC"), COVID-19 was the third leading cause of death for the United States in 2021—falling only behind all forms of heart disease and cancer.[2]  So far, over 100 million confirmed cases of COVID-19 infections have been reported in the United States.[3]  While the country is emerging from the wreckage that COVID-19 caused, COVID-19 still poses a serious threat to older adults, pregnant people, and people with weakened immune systems or certain chronic conditions.[4]

2.      However, in the face of this pandemic, through resilience and innovation, vaccinations and treatments were developed to effectively combat COVID-19.  While the proliferation of COVID-19 vaccinations and robust testing protocols helped bring an end to the public health emergency, there are many individuals who still face the reality that contracting COVID-19 could lead to serious illness or death.  For those individuals who are more likely to get very sick from COVID-19, the CDC recommends several FDA-authorized or approved antiviral

---

[1] *COVID Data Tracker,* https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last updated Feb. 17, 2023).
[2] *Leading Causes of Death*, https://www.cdc.gov/nchs/fastats/leading-causes-of-death.htm (last updated Jan. 17, 2024).
[3] World Health Organization*,* https://covid19.who.int/region/amro/country/us (last visited Feb. 27, 2024) (reporting 103.4 million cases through Feb. 11, 2024, and 1.2 million deaths); *COVID-19 Update for the United States*, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last updated Feb. 23, 2024) (reporting COVID-19 deaths as 2.4% of all deaths in the U.S. from February 11-17, 2024).
[4] Apoorva Mandavilli, *Amid Signs of a Covid Uptick, Researchers Brace for the 'New Normal'*, THE NEW YORK TIMES, https://www.nytimes.com/2023/08/02/health/covid-rise.html (Aug. 2, 2023).

medications.[5]  Two of the antiviral drugs, Paxlovid and Lagevrio, can be taken orally, but the treatment must begin within five days of symptom onset.  Veklury, taken via intravenous infusion at a healthcare facility for three consecutive days, can also be used, but the treatment must begin within seven days of symptom onset.[6]  Because these medications require prompt treatment, it remains critically important that medically vulnerable individuals are tested for COVID-19 and symptoms are addressed promptly.

3.      The CDC has identified a set of people who are medically vulnerable to severe illness from COVID-19.  This set of people includes people over age 50[7] and people with certain medical conditions.[8]  According to the CDC, individuals with these medical conditions "are more likely to get very sick from COVID-19."[9]  "This means that a person with one or more of these conditions who gets very sick from COVID-19 (has severe illness from COVID-19) is more likely to: [b]e hospitalized, [n]eed intensive care, [r]equire a ventilator to help them breathe, [or] [d]ie."[10]  The CDC also warns that "[o]lder adults are more likely to get very sick or die from COVID-19."[11]

4.      Plaintiffs are medically vulnerable people held by ICE and the U.S. Department of Homeland Security ("DHS") at the Golden State Annex ICE detention facility in McFarland, California ("GSA" or "Golden State Annex"), while they await adjudication of their civil immigration cases.  As COVID-19 continues to threaten people held at GSA, Plaintiffs fear for their health and safety.

5.      COVID-19 poses a greater threat to those held in ICE detention facilities than in the general public due to the congregate nature of detention.  Indeed, COVID-19 infection rates in ICE detention facilities have reached as high as 20 times greater than in the general public.[12]

---

[5] *COVID-19 Treatments and Medications*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html, (last updated Jan. 18, 2024).
[6] *Id.*
[7] *COVID-19 Risks and Information for Older Adults,*
https://www.cdc.gov/aging/covid19/index.html (last updated May 11, 2023).
[8] *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 11, 2023).
[9] *Id.*
[10] *Id.*
[11] *COVID-19 Risks and Information for Older Adults,*
https://www.cdc.gov/aging/covid19/index.html (last updated May 11, 2023).
[12] Isabelle Niu & Emily Rhyne, *4 Takeaways From Our Investigation Into ICE's Mishandling of Covid-19*, https://www.nytimes.com/2021/04/25/video/immigration-detention-covid-

6.      Plaintiffs, if they were to contract COVID-19, want to receive COVID-19 antiviral medications; however, Plaintiffs and others in ICE detention have previously been denied antiviral medications after testing positive for COVID-19.

7.      Despite knowing that ICE detains a large number of people who are medically vulnerable to serious illness and death from COVID-19, and despite knowing that antiviral medication is critically important to the treatment of COVID-19, Defendants have failed to ensure that people in their custody nationwide can receive antiviral medication in accordance with CDC and National Institutes of Health ("NIH") guidance.

8.      Defendants have issued "Post Pandemic Emergency COVID-19 Guidelines and Protocols" that recognize that "[t]reatment with antiviral medication is known to be effective against a particular variant of SARS-CoV-2, reduces the risk of progression to severe disease, decreases the need for hospitalization, and reduces the severity of disease thereby improving survival," but only "recommends that each detainee newly diagnosed with COVID-19 be assessed for possible treatment."[13]  However, this non-binding "recommend[ation]" is not sufficient: people with medical vulnerabilities have tested positive for COVID-19 while held at Golden State Annex and have not been offered COVID-19 antivirals.

9.      Defendants' failure to provide COVID-19 antiviral medications in accordance with CDC guidance to eligible individuals in ICE detention at Golden State Annex places Plaintiffs and putative class members at an unreasonable risk of serious illness and death and constitutes unlawful punishment of the putative class, which consists of people in civil immigration detention at GSA who are over 50 years old or who have a medical condition that the CDC recognizes as a medical vulnerability to COVID-19 ("Class Members").

10.     The effectiveness of COVID-19 antiviral medications depends on their prompt administration after symptom onset—which requires robust testing and symptom-monitoring

takeaways.html (last updated Apr. 26, 2021); *see also ICE Is the Superspreader Agency*, WASH. POST (May 2, 2021), https://www.washingtonpost.com/opinions/ice-is-the-superspreader-agency/2021/05/01/eb079944-a9f2-11eb-8c1a-56f0cb4ff3b5_story.html.
[13] *Post Pandemic Emergency COVID-19 Guidelines and Protocols*, U.S. Immigration and Customs Enforcement, https://www.ice.gov/doclib/coronavirus/eroCOVID19PostPandemicEmergencyGuidelinesProtocol_07132023.pdf (July 13, 2023).

protocols.  Defendants fail to require consistent testing for COVID-19 of individuals who are detained at GSA.  As with all but one ICE detention facility, ICE currently considers GSA's facility status to be "green,"[14] which means that GSA may follow relaxed COVID-19 screening protocols. ICE's guidelines only require that individuals detained at GSA receive temperature and verbal symptom screenings upon intake.[15]  Individuals at GSA are only tested for COVID-19 at intake if they present with an elevated temperature or with COVID-like symptoms,[16] whereas facilities designated with a "red" status are required to test "all detainees for COVID-19 upon intake."[17] These guidelines fail to provide adequate protection from asymptomatic individuals who may enter GSA infected with COVID-19 and who may then transmit COVID-19 to other individuals in the facility.

11.     Further, the guidelines do not require periodic testing of individuals detained at GSA unless those individuals present with COVID-like symptoms or are determined to have come in contact with an individual who has tested positive for COVID-19.[18]  And even when individuals at the facility have reported symptoms, GSA personnel have ignored the risk that those individuals may have COVID-19, instead suggesting that the symptoms may be for other reasons, like sinus problems.  In those instances, medically vulnerable individuals with COVID-19 have waited days, or even weeks, before they were tested for COVID-19, rendering these individuals ineligible for antiviral medication under the CDC and NIH guidelines.

12.     Without prompt and adequate testing and provision of COVID-19 antiviral medication, Plaintiffs and Class Members lack adequate protection against serious illness and death from COVID-19.  This Court should order Defendants to immediately make available and provide Plaintiffs and all similarly situated individuals held at GSA with antiviral medication, by directing GSA to identify medically vulnerable people in Defendants' custody, timely test them for COVID-

---

[14] *Facility Status Dashboard*, https://www.ice.gov/coronavirus (last updated Feb. 23, 2023).
[15] *Post Pandemic Emergency COVID-19 Guidelines and Protocols*, U.S. Immigration and Customs Enforcement, at 10–11, 13, https://www.ice.gov/doclib/coronavirus/eroCOVID19PostPandemicEmergencyGuidelinesProtocol_07132023.pdf (July 13, 2023).
[16] *Id.*
[17] *Id.*
[18] *See id.*

19, and provide them with antiviral medication upon their testing positive for COVID-19.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, specifically the Fifth Amendment to the United States Constitution.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1346 because the United States is a defendant.  Defendants have waived sovereign immunity for purposes of this action.  5 U.S.C. § 702.

14.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–02, and the inherent equitable powers of this Court.

15.     Personal jurisdiction and venue are proper in this District pursuant to 28 U.S.C. § 1391(e) because Defendants are agencies of the United States, or officers of agencies of the United States, and at least one Defendant resides in this District.

16.     Divisional Assignment: Assignment to the San Francisco Division is proper under Civil L.R. 3-2(c) because a substantial part of Defendants' actions and/or omissions that resulted in the violation of Plaintiffs' constitutional rights occurred in the Division.

**PARTIES**

17.     Plaintiff VICTOR MARTINEZ JIMENEZ ("Jimenez") is a 54-year-old man who has been detained by ICE since October 11, 2022.  He is currently detained at Golden State Annex, which is an ICE detention facility.  Mr. Jimenez has a history of hypertension and cardiovascular issues and is medically vulnerable to severe COVID-19.

18.     Plaintiff JOSE OROZCO CUEVAS ("Orozco Cuevas") is a 56-year-old man who has been detained by ICE since February 15, 2023.  He is currently detained at GSA.  Mr. Orozco Cuevas has hypertension and is medically vulnerable to severe COVID-19.

19.     Plaintiff VENANCIO ESTEBAN RIEGO ("Riego") is a 60-year-old man who has been detained by ICE since April 18, 2023. He is currently detained at GSA. Mr. Riego has hypertension, diabetes, an aneurysm, and dissection of the aorta. Mr. Riego is medically vulnerable to severe COVID-19.

20.     Defendant U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE") is a

federal law enforcement agency within the U.S. Department of Homeland Security.   ICE is responsible for the criminal and civil enforcement of immigration laws, including the detention and removal of immigrants.  ICE has custody over all Plaintiffs.  GSA facility staff and other personnel are agents of Defendant ICE given that GSA is under the purview of ICE.

21.     Defendant PATRICK LECHLEITNER is the Deputy Director of ICE and the current senior official performing the duties of the Director of ICE.  Defendant Lechleitner is responsible for ICE's policies, practices, and procedures, including those relating to the detention and detention conditions of immigrants.  Defendant Lechleitner is the legal custodian of Plaintiffs. He is sued in his official capacity.[19]

22.     Defendant MOISES BECERRA is the Director of ICE's San Francisco Field Office, Enforcement and Removal Operations ("ERO").   Defendant Becerra is responsible for ICE's policies, practices, and procedures, including those relating to the detention and detention conditions of immigrants.  Defendant Becerra is the legal custodian of Plaintiffs.  He is sued in his official capacity.[20]

## **FACTS**

### A.     **COVID-19 Antiviral Medications Provide Critical Protection from Serious Illness and Death, Especially in Light of New Emerging Variants.**

23.     COVID-19 continues to pose a significant risk of serious illness and death, with over 774 million cases of COVID-19 infections reported globally, of which over 7 million cases have resulted in death so far.[21]   In California—where GSA is located—204,504,757 total cases and 104,705 total deaths had been reported as of December, 2023.

24.     The FDA has currently authorized three antiviral drugs for the treatment of COVID-19.  These three drugs are Paxlovid (Nirmatrelvir/Ritonavir), Veklury (Remdesivir), and Lagevrio

---

[19] All allegations against Defendant ICE in this Complaint are also alleged against Defendant Lechleitner given his control over Defendant ICE.
[20] All allegations against Defendant ICE in this Complaint are also alleged against Defendant Becerra given his control over Defendant ICE.
[21] *WHO Coronavirus (COVID-19) Dashboard*, https://covid19.who.int (last updated Feb. 11, 2023).

1   (Molnupiravir).[22]  These antiviral drugs are highly effective in reducing the likelihood of serious

2   illness or death from COVID-19 and can reduce the need for hospitalization.[23]

3          25.    Paxlovid is the most commonly prescribed antiviral medication of the three in the

4   U.S.  It is an oral antiviral best suited for adults and children who are at high risk for getting very

5   sick from COVID-19 and who have mild-to-moderate symptoms.[24]  It is a medication comprised

6   of two drugs (Nirmatrelvir and Ritonavir).  Numerous studies show that Paxlovid is an effective

7   treatment option.[25]

8          26.    In fact, as of May 2023, more than 11.6 million treatment courses of Paxlovid have

9   been prescribed in the United States.[26]  Paxlovid is the preferred treatment for COVID-19 for non-

10  hospitalized adults with medical vulnerabilities.  It is recommended to be administered within five

11  days of symptom onset to anyone with a medical vulnerability.[27]  If an individual is eligible, they

12  should start using the oral antiviral as soon as possible to maximize its effectiveness—and are not

13  recommended to begin taking the oral antiviral later than five days after their symptoms first

14  appear.[28]

15         27.    Clinical trials have found that Paxlovid reduced the risk of COVID-19 related

16  hospitalization or death of symptomatic, unvaccinated people who are at high risk for severe

17

18  _____

19  [22] *COVID-19 Treatments and Medications*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html (last updated Jan. 18, 2024).

20  [23] Sara Berg, *What doctors wish patients knew about COVID-19 oral antiviral*, https://www.ama-assn.org/delivering-care/public-health/what-doctors-wish-patients-knew-about-covid-19-oral-antivirals#:~:text=%E2%80%9CPaxlovid%20was%20found%20to%20reduce,of%20the%20onse

21  t%20of%20symptoms.%E2%80%9D (last updated Nov. 22, 2023).
    [24] *Id.*

22  [25] *Fact Sheet for Healthcare Providers: Emergency Use Authorization for Paxlovid,* https://www.fda.gov/media/155050/download (last modified Nov. 2023).

23  [26] *Pfizer's Paxlovid Receives FDA Approval for Adult Patients at High Risk of Progression to Severe Covid-19,* https://www.pfizer.com/news/press-release/press-release-detail/pfizers-

24  paxlovidtm-receives-fda-approval-adult-
    patients#:~:text=PAXLOVID%20has%20been%20available%20in,in%20the%20U.S.%20to%20

25  date (last updated May 25, 2023).
    [27] Sara Berg, *What doctors wish patients knew about COVID-19 oral antiviral*, https://www.ama-

26  assn.org/delivering-care/public-health/what-doctors-wish-patients-knew-about-covid-19-oral-antivirals#:~:text=%E2%80%9CPaxlovid%20was%20found%20to%20reduce,of%20the%20onse

27  t%20of%20symptoms.%E2%80%9D (last updated Nov. 22, 2023).
    [28] *What Are the Possible Treatment Options for COVID-19,* ADMIN. FOR STRATEGIC

28  PREPAREDNESS & RESPONSE, https://aspr.hhs.gov/COVID-19/Treatments/Pages/Possible-Treatment-Options-for-COVID19.aspx (last visited Feb. 27, 2024).

COVID-19 by 89 percent.[29]  Paxlovid is also effective at reducing the risk of hospitalization for vaccinated individuals or those with prior COVID-19 infection by 51 percent.[30]  Paxlovid also reduces the risk of long COVID-19: a study of people of all vaccination statuses showed a 26 percent reduced risk of long COVID-19 for people at risk for severe COVID-19, regardless of vaccination status or prior infection.[31]

28.     Alternatively, people who are medically vulnerable to severe COVID-19 who are unable to take Paxlovid due to a medical complication may be treated with other COVID-19 antivirals, including Veklury (Redemsivir) and Lagevrio (Molnupiravir).  Lagevrio is another oral antiviral authorized for adults eighteen years or older who are at high risk for severe COVID-19 and for whom other COVID-19 treatment options authorized by the FDA are not clinically appropriate or accessible.  Lagevrio should be provided within five days of symptom onset.[32] Veklury is a COVID-19 treatment given intravenously and is available to both adults and children, including those under 12 years of age.  Non-hospitalized patients who are medically vulnerable to severe COVID-19 should receive Veklury within seven days of symptom onset, which should be administered for three days.[33]

29.     One study has reported a 30% efficacy against hospitalization and death for those who took Lagevrio.[34]  And according to a study published in The New England Journal of Medicine in December 2021, there was an 87% reduction in risk of hospitalization in non-hospitalized

---

[29] M.M. Shah, et al., *Paxlovid Associated with Decreased Hospitalization Rate Among Adults with COVID-19 — United States*, MMWR Morb Mortal Wkly Rep., November 2, 2022, http://dx.doi.org/10.15585/mmwr.mm7148e2.
[30] *Id.*
[31] Yan Xie, et al., *Nirmatrelvir and the Risk of Post-Acute Sequelae of COVID-19*, MedRxiv 2022, https://www.medrxiv.org/content/10.1101/2022.11.03.22281783v1; Pam Belluck, *Paxlovid May Reduce Risk of Long COVID in Eligible Patients, Study Finds*, https://www.nytimes.com/2022/11/07/health/paxlovid-long-covid.html (last updated Nov. 7, 2022).
[32] *Lagevrio (Molnupiravir)*, Dep't Health and Human Services, Administration for Strategic Preparedness and Response, https://aspr.hhs.gov/COVID-19/Therapeutics/Products/Lagevrio/Pages/default.aspx (last updated Dec. 20, 2023).
[33] *Remdesivir*, COVID-19 Treatment Guidelines, https://www.covid19treatmentguidelines.nih.gov/therapies/antivirals-including-antibody-products/remdesivir/ (last updated Jul. 21, 2023).
[34] *See* Jayk Bernal, et al., *Molnupiravir for Oral Treatment of Covid-19 in Nonhospitalized Patients*, 386(6) N Engl J Med. 509–520 (Feb. 10, 2022).

1   patients who were given a three-day course of Veklury.[35]

2        30.    COVID-19 antiviral medicines are widely available.  As federal officials have

3   reported, there is an "ample supply of federally-owned therapeutics with millions of treatment

4   courses still in the field."[36]

5   **B.**    **Without Access to Antiviral Medication, Plaintiffs and Putative Class Members, Who**

6          **are Medically Vulnerable, Face an Unreasonable Risk of Serious Illness and Death**

7          **from COVID-19.**

8        31.    Plaintiffs and putative Class Members are all medically vulnerable to COVID-19

9   and face an unreasonable risk of serious illness and death from COVID-19 without the critical

10  treatment option of antiviral medication.

11       32.    Mr. Jimenez is medically vulnerable to severe COVID-19, as he has had

12  hypertension for the past 20 years.  He is currently on five different kinds of medication to treat his

13  cardiovascular issues.

14       33.    Mr. Orozco Cuevas is medically vulnerable to severe COVID-19, as he has

15  hypertension.

16       34.    Mr. Riego is medically vulnerable to severe COVID-19, as he has hypertension,

17  diabetes, an aneurysm, and dissection of the aorta.

18       35.    Given their medical vulnerabilities, Mr. Jimenez, Mr. Orozco Cuevas, and Mr.

19  Riego are at risk of serious harm if they were to contract COVID-19.  Their risk of serious harm

20  and death is substantially higher without receiving antiviral treatments.

21

22

23

24

25  _____

26  [35] Robert Gottlieb, et al., *Early Remdesivir to Prevent Progression to Severe Covid-19 in Outpatients*, 386 New England J. Med. 305–315 (Jan. 27, 2022),
https://www.nejm.org/doi/full/10.1056/NEJMoa2116846#:~:text=Conclusions,hospitalization%20or%20death%20than%20placebo.

27  [36] Ahmed Aboulenein, *U.S. Shifting COVID Antivirals to Commercial Market on Nov. 1*,
https://www.reuters.com/business/healthcare-pharmaceuticals/us-shifting-covid-antivirals-

28  commercial-market-nov-1-2023-10-27/ (last updated Oct. 27, 2023).

1    **C.    Defendants Are Responsible for the Medical Care and Safety of People in Their**

2         **Custody, Such as Plaintiffs.**

3         36.    ICE ERO is the component of ICE responsible for apprehending and deporting

4    noncitizens.  ERO is responsible for overseeing conditions of confinement across all detention

5    facilities where ICE holds detained immigrants.

6         37.    ERO also publishes ICE's Post Pandemic Emergency COVID-19 Guidelines and

7    Protocols, which "sets forth specific requirements to be adopted by <u>all</u> detention facilities, as well

8    as recommended best practices."[37]

9         38.    ERO has also established standards that more broadly govern medical care and other

10   conditions of confinement at detention facilities.

11   **D.    Defendants Are Unreasonably and Intentionally Denying Plaintiffs and Class**

12        **Members Adequate and Timely Testing and Antiviral Medication for COVID-19.**

13        39.    ICE's most recent COVID-19 guidelines to detention facilities, issued July 13, 2023,

14   recognizes that "treatment with antiviral medication is known to be effective."[38]  These guidelines

15   also "recommend[] that each detainee newly diagnosed with COVID-19 be assessed for possible

16   treatment with this medication."[39]  ICE's guidelines direct ICE personnel to an NIH webpage

17   concerning treatment guidelines if they want "more information about COVID-19 antiviral

18   medication treatment."[40]

19        40.    Despite these guidelines, however, ICE systematically fails to provide adequate and

20   timely testing and antiviral medication for COVID-19 to people with medical vulnerabilities to

21   COVID-19.

22        41.    ICE's guidelines do not provide explicit guidance to ICE personnel as to any specific

23   procedures or processes for assessing individuals for antiviral treatment or for administering such

24   treatment.

25

26   [37] *ICE ERO Post Pandemic Emergency COVID-19 Guidelines and Protocols* at 5,
     https://www.ice.gov/doclib/coronavirus/eroCOVID19PostPandemicEmergencyGuidelinesProtoco

27   l_07132023.pdf (emphasis original) (July 13, 2023).
     [38] *Id.* at 16.

28   [39] *Id.*
     [40] *Id.*

42.    And despite ICE guidelines' recognizing that "[t]reatment appears to work best when started early after the diagnosis is made in appropriately selected patients,"[41] these guidelines fail to provide guidance on the timely assessment for and administration of antiviral medications.

43.    ICE's failure to implement adequate policies and procedures for its facilities results in widespread failures to provide people detained at GSA adequate and timely testing and antiviral medication for COVID-19.  Plaintiffs' and others' experiences exemplify these failures.

44.    Plaintiff Jimenez is medically vulnerable to severe COVID-19 due to his cardiovascular conditions, and qualifies for COVID-19 antiviral treatment in the event that he tests positive for the illness.  Despite expressing his fears to GSA of contracting COVID-19, GSA facility staff have failed to inform Plaintiff Jimenez of the availability of antiviral medications in the event he contracts COVID-19.  Plaintiff Jimenez fears that if he contracts COVID-19 at GSA, he will not be offered antiviral medication.

45.    Plaintiff Orozco Cuevas is medically vulnerable to severe COVID-19, due to his hypertension, and qualifies for COVID-19 antiviral treatment in the event that he tests positive for the illness.  He has observed others detained at GSA who have become sick with what he believes to be COVID-19 but who have not been offered antiviral medication.  Plaintiff Orozco Cuevas fears that if he contracts COVID-19 at GSA, he will not be offered antiviral medication.

46.    Plaintiff Riego is medically vulnerable to severe COVID-19, due to his hypertension, diabetes, and other cardiovascular conditions.  During a recent outbreak of COVID-19 at GSA, he volunteered for a COVID-19 test and tested negative. However, he remained housed among others experiencing COVID-19 symptoms who did not elect to be tested. He began experiencing headaches, sore throat, an ongoing cough, sweats, and fever.  He was not offered any antiviral medication.

47.    Former Plaintiff Mutzutz, who until recently was detained at GSA, is medically vulnerable to severe COVID-19, due to his cardiovascular conditions, and qualifies for COVID-19 antiviral treatment in the event that he tests positive for the illness.  GSA facility staff, however, never offered antiviral medication when he tested positive for COVID-19.

---

[41] *Id.*

48.     Mikhael Moiseev, who until recently was detained at GSA, is 57 years old and thus is medically vulnerable under NIH and CDC guidelines.  She reported three times to GSA staff of COVID-like symptoms, and these staff repeatedly denied her a COVID-19 test.  It took two weeks after she first complained of symptoms for Defendants to test her, and she tested positive for COVID-19.  GSA medical staff did not offer her antiviral medication for COVID-19, and instead provided her only with cough drops, nasal strips, and electrolyte drinks.

49.     On multiple occasions, rather than treating individuals with antiviral medications, GSA facility staff only provided detained individuals who tested positive for COVID-19 with water and aspirin, including Plaintiff Mutzutz and Ms. Moiseev, who presented with physical symptoms, are medically vulnerable to severe COVID-19, and qualify for antiviral treatment.

50.     By failing to provide clear guidance to detention facilities and failing to keep COVID-19 antiviral medications on its formulary, ICE creates unreasonable risks to Plaintiffs' health.

## LEGAL FRAMEWORK

**A.     Detained Immigrants are Entitled to Constitutional Due Process Protections Ensuring Access to Adequate Medical Treatment.**

51.     The Fifth Amendment requires the government to provide conditions of reasonable health and safety to people in its custody.  *Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020); *see also Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982) (concerning the same constitutional right as incorporated upon the States by the Fourteenth Amendment).  Defendants violate this right when: "(i) [the government] ma[kes] an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the government did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved; and (iv) by not taking such measures, the [government] caused the plaintiff's injuries."  *Roman*, 977 F.3d at 943 (citation and alterations omitted).  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily

1    'turn[ ] on the facts and circumstances of each particular case.'" *Castro v. Cnty. of L.A.*, 833. F.3d

2    1060, 1071 (9th Cir. 2016) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

3         52.    It is well-settled that a detained immigrant's constitutional protections extend to

4    "future harm," including a "condition of confinement that is sure or very likely to cause serious

5    illness and needless suffering the next week or month or year." *See Helling v. McKinney*, 509 U.S.

6    25, 33 (1993).

7         53.    Here, Defendants violate Plaintiffs' constitutional rights by depriving Plaintiffs of

8    their right to adequate medical care.

9         54.    Timely and adequate testing and antiviral treatment for COVID-19 to people with

10   medical vulnerabilities is reasonably available.  Timely COVID-19 testing and antiviral treatment

11   represents the standard of care outside of ICE detention.  The inclusion of COVID-19 antivirals in

12   ICE's guidelines indicates a determination by Defendants that the provision of COVID-19

13   antivirals is a reasonably available measure in the context of ICE detention.[42]   The CDC's

14   recommendation that detention facilities "[s]upport timely treatment" with COVID-19 antiviral

15   medications "for those eligible" similarly represents a determination that this treatment is a

16   reasonably available measure within the detention context.[43]   Additionally, the inclusion of

17   COVID-19 antiviral drugs on the formulary for the California Department of Corrections and

18   Rehabilitation indicates a determination by that department that COVID-19 antiviral drugs are a

19   reasonably available measure within the context of prison medical care, which is similar to the

20   context of ICE detention medical care.[44]

21        55.    Defendants are aware of the risks that COVID-19 poses to medically vulnerable

22   people who are denied timely and adequate access to antiviral medication.  Despite this knowledge,

23   Defendants have intentionally subjected Plaintiffs to a set of policies and practices that limit their

24

---

25   [42] *ICE ERO Post Pandemic Emergency COVID-19 Guidelines and Protocols* at 16,
     https://www.ice.gov/doclib/coronavirus/eroCOVID19PostPandemicEmergencyGuidelinesProtoco
     l_07132023.pdf (emphasis original) (July 13, 2023).

26   [43] *Guidance on Management of COVID-19 in Homeless Service Sites and in Correctional and
     Detention Facilities,* https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-

27   correctional-settings.html (updated May 11, 2023).
     [44] *See* California Correctional Health Care Services, *Drug Formulary*, 67,

28   72, https://cchcs.ca.gov/wp-content/uploads/sites/60/MS/CCHCS-CDCR-Formulary.pdf (last
     updated Jan. 17, 2024).

access to adequate testing and antiviral treatment for COVID-19.  Defendants revised their COVID-19 guidelines earlier this year.  Although Defendants recognized the importance of antiviral medications in treating COVID-19, Defendants refused to provide clear requirements for the assessment and treatment of COVID-19 with antiviral medications to medically vulnerable individuals.  By not ensuring timely and adequate access to antiviral medications, Defendants dramatically and unreasonably increase the risk that medically vulnerable individuals in their custody will suffer severe health outcomes, including hospitalization and death, from COVID-19.  And although Defendants recognize this increased risk, evident by the ICE guidelines, Defendants have refused to take steps to mitigate that risk, and continue to subject Plaintiffs to harm.

**B.     Failure to Ensure COVID-19 Antiviral Treatment Constitutes Punishment in Violation of Plaintiffs' Substantive Due Process Rights.**

56.     The Ninth Circuit has held that conditions of confinement for civil detainees must be *superior* not only to people serving prison sentences, but also to people detained pre-trial.  *See Jones v. Blanas*, 393 F.3d 918, 933–34 (9th Cir. 2004), *cert. denied*, 546 U.S. 820 (2005); *King v. Cnty. of L.A.*, 885 F.3d 548, 552, 557 (9th Cir. 2018) (finding presumption of punitive and thus unconstitutional treatment where conditions of confinement for civil detainees are similar to those faced by pre-trial criminal detainees).  The Ninth Circuit has also held that when a civil "detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"  *Jones*, 393 F.3d at 932 (citing *Sharp v. Weston*, 233 F.3d 1166, 1172–73 (9th Cir. 2000) (requiring that individuals civilly confined at a commitment center receive "more considerate" treatment than inmates at the correctional center in which the commitment center was located)).

57.     A detention condition or practice may be unconstitutionally punitive if it (1) is intended to punish or is "imposed for the purpose of punishment," or (2) is not "reasonably related to a legitimate nonpunitive government purpose" or is "excessive" in relation to the stated purpose.  *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979).

58.     Here, Plaintiffs are being held in more restrictive conditions than their counterparts in criminal detention.  Criminal detention facilities in the State of California provide protocols that

make antiviral medications available to incarcerated individuals who test positive for COVID-19 and include antiviral medications for the treatment of COVID-19 on their formularies.[45]  For example, the California Department of Corrections and Rehabilitation lists Paxlovid and Veklury on its formulary.[46]  Likewise, the Orange County Jail in Santa Ana, California, has committed to include antiviral medications in the treatment it provides for COVID-19 as part of a settlement agreement.[47]

## CLASS ALLEGATIONS

59.     Petitioners bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals.

60.     Petitioners seek to represent a class of individuals who are, or will be, detained by ICE at GSA who are over 50 years old or who have a medical condition that the CDC recognizes as a medical vulnerability to COVID-19 ("Class Members").[48]

61.     The proposed class satisfies the requirements of Federal Rule of Civil Procedure 23(a)(1) because it is so numerous that joinder of all members is impracticable.  Upon information and belief, there are approximately 400 people currently detained at GSA, of which a substantial portion, now and in the future, would qualify as Class Members.

62.     Joinder is also impracticable because Class Members are detained and largely unrepresented, limiting their ability to bring individual litigation.

63.     The proposed class meets the commonality requirements of Federal Rule of Civil Procedure 23(a)(2).  Whether current conditions at GSA—including the failure to timely provide testing and antiviral medications to Class Members and the failure to educate Class Members on

---

[45] *See* California Correctional Health Care Services, *Drug Formulary*, 67, 72, https://cchcs.ca.gov/wp-content/uploads/sites/60/MS/CCHCS-CDCR-Formulary.pdf (last updated Oct. 13, 2023); *Ahlman v. Barnes*, No. SACV20835JGBSHKX, 2022 WL 16957837, at *2 (C.D. Cal. Sept. 12, 2022).

[46] California Correctional Health Care Services, *Drug Formulary*, 67, 72, https://cchcs.ca.gov/wp-content/uploads/sites/60/MS/CCHCS-CDCR-Formulary.pdf (last updated Oct. 13, 2023).

[47] *See Ahlman v. Barnes*, No. SACV20835JGBSHKX, 2022 WL 16957837, at *2 (C.D. Cal. Sept. 12, 2022).

[48] *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 11, 2023).

the availability of antiviral medications—comply with the Fifth Amendment presents common questions of fact and law.

64.     The proposed class meets the typicality requirements of Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims are typical of the claims of their class.  Plaintiffs are currently detained at GSA and are exposed to the current conditions of detention.

65.     The proposed class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4).  Named Plaintiffs have the requisite personal interest in the outcome of this action and have no interests adverse to the interests of the proposed class.

66.     Additionally, the proposed class is represented by pro bono counsel from the ACLU Foundation National Prison Project, ACLU Foundation of Southern California, ACLU Foundation of Northern California, and Goodwin Procter LLP.  Petitioners' counsel have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of detained immigrants.

67.     The members of the class are readily ascertainable through Defendants' records.

68.     Finally, the proposed class satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the class by detaining Class Members without offering adequate and timely testing and antiviral treatment for COVID-19, placing the entire class at risk of serious medical complications or death.  As such, final injunctive and declaratory relief is appropriate for the class as a whole.

## FIRST CLAIM FOR RELIEF

### Violation of the Fifth Amendment Right to Substantive Due Process

### (Right to Reasonable Health and Safety in Government Custody)

### (ALL DEFENDANTS)

69.     Plaintiffs repeat and incorporate by reference all allegations above as though set forth fully herein.

70.     The Fifth Amendment requires the federal government to maintain conditions of reasonable health and safety for people in its custody.

71.     By detaining Plaintiffs and Class Members at GSA without adequate and timely testing and antiviral treatment for COVID-19, Defendants are failing to ensure Plaintiffs' and Class Members' reasonable health and safety, exposing them to an increased risk of serious harm from COVID-19, violating their rights under the Fifth Amendment.

72.     Defendants have made an intentional decision to deny Plaintiffs and Class Members timely testing and antiviral treatment for COVID-19.

73.     Defendants have not taken reasonable available measures to abate or reduce the risk of serious harm from COVID-19, even though a reasonable custodian under the circumstances would have understood the high degree of risks involved—making the consequences of Defendants' failures obvious.

74.     As a result of Defendants' denial of testing and antiviral treatment for COVID-19 to Plaintiffs and Class Members, Defendants have subjected Plaintiffs and Class Members to a substantial risk of serious complications or death from COVID-19.

75.     For these reasons, Defendants' failure to implement adequate and timely testing and treatment procedures violates Plaintiffs' and Class Members' right to reasonable health and safety in government custody, rendering Defendants' ongoing detention of Plaintiffs and Class Members in these conditions in violation of the Due Process Clause.

76.     Plaintiffs and Class Members have suffered and will imminently suffer irreparable injury as a result of Defendants' failure to provide adequate and timely testing and antiviral treatment for COVID-19.  Plaintiffs and Class Members are entitled to injunctive relief to avoid any further injury.

**SECOND CLAIM FOR RELIEF**

**Violation of the Fifth Amendment Right to Substantive Due Process**

**(Unconstitutional Punishment)**

**(ALL DEFENDANTS)**

77.     Plaintiffs repeat and incorporate by reference all allegations above as though set forth fully herein.

78.     The Fifth Amendment's Due Process Clause prohibits holding people in civil confinement in conditions that rise to the level of punishment.

79.     Conditions of confinement that are expressly intended to punish, that are not reasonably related to a legitimate governmental objective, or that are excessive in relation to that objective constitute punishment in violation of the Due Process Clause.

80.     By denying Plaintiffs and Class Members adequate and timely testing and antiviral treatment for COVID-19, Defendants have subjected them to conditions of confinement that are identical to, similar to, or more restrictive than those under which people accused or convicted of crimes are confined; that are expressly intended to punish; that are not reasonably related to a legitimate governmental objective; and that are excessive in relation to that objective.

81.     Plaintiffs and Class Members have suffered and will imminently suffer irreparable injury as a result of Defendants' failure to provide adequate and timely testing and antiviral treatment for COVID-19.  Plaintiffs and Class Members are entitled to injunctive relief to avoid any further injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully ask this Court to take jurisdiction over this actual controversy and:

a.  Certify this Case as a Class Action and appoint named Plaintiffs as class representatives and the undersigned counsel as class counsel;

b.  Declare that conditions of confinement for all Class Members held at GSA are currently unconstitutional under the Fifth Amendment because they deny adequate and timely testing

for and antiviral treatment of COVID-19, which is necessary to prevent serious adverse outcomes from COVID-19 infections;

c.  Issue injunctive relief ordering Defendants to ensure adequate and timely testing and antiviral treatment for COVID-19;

d.  Award Plaintiffs their costs and reasonable attorneys' fees in this action under the Equal Access to Justice Act, as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law; and

e.  Grant any other and further relief that this Court deems just and appropriate.

1

Dated: March 19, 2024           **GOODWIN PROCTER LLP**

2

                       By:      */s/ Nicole Kim*

3

Sean Riordan (SBN 255752)

4

*sriordan@aclunc.org*
**AMERICAN CIVIL LIBERTIES**

5

**UNION FOUNDATION OF**
**NORTHERN CALIFORNIA**

6

39 Drumm Street
San Francisco, California 94111

7

Tel.: +1 415 621-2493

8

Kyle Virgien (SBN 278747)
*kvirgien@aclu.org*

9

**AMERICAN CIVIL LIBERTIES**
**UNION FOUNDATION**

10

425 California St., Suite 700
San Francisco, California 94104

11

Tel.: +1 202 393-4930

12

Eunice Cho (*pro hac vice*
*forthcoming*)

13

*echo@aclu.org*
**AMERICAN CIVIL LIBERTIES**

14

**UNION FOUNDATION**
915 Fifteenth Street NW, 7th Floor

15

Washington, DC 20005
Tel.: +1 202 548-6616

16

Eva Bitran (SBN 302081)

17

*ebitran@aclusocal.org*
Mayra Joachin (SBN 306065)

18

*mjoachin@aclusocal.org*
**AMERICAN CIVIL LIBERTIES**

19

**UNION FOUNDATION OF**
**SOUTHERN CALIFORNIA**

20

1313 West 8th Street
Los Angeles, CA 90017

21

Tel: +1 213 977-5232

Linnea Cipriano (*pro hac vice*)
*LCipriano@goodwinlaw.com*
Timothy J. Beavers (*pro hac vice*)
*TBeavers@goodwinlaw.com*
Jacob Tyson (*pro hac vice*)
*JTyson@goodwinlaw.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Tel.: +1 212 813 8800
Fax: +1 212 355 3333

Nicole Kim (SBN 324698)
*NicoleKim@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa St., 41st Floor
Los Angeles, California 90017
Tel.: +1 213 426 2495
Fax: +1 213 623 1673

Oscar Barron-Guerra (SBN 345284)
*OBarronGuerra@goodwinlaw.com*
**GOODWIN PROCTER LLP**
3 Embarcadero Center, 28th Floor
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

*Attorneys for Petitioners-Plaintiffs*

22

23

24

25

26

27

28